# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kimberly-Clark Worldwide, Inc., | ) |
| | ) |
| Plaintiff, | ) Case No. 1:09-cv-01685-WWC |
| | ) |
| v. | ) |
| | ) Hon. William W. Caldwell |
| First Quality Baby Products, LLC, | ) |
| First Quality Products, Inc., | ) |
| First Quality Retail Services, LLC, | ) Jury Trial Demanded |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT CASE MANAGEMENT PLAN

Having complied with the meet and confer requirements set forth in the Local Rules, and with the Court's September 4, 2009 Order, the parties hereby submit the following Joint Case Management Plan.

## 1.0  Principal Issues

1.10 Separately for each party, please give a statement summarizing this case:

By Plaintiff:

Kimberly-Clark Worldwide, Inc. ("K-C") filed suit against First Quality Baby Products, LLC, First Quality Products, Inc., and First Quality Retail Services, LLC (collectively "First Quality") in the Northern District of Texas on March 12, 2009, alleging that First Quality infringes U.S. Patent

Nos. 5,147,343, 5,286,543, 5,496,298, 5,601,542, and 6,702,798 (collectively the "patents-in-suit"). K-C further alleges that such infringement is willful. K-C's patents are directed to disposable absorbent articles, including disposable diapers, adult incontinence garments, incontinence pads and guards. K-C believes that First Quality has made, used, offered for sale, and/or sold within the United States, and/or imported into the United States, products that infringe the patents-in-suit. The accused products consist of a variety of First Quality's baby diapers and adult incontinence articles.

First Quality has alleged that the '298 patent was procured through inequitable conduct and is therefore unenforceable. Further, First Quality denies that it is infringing any valid claims of the patents-in-suit.

On April 2, 2009, First Quality moved to transfer the case to the Middle District of Pennsylvania under 28 U.S.C. § 1404, and on August 27, 2009 the case was transferred.

On September 23, 2009, K-C filed an unopposed Motion for Leave to Amend its Complaint, to allege infringement of U.S. Patent Nos. 7,000,260, 6,260,211, 6,098,203, 5,940,887, 5,745,922, and 5,156,902, in addition to the patents already identified in the suit. K-C's Motion for Leave to Amend its Complaint also identifies additional First Quality products that K-C

alleges infringe the original patents-in-suit.

K-C does not believe that the proposed schedule set forth below needs to be altered or amended if the Court enters the Amended Complaint. The proposed schedule allows an adequate length of time for discovery and the other aspects of the amended case.

By Defendants:

Only three days before the due date of this case management plan, K-C announced its intent to move to amend the Complaint to assert six new patents in addition to the five patents already asserted in this case. K-C also brought a separate action alleging infringement of three additional patents. Therefore, given this short notice, Defendants have not had ample time and opportunity to identify and investigate the new issues which K-C seeks to introduce. Thus, First Quality's portions of this plan relate only to the case as stated in the Complaint and Counterclaims and does not address K-C's proposed Amended Complaint.

K-C has alleged that First Quality Baby Products, LLC ("FQBP") is infringing two patents – U.S. Patent No. 5,496,298 to Kuepper et al. entitled, "Elastomeric Ears for Disposable Absorbent Article" and U.S. Patent No. 5,286,543 to Ungpiyakul et al. entitled, "Method and Apparatus for

Controlling the Cutting and Placement of Components on a Moving Substrate, and Article Made Therewith."  FQBP alleges that it does not infringe any valid claim of either of these patents.  In addition, FQBP has alleged that the Kuepper patent is unenforceable because it was issued through inequitable conduct before the Patent Office.  While K-C has alleged in the Complaint that FQBP and FQP infringe the Kuepper and Ungpiyakul Patents, it has not identified any products manufactured or sold by these companies which it alleges infringe the patents.

K-C has alleged that First Quality Retail Services, LLC ("FQRS") and First Quality Products, Inc. ("FQP") infringe U.S. Patent No. 5,601,542 to Melius et al. entitled, "Absorbent Composite"; U.S. Patent No. 5,147,343 to Kellenberger, entitled "Absorbent Products Containing Hydrogels with Ability to Swell Against Pressure"; and U.S. Patent No. 6,702,798 to Christoffel et al. entitled "Folded Absorbent Article."  FQRS and FQP alleged that they do not infringe any valid claims of these patents.  While K-C has alleged in the Complaint that FQBP infringes these patents, K-C has not identified any products manufactured or sold by FQBP.

The principal <u>factual</u> issues that the parties <u>dispute</u> are:

1.11  Whether First Quality infringes the patents in suit.

1.12  If First Quality infringes, whether the infringement is willful.

1.13  If any of the patents in suit are valid and infringed, the amount of damages to which K-C is entitled, if any.

1.14  Factual issues underlying the question of validity of the patents.

1.15  Factual issues underlying whether the '298 patent is unenforceable.

The principal <u>factual</u> issues that the parties <u>agree</u> upon are:

1.20  None

1.30 The principal <u>legal</u> issues that the parties

<u>dispute</u> are:

1.31  Construction of the claim terms of the patents-in-suit.

1.32  Whether the patents in suit are invalid.

1.33  Whether the '298 patent is unenforceable.

<u>agree</u> upon are:

1.40  None.

1.50 Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:

None.

1.60 Identify any named parties that have not yet been served:

    None.

1.70 Identify any additional parties that:

    Plaintiff intends to join:

    K-C does not currently intend to join additional parties but K-C is continuing to investigate if any additional First Quality entity manufactures, sells, or offers for sale any of the products that K-C alleges infringe the patents-in-suit, including those patents identified in K-C's proposed Amended Complaint.

    Defendants intend to join:

    First Quality does not intend to join any additional parties.

1.80 Identify any additional claims that:

    Plaintiff intends to add:

    As indicated above in ¶ 1.10, on September 23, 2009, K-C filed an unopposed Motion for Leave to Amend its Complaint.  In its Amended Complaint, K-C identified (1) additional patents that First Quality infringes and (2) additional First Quality products that infringe the current patents-in-suit.  As discovery proceeds, K-C continues to identify additional products manufactured, sold and/or offered for sale by First Quality that infringe K-

C's patents.

Because of the nature of private label manufacturing, K-C believes that it is very likely that First Quality is supplying additional absorbent products identical to, or very similar in structure to, the products already identified as accused of infringement. Information regarding the specific products supplied by First Quality and to whom they are supplied is entirely within First Quality's knowledge. K-C therefore is seeking discovery on all of First Quality's absorbent products, including all variations, styles, and sizes of any diapers and adult incontinence products including underwear, briefs, pads, and guards. First Quality objects to providing such discovery.

Unless such discovery is provided, K-C anticipates that it will be required to continue to amend its claims as additional infringing products are identified.

Defendants intend to add:

Because of the very recent notice by K-C's of its intent to file an amended complaint, First Quality has not been afforded sufficient time to determine the full extent of any claims that K-C might add. However, at a minimum, First Quality anticipates adding counterclaims of invalidity and non-infringement of each of the six new patents sought to be added by K-C.

## 2.0  Alternative Dispute Resolution (ADR)

2.10 Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.

None.

2.20 If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

N/A

## 3.0  Consent to Jurisdiction by a Magistrate Judge

The parties do not agree to jurisdiction by a magistrate judge of this court.

## 4.0  Disclosures

4.100    Separately for each party, list by <u>name and title/position</u> each person whose identity has been disclosed.

4.101 Disclosed by K-C:

|  | Name | Title/Position |
|---|---|---|
| 4.102 | Rebecca J. Kuepper | Research Scientist |
| 4.103 | Christine A. Rasmussen | Former K-C Employee |
| 4.104 | Tanakon Ungpiyakul | Engineering Technical Leader II – P&TD Garments |
| 4.105 | Christopher J. Sheleski | Former K-C Employee |
| 4.106 | Arch D. Morgan | Senior Engineer Process P&TD |
| 4.107 | Terry G. Hayes | Operations Consultant IV NACP |

8

| | Name | Title/Position |
|---|---|---|
| 4.108 | Gene M. Gregory | Former K-C Employee |
| 4.109 | Daniel J. Vander Heiden | Engineer III Process - P&TD Family Care |
| 4.110 | Mark K. Melius | Patent Strategist |
| 4.111 | Sandra M. (Yarbrough) Rogers | Research Technical Leader II |
| 4.112 | Melissa C. Putzer | Senior Research Scientist |
| 4.113 | Shannon K. (Byerly) Melius | Patent Strategist |
| 4.114 | Stanley R. Kellenberger | Senior Research Scientist |
| 4.115 | Paul William Christoffel | Research Scientist |
| 4.116 | Joel Curtis Krueger | Former K-C Employee |
| 4.117 | Mark John Jung | Former K-C Employee |
| 4.118 | Willard Frances Hawley, Jr. | Former K-C Employee |
| 4.119 | Steven Charles Schapel | Research Scientist |
| 4.120 | Mark David Spiegelberg | Maintenance |
| 4.121 | Jeffrey Michael Tabor | Senior Customer Business |
| 4.122 | Mark Joseph VanGroll | Operations Team Leader VI |
| 4.123 | Mark James VanRossum | Operations |
| 4.124 | Mark T. Cammarota | Brand Director – Depend |
| 4.125 | Stuart J. Schneider | Senior Brand Director, Huggies |
| 4.126 | William F. Bane | Finance Director, Personal Care |

| | Name | Title/Position |
|---|---|---|
| 4.127 | Thomas J. Mielke | Senior Vice President Law & Government Affairs/Chief Compliance Officer |
| 4.128 | Paul Yee | Former K-C Employee |
| 4.129 | Thomas J. Connelly | Former K-C Employee |
| 4.130 | Jaime Vitense | Senior Research Scientist |
| 4.131 | Bob Popp | Program Leader IV |
| 4.132 | Richard Dodge | Technical Leader III |
| 4.133 | Russ Thorson | R&E Technical Leader |

4.151 Disclosed by First Quality:

| | Name | Title/Position |
|---|---|---|
| 4.152 | Tony Silwanowicz | Director, Product Development (FQP) |
| 4.153 | Dana Walker | Quality Assurance Manager (FQP) |
| 4.154 | Heath Dorey | Group Leader R&D (FQRS) |
| 4.155 | Vicki Harvard | Process Engineering Manager (FQP) |
| 4.156 | Bob Cole | Packaging Engineer (FQRS) |
| 4.157 | Brian McGinty | Director of Engineering (FQRS) |
| 4.158 | Susan O'Connell | Director, Product Development (FQBP) |

| | Name | Title/Position |
|---|---|---|
| 4.159 | Kerry Herbster | Manager Marketing (FQRS) |
| 4.160 | Carol Erdman | Product Development Scientist (FQBP) |
| 4.161 | Dan Murphy | Vice President of Sales & Marketing (FQH) |
| 4.162 | Ken Schuler | VP Sales Retail Group (FQE, FQRS) |
| 4.163 | Kristen Eckley | Director of Commercial Finance (FQP, FQH) |
| 4.164 | Kadie Klump | Sr. Accountant (FQRS) |
| 4.165 | Laura Russ | Controller (FQRS) |
| 4.166 | Thomas H. Roessler | Title unknown to First Quality |
| 4.167 | Bruce M. Siebers | Title unknown to First Quality |
| 4.168 | Kiyoshi Suzuki | Title unknown to First Quality |
| 4.169 | M. Ochi | Title unknown to First Quality |
| 4.170 | T. Kodo | Title unknown to First Quality |
| 4.171 | Naomi Suzuki | Title unknown to First Quality |
| 4.172 | Yoshitaka Mishima | Title unknown to First Quality |
| 4.173 | Kurt Dahmen | Title unknown to First Quality |
| 4.174 | Kerryn Brandt | Title unknown to First Quality |
| 4.175 | Thomas J. Mielke | Senior Vice President Law & Government Affairs/Chief Compliance Officer |
| 4.176 | Thomas J. Connelly | Former K-C Employee |

| | Name | Title/Position |
|---|---|---|
| 4.177 | Paul Yee | Former K-C Employee |
| 4.178 | Mark K. Melius | Patent Strategist |
| 4.179 | Sandra M. Yarbrough | Research Technical Leader II |
| 4.180 | Melissa C. Putzer | Senior Research Scientist |
| 4.181 | Stanley R. Kellenberger | Former K-C Employee |
| 4.182 | Shannon K. Byerly | Patent Strategist |
| 4.183 | Rebecca J. Kuepper | Research Scientist |
| 4.184 | Christine A. Rasmussen | Former K-C Employee |
| 4.185 | Paul W. Christoffel | Research Scientist |
| 4.186 | Joel C. Krueger | Former K-C Employee |
| 4.187 | Mark J. Jung | Former K-C Employee |
| 4.188 | Willard F. Hawley, Jr. | Former K-C Employee |
| 4.189 | Steven C. Schapel | Research Scientist |
| 4.190 | Mark D. Spiegelberg | Maintenance |
| 4.191 | Jeffrey M. Tabor | Senior Customer Business |
| 4.192 | Mark J. VanGroll | Operations Team Leader VI |
| 4.193 | Mark J. VanRossum | Operations |
| 4.194 | Tanakon Ungpiyakul | Engineering Technical Leader II – P&TD Garments |
| 4.195 | Christopher J. Sheleski | Former K-C Employee |
| 4.196 | Arch D. Morgan | Senior Engineer Process P&TD |

| | Name | Title/Position |
|---|---|---|
| 4.197 | Terry G. Hayes | Operations Consultant IV NACP |
| 4.198 | Gene M. Gregory | Former K-C Employee |
| 4.199 | Daniel J. Vander Heiden | Engineer III Process - P&TD Family Care |
| 4.199.1 | Nippon Shokubai Co., Ltd. | N/A |
| 4.199.2 | Uni-charm Corp | N/A |
| 4.199.3 | Kao Corporation | N/A |
| 4.199.4 | Proctor & Gamble Co | N/A |
| 4.199.5 | Valor Brands, LLC | N/A |
| 4.199.6 | Arquest, Inc. | N/A |
| 4.199.7 | Irving Personal Care Ltd. | N/A |
| 4.199.8 | BASF | N/A |
| 4.199.9 | Weyerhaeuser Company | N/A |
| 4.199.10 | Rayonier, Inc | N/A |
| 4.199.11 | Cellu Tissue Holdings, Inc. | N/A |
| 4.199.12 | Koch Industries, Inc. | N/A |
| 4.199.13 | Georgia-Pacific LLC | N/A |
| 4.199.14 | Sumitomo Corporation | N/A |

4.200    Separately for each party, describe by <u>categories</u> the documents that have been disclosed or produced through formal discovery, indicating which categories relate (even if not exclusively) to damages:

4.201 Categories of documents produced by K-C:

|       | **Category of Documents** |
|-------|---------------------------|
| 4.202 | Documents (*e.g.*, contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell the claimed invention prior to the date of application for the patents-in-suit. |
| 4.203 | All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, that were created on or before the date of application for the patents-in-suit. |
| 4.204 | Certified copies of the file histories of the patents-in-suit. |
| 4.205 | Certified copies of the patents-in-suit. |
| 4.206 | Prior art cited on the face of the patents-in-suit. |

4.207 Categories of documents disclosed by K-C as part of its initial disclosures to First Quality:

|       | **Category of Documents** |
|-------|---------------------------|
| 4.208 | Documents concerning marketing, promotion, and sales of K-C diaper products, adult incontinence products and competitive products. |
| 4.209 | Patents-in-suit. |
| 4.210 | File histories for the patents-in-suit. |
| 4.211 | Documents concerning the conception and development of the inventions of the patents-in-suit. |
| 4.212 | File histories for foreign filed patent applications claiming priority to the patents-in-suit. |

4.251 Categories of documents produced by First Quality:

14

| | Category of Documents |
|---|---|
| 4.252 | FQBP has produced documents relating to the sales and marketing of the Sam's Club Member's Mark Premium Diaper. These documents may include some information relevant to the alleged damages. |

4.253 Categories of documents disclosed by First Quality as part of its initial disclosures to K-C:

| | Category of Documents |
|---|---|
| 4.254 | Design, packaging and construction of the accused products of FQP and FQRS. |
| 4.255 | Quality management, design and development of FQP products. |
| 4.256 | Processes and equipment for packaging and manufacture of FQP products. |
| 4.257 | Design and development of FQRS products. |
| 4.258 | Packaging of FQRS products. |
| 4.259 | Manufacturing processes at FQRS. |
| 4.260 | Design, development, packaging, and construction of FQBP's New Diaper. |
| 4.261 | Design, development, packaging, and construction of FQRS's Target Diaper. |
| 4.262 | Materials used in the core of the accused products. |
| 4.263 | Sales and Marketing efforts for alleged infringing products of FQBP, FQRS, and FQP. |
| 4.264 | Sales information for alleged infringing products of FQP, FQRS, and FQBP. |
| 4.265 | Agreements and licenses |
| 4.266 | Licensing of U.S. Patent Nos. 5,496,298 and 5,286,543. |

| | Category of Documents |
|---|---|
| 4.267 | Non-infringement of U.S. Patent Nos. 5,496,298, 5,298,543, 5,601,542, 5,147,343, and 6,702,798 |
| 4.268 | Prior art to U.S. Patent Nos. 5,496,298, 5,298,543, 5,601,542, 5,147,343, and 6,702,798. |
| 4.269 | Prosecution of U.S. Patent Nos. 5,496,298, 5,298,543, 5,601,542, 5,147,343, and 6,702,798. |
| 4.270 | Inequitable conduct in the prosecution of U.S. Patent No. 5,498,298. |
| 4.271 | Conception of U.S. Patent Nos. 5,496,298, 5,298,543, 5,601,542, 5,147,343, and 6,702,798. |

4.300    <u>Additional Documents Disclosures</u>.  Separately for each party, describe each additional category of documents that will be disclosed without imposing on other counsel the burden of serving a formal request for production of documents.

The parties have exchanged formal discovery requests and have agreed to produce documents responsive to such requests on a rolling basis.

4.400    Separately for each party who claims an entitlement to damages or an offset, set forth the computation of the damages or of the offset.

4.401 Plaintiff's calculation of damages:

Such computations cannot be completed until after information has been obtained from Defendants.  In this case, damages are not less than a reasonable royalty in accordance with 35 U.S.C. § 284.  K-C also believes that discovery will establish that this is a case of willful infringement that will authorize the Court in its discretion to award increased damages under

16

35 U.S.C. § 284, and that this is an "exceptional" case entitling K-C to recover its attorney's fees under 35 U.S.C. § 285.

> 4.402 Defendant's calculation of offset:

First Quality does not make any claim for offset.

> 4.403 Counter claimant/third party claimant's calculation of damages:

First Quality does not make any claim for damages.

## 5.0  Motions

Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:

| Nature of the Motion | Moving Party | Anticipated Filing Date |
|---|---|---|
| Motion to Amend the Complaint | K-C | September 21, 2009 |
| Motion for Entry of a Protective Order | K-C | As soon as possible |
| Motion for Partial Summary Judgment on Count I - U.S. Patent No 5,496,298 to Kuepper et al. | FQBP and FQRS | October 2009 |
| Motion for Partial Summary Judgment on Count  II - U.S. Patent No. 5,286,543 to Ungpiyakul et al. | FQBP and FQRS | October 2009 |

**6.0  Discovery**

6.100    Briefly describe any discovery that has been completed or is in progress:

By Plaintiff:

As noted in ¶¶ 4.202-4.206, K-C has produced over 11,000 pages of documents to First Quality.  K-C has served on First Quality its First Set of Interrogatories and Document Requests.  K-C has responded to First Quality's First Set of Interrogatories and Document Requests.  K-C will respond to First Quality's Second Set of Document Requests on or before the deadline to respond.  The parties have agreed on a rolling production of documents responsive to each party's respective Document Requests.

By Defendants:

As noted in ¶ 4.252, over 15,000 pages of documents were produced to K-C between May 8 and May 11, 2009.  Also, on May 20 and 21, 2009 the depositions of Mr. Scott Crownover and Ms. Susan O'Connell of First Quality were taken by K-C.

On August 24, 2009, First Quality responded to document requests and interrogatories propounded by K-C on June 23, 2009.  Collection and review of documents for production is ongoing and the parties have agreed

18

to produce documents on a rolling basis.

On September 15, 2009, First Quality served its second set of requests
for production of documents and things.

6.200    Describe any <u>discovery</u> that all <u>parties agree</u> should be
conducted, indicating for each discovery undertaking its
purpose or what kinds of information will be developed through
it (e.g., "plaintiff will depose Mr. Jones, defendant's controller
to learn what defendant's revenue recognition policies were and
how they were applied to the kinds of contracts in the case"):

Unknown at this time.

6.300    Describe any <u>discovery</u> that one or more parties want(s) to
conduct but <u>to which another party objects</u>, indicating for each
such discovery undertaking its purpose or what kinds of
information would be developed through it:

K-C's position:

K-C seeks discovery all of First Quality's absorbent products that fall
within the definition of Accused Products, as defined in K-C's discovery
requests.   K-C has requested that First Quality provide K-C with one
commercial package of each absorbent product that First Quality supplies.
K-C specifically seeks one commercial package of each of First Quality's
diapers, sleep pants, and adult incontinence products.

Because of the nature of private label manufacturing, K-C believes
that it is very likely that First Quality is supplying additional absorbent

19

products identical to, or very similar in structure to, the products already identified as accused of infringement. K-C has identified each product currently known to K-C that is accused of infringement by product name. This information should be sufficient for First Quality to determine what other First Quality products are identical to, or very similar in structure to, the products already identified as accused of infringement. Not only should that information be sufficient, but also, First Quality's request for SKU numbers, UPC Codes, and lot numbers, which First Quality asserts appear on each and every package, is impracticable. K-C does not know what First Quality considers to be SKU numbers or lot numbers.

Information regarding the specific products supplied by First Quality and to whom they are supplied is entirely within First Quality's knowledge. While First Quality's products are sold to the general public, due to the nature of private label manufacturing, the general public cannot readily ascertain which products are manufactured by First Quality. Requiring First Quality to comply with K-C's request will eliminate costly motion practice and numerous amendments to K-C's Complaint and Infringement Contentions, as it will allow K-C to determine what First Quality products infringe in a less piece-meal fashion than if First Quality does not comply.

First Quality's position:

K-C's request for a package of "each absorbent product First Quality supplies" is impractical and is so broad that it includes many products clearly outside the scope of the lawsuit.  Contrary to K-C's argument, First Quality products are sold to the general public and are readily available to K-C.

Nonetheless, in an effort to address this issue, First Quality has repeatedly asked K-C to fully identify each product listed in its Complaint by providing the SKU numbers, UPC Codes, and lot numbers which appear on each and every package of First Quality products that K-C has already evaluated.  Thus far, K-C has refused to comply with this simple request.  This information would enable First Quality to identify the exact products which K-C alleges are infringing and then determine which other First Quality products have the same relevant features.

> 6.400    Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:

First Quality's Position:

First Quality proposes that discovery begin with a liability phase during which the parties focus on the primary issues of infringement, invalidity and unenforceability.  After six months, the parties would begin discovery of those issues relating to damages as well as commercial success.

These subjects include significant accounting aspects and can be accomplished more efficiently if discovery commences after the parties have narrowed the issues at the heart of the case. In view of First Quality's anticipated summary judgment motions on two of the patents, it may never be necessary to commence damages discovery.

K-C's Position:

K-C proposes that there should not be any phasing or staging of discovery. K-C believes that phasing discovery as proposed by First Quality will result in duplicative discovery and the need to reopen depositions, causing an unnecessary burden to the parties and potential witnesses.

K-C further believes that First Quality's proposed phasing schedule will result in uncertainty and prejudice because there are several types of information, such as sales data, that relate to both liability and damages. First Quality's proposed schedule would place discovery on sales data in the second phase of discovery, limiting K-C's ability to take discovery on commercial success, which relates to liability, until after liability discovery. Such a schedule would prejudice K-C in its ability to obtain discoverable information on issues of liability until the damages phase and would cause uncertainty as to the scope of permissible discovery. Because First Quality's proposal will leave the scope of permissible discovery unclear, it will likely

22

cause motion practice on the scope of discovery.

Furthermore, early disclosure of sales information, which First Quality's proposed schedule would prevent, would allow the parties to evaluate the potential value of the case and assist with settlement negotiations, which have been ongoing since the filing of this lawsuit.

Moreover, even if First Quality filed and this Court granted summary judgment on two of the patents, not all damages discovery would be eliminated because there would still be three and possibly nine patents-in-suit.

First Quality's Position:

6.500    For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff and defendants):

6.501 depositions (excluding experts) to be taken by:

Plaintiff: 20                    Defendants: at least 30

In view of the fact that at least one hundred witnesses have already been identified, relating only to the five patents, First Quality believes that more than 30 depositions may be necessary.  K-C disagrees that at least one hundred witnesses have already been identified.  The list in ¶ 4 is not a list

of witnesses; rather, it is a list of persons whose identities have been disclosed.  K-C proposes that because of the number of patents-in-suit and the number of issues in dispute, doubling the default number of depositions and interrogatories will be sufficient.  K-C believes that the number of depositions does not need to be altered if the Court enters the Amended Complaint.

6.502 interrogatories to be served by:

Plaintiff: 50          Defendants: 25

K-C proposes that because of the number of patents-in-suit and the number of issues in dispute, doubling the number of depositions and interrogatories will be necessary.  K-C believes that the number of interrogatories does not need to be altered if the Court enters the Amended Complaint.

6.503 document production requests to be served by:

Plaintiff: 150          Defendants: 150

6.504 requests for admission to be served by:

Plaintiff: 300          Defendants: 300

6.600    All discovery commenced in time to be completed by:

24

K-C proposes September 30, 2010. First Quality would be agreeable to this date if the case includes only five patents. If more patents are added, then First Quality believes additional time may be necessary. K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

 6.700 Reports from retained experts on issues for which a party bears the burden of proof due:

K-C proposes October 29, 2010 or 45 days from the date of the claim construction decision, whichever is later. First Quality would be agreeable to this date if the case includes only five patents. If more patents are added, then First Quality believes additional time may be necessary. K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

  Rebuttal expert reports due:

K-C proposes 30 days after reports are served. First Quality would be agreeable to this proposal if the case includes only five patents. If more patents are added, then First Quality believes additional time may be necessary. K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

Close of expert discovery:

K-C proposes 30 days after rebuttal reports are served.  First Quality would be agreeable to this proposal if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

6.800     Supplementations due:

K-C proposes 20 days after rebuttal reports are served.  First Quality proposes supplementations be made only as provided by the Federal Rules of Civil Procedure.

## 7.0  Protective Order

K-C's Proposal:

During the conferral with the Court on September 10, 2009, the Court indicated that the local rules of the Northern District of Texas do not apply and that the parties should negotiate a protective order pursuant to Middle District of Pennsylvania rules and practices.

Accordingly, the parties are engaged in negotiating the terms of a protective order.   K-C submitted a proposed protective order to First

Quality's counsel on August 31, 2009, and First Quality proposed changes on September 17, 2009. Among other areas currently in dispute, K-C proposes that three in-house counsel who are not competitive decision-makers be allowed access to Confidential Attorney Eyes Only Information.

In addition, First Quality seeks to limit the First Quality employees that K-C can show First Quality-designated Information designated as Confidential Information or Confidential Attorney Eyes Only Information. In particular, First Quality wants to limit disclosure of First Quality-designated Confidential Information or Confidential Attorney Eyes Only Information to only those First Quality employees (a) who appear as the author or as an addressee on the face of the document and are not otherwise shown prior to such disclosure not to have received the document, (b) who have been identified by First Quality as having been provided with the document or thing or with the information therein, (c) who participated in any meeting or communication to which the document or thing refers, or (d) who have been identified by First Quality as 30(b)(6) witness for subject matter that pertains to said document or thing. K-C proposes that any person who is a director, officer, employee, consultant or agent of the designating party and who counsel has a good faith basis to believe may have relevant information related to said document or thing have access to that party's

confidential information.  K-C believes that First Quality's proposal would prevent K-C from obtaining first-hand knowledge of First Quality's manufacture of infringing products.

K-C also seeks to permit up to three employees of each party with whom counsel for that party may deem it necessary to consult for the preparation of trial of this case, to access documents designated as "Confidential."

Finally, K-C seeks to include a statement, consistent with Federal Rule of Civil Procedure 26(c), that it is the burden of the designating party to establish good cause for its confidentiality designations.

First Quality's Proposal:

A protective order was entered in this case by operation of the Northern District of Texas' Miscellaneous Order 62, which governs patent cases in that Court.  During a telephone conference on September 10, 2009, the Court confirmed that this Protective Order remained in place.  First Quality would like to continue to operate under this protective order which is currently in effect, with one minor change.  K-C has twice moved in Texas for entry of an amendment to the protective order seeking, among other things, to enable its in-house counsel to have access to First Quality's information designated "Attorneys Eyes Only - Confidential Information."

Both times, First Quality opposed K-C's motion. The first motion was denied by Magistrate Judge Ramirez of the Texas Court. The second motion, which was filed in Texas and transferred to this Court, has been withdrawn by K-C.

K-C would like to enter into a new protective order based on a form used in a previous litigation in the Eastern District of Pennsylvania. The parties have engaged in negotiating the terms of a new protective order that would replace the protective order currently in effect. K-C submitted a proposed protective order to First Quality's counsel on August 31, 2009, and First Quality proposed changes on September 17, 2009. Among other areas currently in dispute, K-C once again proposes that three in-house counsel who are not competitive decision-makers are allowed access to Confidential Attorney Eyes Only Information. First Quality does not agree to this proposal because it seeks to maximize the protection of its especially sensitive confidential information.

First Quality wants to limit disclosure of First Quality-designated Confidential Information or Confidential Attorney Eyes Only Information to only those First Quality employees (a) who appear as the author or as an addressee on the face of the document and are not otherwise shown prior to such disclosure not to have received the document, (b) who have been

29

identified by First Quality as having been provided with the document or thing or with the information therein, (c) who participated in any meeting or communication to which the document or thing refers, or  (d) who have been identified by First Quality as 30(b)(6) witness for subject matter that pertains to said document or thing.  K-C proposes that any person who is a director, officer, employee, consultant or agent of the designating party have access to that party's confidential information.   K-C believes that First Quality's proposal would prevent K-C from obtaining first-hand knowledge of First Quality's manufacture of infringing products.

**8.0  Settlement Authority**

I hereby certify that the following individuals have settlement authority:

For K-C:

Kyle Kappes
Vice President and Chief Counsel Litigation
Kimberly-Clark Corporation
2300 Winchester Road
Neenah, WI 54956
(920) 721-2331

Vicki Margolis
Senior Counsel
Kimberly-Clark Corporation
2300 Winchester Road
Neenah, WI 54956
(920) 721-2609

For First Quality Baby Products, LLC:

Kambiz Damaghi
Member
First Quality Baby Products, LLC
80 Cuttermill Rd. Suite 500
Great Neck, NY 11021
Phone: (516) 829-3030

For First Quality Retail Services, LLC:

Kambiz Damaghi
Executive Vice President
First Quality Retail Services, LLC
80 Cuttermill Rd. Suite 500
Great Neck, NY 11021
Phone: (516) 829-3030

For First Quality Products, Inc.:

Kambiz Damaghi
Executive Vice President
First Quality Products, Inc.
80 Cuttermill Rd. Suite 500
Great Neck, NY 11021
Phone: (516) 829-3030

## 9.0  Scheduling

As noted above in ¶ 1.1 (above) K-C has recently alerted First Quality of its desire to amend its Complaint to add six new patents to the five patents that are currently in suit.  The following schedule is based solely upon the currently pending allegations.  First Quality has not had ample time and opportunity to assess the needs and timing that will be necessary to address

additional claims and defenses.

9.1        K-C suggests that this case may be appropriate for trial in approximately 940 days from the filing of the action.  First Quality would be agreeable to this timeframe if the case includes only five patents.  If more patents are added, then First Quality believes that additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

9.2        Suggested Date for Trial:

K-C suggests October 2011.  First Quality would be agreeable to this date if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

9.3        Suggested Date for Final Pre-trial Conference:

K-C suggests September 2011.  First Quality would be agreeable to this date if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended

32

Complaint.

9.4     Final date for joining additional parties:

Plaintiff's proposal: February 12, 2010

K-C believes that the deadline to join parties and amend pleadings should be scheduled for February 12, 2010 to allow the parties to engage in discovery prior to the deadline, and thereby give the parties the opportunity to join parties or amend the pleadings based on information learned through discovery. K-C's proposed date to join parties or amend the pleadings is about half-way through the time allowed for discovery in this case. The parties have agreed on rolling document production beginning August 24, 2009, and First Quality has yet to produce documents responsive to K-C's requests.

Defendants' proposal:

Amendments may be made consistent with the Federal Rules of Civil Procedure.

9.5     Final date for amending pleadings:

Plaintiff's proposal: February 12, 2010 (See 9.4 above)

Defendants' proposal: (See 9.4 above)

9.6     All potentially dispositive motions should be filed by:

K-C suggests March 31, 2011.  First Quality would be agreeable to this date if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

9.7     Claim construction briefing schedule:

Deadline to exchange proposed terms for construction:

K-C suggests December 7, 2009.  First Quality would be agreeable to this date if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

Deadline     to     exchange     preliminary     proposed     claim constructions:

K-C suggests January 15, 2010.  First Quality would be agreeable to this date if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended

Complaint.

> Deadline to reach an agreement to as many disputed claim elements as possible:

K-C suggests January 29, 2010.  First Quality would be agreeable to this date if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

> K-C's opening claim construction brief due:

K-C suggests February 15, 2010.  First Quality would be agreeable to this date if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

> First Quality's responsive claim construction brief due:

K-C suggests March 12, 2010.  First Quality would be agreeable to this date if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended

Complaint.

K-C's reply claim construction brief due:

K-C suggests April 2, 2010.  First Quality would be agreeable to this date if the case includes only five patents.  If more patents are added, then First Quality believes additional time may be necessary.  K-C believes that the schedule does not need to be altered if the Court enters the Amended Complaint.

## 10.0 Other Matters

### 10.1 Claim Construction

The Court is responsible for interpreting the meaning of disputed terms in the patents in suit as a matter of law.  *See Markman v. Westview Instruments Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)).  The proposed claim construction schedule in ¶ 9.7 entails the following.  In an attempt to narrow the issues for claim construction, on December 7, 2009, the parties will exchange a list of claim terms that each party believes requires construction.  On January 15, 2010, the parties will exchange preliminary proposed claim constructions for each of the terms that the parties believe requires construction.  Based on these preliminary proposed claim constructions, the parties will attempt to reach an agreement

36

on the claim construction for as many terms as possible by January 29, 2010.

On February 15, 2010, K-C will file an opening claim construction brief on all of the disputed claim terms for which the parties were not able to reach an agreement. This will be followed by First Quality's response brief on March 12, 2010, and K-C's reply brief on April 2, 2010.

The parties believe that an early construction of any disputed patent claim terms pursuant to a *Markman* hearing will facilitate the efficient and just resolution of this action. The parties seek the scheduling of a hearing on claim construction on or after May 3, 2010, consistent with the adoption of the above proposed schedule for claim construction as set forth in ¶ 9.7, above.

If six additional patents are added to the case, First Quality believes that a single *Markman* hearing on eleven patents would be inefficient and would propose that the Court hold multiple *Markman* hearings. K-C believes that holding multiple *Markman* hearings would be inefficient, and K-C proposes that the Court hold only one *Markman* hearing.

10.2 Provisions for Electronically Stored Information.

The parties agree that documents and electronically stored information ("ESI") shall be produced in single-page tiff format utilizing Group 4 compression. First Quality will produce such ESI with document boundaries

37

identified via an accompanying Opticon load file.  K-C will produce such ESI with document boundaries identified via an accompanying .LFP load file.  Each tiff image shall be named after the document production number assigned to the image.  Optical Character Recognition (OCR) for each tiff image shall also be provided.  Electronically produced information may be delivered to the requesting party on CD or DVD, or other electronic format of the type readily accessed and viewed by a Windows-based personal computer.  The case caption and the producing party shall be identified on each of such CD or DVD, along with the document production number range(s) corresponding to the contents of such CD or DVD.

The parties agree that the scope of electronic discovery will not require either party to engage in or conduct forensic analyses and/or keyword searching.  The parties need not produce electronic documents in their native file formats or metadata associated with the electronic document, unless the requesting party can show a justifiable need for the native file or metadata and it would not be unreasonable, unduly burdensome, or expensive for the producing party to provide the requested native file or metadata.

10.3  Inadvertent Disclosure of Privileged Information

The parties have agreed on a procedure for handling inadvertent

production of attorney client privileged and/or work product information.

If a party through inadvertence produces or provides discovery which it believes is subject to a claim of an applicable privilege, the producing party may give written notice to the receiving party or parties that the information or material is subject to a claim of privilege and request that the information or material be returned to the producing party. The receiving party or parties shall immediately return to the producing party such information or material. Return of the information or material by the receiving party shall not constitute an admission or concession, or permit any inference, that the returned information or material is, in fact, properly subject to a claim of privilege nor shall it foreclose any party from moving the court for an order that such information or material has been improperly designated for reasons other than a waiver caused by the inadvertent production.

10.4  Service by Email

The parties have agreed to accept service by email pursuant to Federal Rule of Civil Procedure 5(b)(2)(E). The parties further agree that if another form a service other than email is used, the serving party will also serve a courtesy copy by email.

10.5  Expert Discovery

The parties agree that drafts of expert reports and working notes in preparation of expert reports are not discoverable and need not be retained or produced.

K-C proposes that the Civil Rules Advisory Committee's Proposed New Rule 26(b)(4)(B)-(C), as set forth below and as available at http://www.uscourts.gov/rules/reports.htm, Advisory Committee on Rules of Civil Procedure, May 2009, at 10-11, with regard to expert discovery, should be adopted for this case. Proposed New Rule 26(b)(4)(B)-(C) states:

(B)    *Trial-Preparation Protection for Draft Reports or Disclosures*. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

(C)    *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses*. Rules 26(b)(3)(A) and (B) protect communications between the party's attorneys and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
(i) relate to compensation for the expert's study or testimony;
(ii) identify facts or data that the party's attorney provided and

that the expert considered in forming the opinions to be
expressed; or (iii) identify assumptions that the party's attorney
provided and that the expert relied on in forming the opinions to
be expressed.

K-C notes that the parties agree that subsection (B) of the Proposed New
Rules should be adopted here, as set forth in the first paragraph above.  K-C
believes subsection (C) should also be included for completeness and to
avoid future discovery disputes as to what is or is not discoverable.

First Quality prefers to apply the Federal Rules of Civil Procedure as
they are currently in effect.


**11.0 Identification of Counsel**

Identify by name, address, and telephone number lead counsel for
each party.  Also please indicate ECF User status below:


Marc S. Cooperman
Banner & Witcoff, Ltd.
10 S. Wacker Dr., Suite 3000
Chicago, IL 60606
(312) 463-5000


Dated: _____            _____
                                  Attorney for Plaintiff
                                  ECF User

Ira. E. Silfin
Amster Rothstein & Ebenstein LLP
90 Park Avenue, 21st Floor
New York, NY 10016
(212) 336-8000

Dated:                    _____
                          Attorney for Defendants
                          ECF User

Dated: September 24, 2009                    Respectfully submitted,

___/s/ by AMS with consent             _s/Adam M. Shienvold
Kenneth P. George                      Bridget E. Montgomery
Ira E. Silfin                          Adam M. Shienvold
Brian A. Comack                        **Eckert Seamans Cherin & Mellott,**
Nathan Weber                           **LLC**
AMSTER ROTHSTEIN & EBENSTEIN           213 Market Street
LLP                                    8th Floor
90 Park Ave.                           Harrisburg, PA 17101-2132
New York, NY 10016                     Tel: (717) 237-6000
Phone:    (212) 336-8000               Fax: (717) 237-6019
Email:    kgeorge@arelaw.com
          isilfin@arelaw.com           Marc S. Cooperman
          bcomack@arelaw.com           Janice V. Mitrius
          nweber@arelaw.com            Jeffrey M. Cox
                                       Katherine L. Fink
                                       **Banner & Witcoff, Ltd.**
Thomas B. Schmidt II (PA 19196)        10 S. Wacker Dr., Suite 3000
Brian P. Downey (PA 59891)             Chicago, IL 60606
Frederick Alcaro (PA 91555)            Tel: (312) 463-5000
PEPPER HAMILTON LLP                    Fax: (312) 463-5001
Suite 200, 100 Market Street

42

P.O. Box 1181
Harrisburg, PA 17108-1181
Phone:      (717) 255-1155
Fax:          (717) 238-0575
Email:      downeyb@pepperlaw.com
                 schmidtt@pepperlaw.com
                 alcarof@pepperlaw.com

**Attorneys for Defendants:**
First Quality Baby Products, LLC
First Quality Retail Services, LLC
First Quality Products, Inc.

**Attorneys for Plaintiff,**
Kimberly-Clark Worldwide, Inc.