IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :

    Plaintiff                :

    vs.                          :   CIVIL NO. 1:CV-09-1685

                                 :

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC.,     :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC.,      :
    Defendants

*M E M O R A N D U M*

*I.    Introduction*

Presently before the court is defendants' First Quality Baby Products, LLC, First Quality Products, Inc., and First Quality Retail Services, LLC (collectively "First Quality") motion for summary judgment seeking invalidity of all asserted claims of plaintiff Kimberly-Clark Worldwide, Inc.'s ("KC") U.S. Patent No. 5,496,298 ("Kuepper Patent"). First Quality contends that asserted Claims 1, 2, 10-14 and 30 of the Kuepper Patent are invalid because the alleged invention was previously disclosed in U.S. Patent No. 5,019,073 ("Roessler Patent"). KC argues that summary judgment should be denied because there are numerous factual issues in dispute and First Quality has failed to prove by clear and convincing evidence that the Roessler Patent anticipates or renders obvious the asserted claims of the Kuepper Patent.

We will examine the motion under the well-established standard. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d. Cir. 2008). Upon careful review of the briefs and the record, we will deny defendants' motion.

*II.     Background*

This controversy originally began in February 2009 when defendants filed a complaint in this court seeking declaratory judgment of invalidity and noninfringment of the Kuepper Patent.  *See First Quality Baby Prods., LLC v. Kimberly-Clark Worldwide, Inc.*, Case No. 09-354.  KC moved for dismissal arguing that we lacked subject matter jurisdiction over the declaratory judgment action.  We agreed and dismissed the case.  *See First Quality Baby Prods., LLC v. Kimberly-Clark Worldwide, Inc.*, No. 09-0354, 2009 WL 1675088 (M.D. Pa. June 15, 2009).  Prior to our dismissal, however, KC filed a patent infringement action in the United States District Court for the Northern District of Texas.  On August 31, 2009, KC's infringement action was transferred from the Northern District to this court.  On January 5, 2009, First Quality filed the instant motion for summary judgment claiming that the asserted claims of the Kuepper Patent are invalid based on anticipation and obviousness.

*III.    Discussion*

   *A.   Invalidity Principles*

A patent is presumed valid, 35 U.S.C. § 282, and this presumption can only be overcome by clear and convincing evidence.  *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000).  The burden is on the attacker to prove invalidity, and this burden never shifts.  *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984).

> When an attacker...produces prior art or other evidence *not* considered in the PTO, there is, however, *no reason to defer* to the PTO so far as *its* effect on validity is concerned.  Indeed, new prior art not before the PTO may so clearly invalidate a patent that the burden is fully

2

> sustained merely by proving its existence and applying the proper law; but that has no effect on the presumption or on who has the burden of proof...What the production of new prior art or other invalidating evidence not before the PTO does is to eliminate, or at least reduce, the element of deference due the PTO, thereby partially, if not wholly, *discharging* the attacker's burden, but neither shifting nor lightening it or changing the standard of proof...When new evidence touching validity of the patent not considered by the PTO is relied on, the tribunal considering it is not faced with having to *disagree* with the PTO or with *deferring* to its judgment or with taking its expertise into account. The evidence may, therefore, carry more weight and go further toward sustaining the attacker's unchanging burden.

*Id.* at 1359-60 (case citations omitted)(emphasis in original).  Nonetheless, we must take into account all evidence bearing on its validity regardless of whether considered it was by the PTO.

In determining whether a patent is invalid, a district court must engage in a two-part analysis.  *See Helifix*, 208 F.3d at 1346*; see also Lemelson v. General Mills, Inc.* 968 F.2d 1202, 1206 (Fed. Cir. 1992).  We must first construe the disputed claims terms, and then compare the terms to the prior art.  *See Helifix*, 208 F.3d at 1346.

### B.   Claim Construction

Claim construction is a matter of law.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)(en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384 (1996).  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which a patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005)(quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The words of a claim are generally given their "ordinary and customary meaning."  *Id.* (quoted case omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art...at the time of the

invention." *Id.* at 1313.  We determine this meaning primarily through intrinsic evidence, i.e. the claim language, the specification and the prosecution history.  *See Power-One, Inc. v. Artesyn Technologies, Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010); *see also Phillips,* 381 F.3d at 1312-17 (defining intrinsic evidence); *Arlington Indus., Inc. V. Bridgeport Fittings, Inc.*, No. 01-0485, 2008 WL 542966, at *1 (M.D. Pa. Feb. 25, 2008).  We may also consider extrinsic evidence, such as dictionaries, treatises, and expert testimony, to shed light on claim construction, but such evidence "is less significant than the intrinsic record" and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 381 F.3d at 1317-19.

In some instances, the ordinary meaning of claim language "as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction...involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.  A patentee, however, "may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Thus, it is necessary for a court to review the specification to determine whether a patentee has used any terms in a manner different from their ordinary meaning. *Id.*  Nonetheless, a court must avoid the danger of importing limitations from the specification into the claim. *Phillips*, 415 F.3d at 1323.  "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if [a] court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Id.*  Although a specification may describe certain embodiments of an invention, the Federal Circuit

cautions against confining the claims to those embodiments. *Id.* Nevertheless, the Federal Circuit makes clear that if a claim term is construed in a manner that would render an embodiment in the specification outside the scope of the patent claim such an interpretation would "rarely, if ever," be correct and would "require highly persuasive evidentiary support." *Vitronics*, 90 F.3d at 1583. Likewise, claims cannot "enlarge what is patented beyond what the inventor has described as the invention." *Abbott Lab. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009)(citations omitted).

  First Quality and KC disagree on four phrases found in the claim terms of the Kuepper patent. We will thus discuss and construe each disputed claim term. We will construe each claim based on the arguments presented by the parties in their claim construction briefs and argued before the court during the claim construction hearing.

### 1. "said second connecting edge being non-parallel to said first connecting edge"



FIG. 1

The phrase "said second connecting edge being non-parallel to said first connecting edge" is used in claim 1 of the '298 Kuepper patent. KC contends that this language means "at least some portion of the second connecting edge being non-parallel to the first connecting edge." (doc. 150 at 41.) In support of its proposed construction, KC indicates that Figures 1 and 5 of the patent show that portions of the first (**38)** and second (**40**) connecting edges are parallel and also non-parallel. KC refers specifically to the generally horizontal

5

lowermost portion of the second connecting edge nearest the body of the diaper. (doc. 150 at 42.)  KC argues that it's construction clarifies the meaning of the non-parallel limitation by placing it in context with the specification and figures.  In response, First Quality argues that the phrase should be given its ordinary and customary meaning, and thus no construction is necessary.  (doc. 168 at 19.)  Specifically, First Quality asserts that the additional phrase "at least some portion" improperly limits the claim to embodiments found in the specification.  (doc. 168 at 20.)  The evidence supports First Quality's position.



FIG. 5

      KC's proposed construction would expand the disputed claim term beyond what is specifically found in the claims and specification.  As First Quality indicates, the language of both Claim 1 and 15 provide that "said second connecting edge *being non-parallel* to said first connecting edge."  U.S. Patent No. 5,496,298, Claim 1 & 15 (emphasis added).  This language is clear and unambiguous.  If KC wanted to expand the scope of Claim 1, it could have done so by drafting the claim to require only a portion, and not the total of the second connecting edge to be non-parallel.  In fact, KC demonstrated that is was capable of this by including expansive language in Claim 11 when it provided that "said distal edge is *generally* parallel to said proximal edge."  U.S. Patent No. 5,496,298, Claim 11 (emphasis added).  In addition, the specification further supports the contention that the claim language is unambiguous because in one other embodiment, depicted in Figure 2, it provides that the "first connecting edge (**38)** and second connecting edge (**40**) are non-parallel."  U.S. Patent No. 5,496,298, col. 3, ll 64-65.  KC makes much of the patent drawings depicting, presumably, portions of the first and second connecting edges being

6

parallel. However, patent drawings do not define the precise proportions of a patent element. *See Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000). While the drawings may indicate that portions of the first and second connecting edges are parallel, the claim and specification makes clear that these elements of the invention are to be non-parallel.[1] In contrast, First Quality proposes that the claim language essentially speaks for itself. We agree. Thus, we will construe "said second connecting edge being non-parallel to said first connecting edge" to mean that "the second connecting edge is non-parallel to the first connecting edge."

> 2. "a first connecting edge, and a second connecting edge, said first and second connecting edges connecting said proximal edge and distal edges."

KC proposes that the phrase "a first connecting edge, and a second connecting edge, said first and second connecting edges connecting said proximal edge and distal edges" found in Claim 1 of the Kuepper should be construed to mean "a first connecting border, and a second connecting border, the first border and the

---

[1] Neither party addressed the peculiar language of the specification that indicates the possibility of two "proximal" edges. The specification provides:

> [t]he elastomeric ears **24** include *a proximal edge **34***, an opposed distal edge **36**, a first connecting edge **38**, and a second connecting edge **40**. As used herein, *the proximal edge* is that edge of the elastomeric ears **24** which is joined to lateral edges **42** of diaper body **44** defined by, in the illustrated embodiment [FIG. 1], outer cover **12** and bodyside liner **14**. The distal edge **36** is that edge of elastomeric ear **24** which is opposite *the proximal edge **34*** moving in a direction outward from a central longitudinal axis of the diaper **10**. The first and second connecting edges **38** and **40** connect *the proximal edge **42*** and the distal edge **36** thereby defining a body of elastomeric materials which at least partially define elastomeric ear **24**.

U.S. Patent No. 5,496,298, col. 3, ll. 1-13 (emphasis added). This language indicates that, at least pertaining to Figure 1, that a different proximal edge is described. This embodiment does not show that portions of the first (**38)** and second (**40**) connecting edges are parallel and also non-parallel. Instead, it provides that the second connecting edge (**40**) connecting to a proximal edge (**42**) is non-parallel to the first connecting edge (**38**). Thus, it appears that KC's reliance on FIG. 1 is misplaced.

7

second border extending between the proximal border and the distal border." (doc. 150 at 40.)  KC argues that its construction is supported by the claim language and specification.  First Quality however asserts that the claim language is clear and requires no additional construction from the court.

After reviewing both parties contentions, we conclude that the specification and the unambiguous claim language support First Quality's contention that the disputed term needs no construction.  Claim 1 of the Kuepper patent provides, in relevant part, that:

> a pair of elastomeric ears attached to said rear portion, said ears having a proximal edge, a distal edge, a first connecting edge, and a second connecting edge, said first and second connecting edges connecting said proximal and distal edges, said second connecting edge being non-parallel to said first connecting edge, and said proximal edge being longer than said distal edge...

U.S. Patent No. 5,496,298, Claim 1.  Reflecting this claim language, the specification states that the "first and second connecting edges **38** and **40** connect the proximal edge **42** and the distal edge **36**...."  U.S. Patent No. 5,496,298, col. 3, ll. 10-11.  Based on this language, we find no basis for KC's proposed construction.  KC does not argue that "edge" is a technical term of art that requires a special definition, but rather proposes using a dictionary definition to define "edge" to mean "border."  However, we believe any jury would readily understand the meaning of the word "edge," and thus it requires no special definition.  Likewise, there is no support in the intrinsic evidence for "connecting" to mean "extending between."  Both the claim and specification clearly provide that the first and second connecting edges connect the proximal edge and distal edge. If we were to adopt KC's construction, we would be expanding the scope of the claim language beyond what the claim language provides.  Thus, we conclude that the claim terms speaks for itself, and therefore the disputed claim term means "a

8

first connecting edge, and a second connecting edge, said first and second connecting edges connecting said proximal edge and distal edges."

### 3. "wherein, when in use, said second connecting edge defines at least a portion of a leg opening"

For this disputed claim term, First Quality proposes that no construction is necessary and the phrase be given its ordinary and customary meaning. (doc. 168 at 20.)  KC proposes a construction that includes additional language, "such that the elastomeric ear contacts the skin of the wearer directly," because "First Quality has taken a position in its invalidity contention that this limitation is disclosed by prior art." (doc. 150 at 42.)  In support, KC cites to portions of the specification that explain "in use, the elastomeric ears **24** may contact the skin of a wearer directly, and first connecting edge **38** may form part of the waste opening, and second connecting edge **40** may form part of a leg opening of the diaper **10** when in used on a wearer." U.S. Patent No. 5,496,298, col. 3, ll. 35-40; *see also* (doc. 150 at 43.)  In response to KC's argument, First Quality contends that KC is attempting to limit the scope of the Claim 1 because it is concerned with the validity of the claim.

An examination of the claim and specification language reveal no evidence unequivocally supporting KC's proposed construction.  As First Quality argues, the specification language offered in support by KC is permissive language that merely indicates that, when in use, the elastomeric ears "may contact the skin of a wearer." This language does not require that the elastomeric ears must contact the skin of the wearer directly.  KC's construction would place just such a limitation into the claim without proper intrinsic support.  Therefore, we reject KC's proposed construction, and construe "wherein, when in use, said second connecting edge

defines at least a portion of a leg opening" to mean "wherein, when in use, the second connecting edge defines at least a portion of a leg opening."

### 4. "wherein said elastomeric ear further comprises a nonelastomeric extension member attached to said distal edge"

The phrase "wherein said elastomeric ear further comprises a non-elastomeric extension member attached to said distal edge" is found in dependant Claim 30 of the Kuepper patent. KC proposes that the meaning of this language is "wherein the elastomeric ear has a non-elastomeric extension member attached on or near the distal edge." (doc. 150 at 26-27.) It's proposal replaces "to" with "on or near." First Quality opposes this change in language contending that it impermissibly broadens the express language of the claim. (doc. 168 at 23).

We will construe "wherein said elastomeric ear further comprises a non-elastomeric extension member attached to said distal edge" to mean "wherein the elastomeric ear further comprises a non-elastomeric extension member attached to the distal edge along a seam." This construction is supported by the claim language and the specification. The claim language, as indicated above, clearly provides that the non-elastomeric ear extension member be "attached *to* said distal edge." U.S. Patent No. 5,496,298, Claim 30 (emphasis added). "To" is not a technical term of art that requires a special definition. Therefore, KC's proposed construction would impermissibly broaden the scope of the claimed invention beyond what the inventor intended or a person of ordinary skill in the art would understand the claim language to mean. When KC chose the language for Claim 30, they chose the phrase " attached to". A person of ordinary skill in the art would understand "attached to" to mean that the ear extension would be attached to, not on or near, the distal edge. However, the specification, represented by FIG. 5, relating to the extension member indicates that

the said member "is attached to the main body **48** along a seam **52**." U.S. Patent No. 5,496,298, col. 5, ll. 13-14.  Based on this language, we conclude that a person of ordinary skill in the art would understand that the ear extension must be attached to the distal edge along a seam.  Accordingly, we will construe "wherein said elastomeric ear further comprises a non-elastomeric extension member attached to said distal edge" to mean "wherein the elastomeric ear further comprises a non-elastomeric extension member attached to the distal edge along a seam."



FIG. 5

### C. Anticipation

An invention is anticipated under 35 U.S.C. § 102(b) if is "was patented or described in a publication in this or a foreign country or in a public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).  Anticipation is a question of fact.  *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008).  Invalidity by anticipation requires that the four corners of a single prior art reference describe every element of the claimed invention, either expressly or inherently, *TriMed*, 2010 WL 2292312 at *7, such that it enables one of ordinary skill in the art to make the invention without undue experimentation.  *Orion IP, LLC v. Hyundai Motor America*, 605 F.3d 967, 975 (Fed. Cir. 2010).  Furthermore, the party asserting invalidity due to anticipation must do so by clear and convincing evidence.  *Id.*

Here, our analysis is two fold.  First, we must determine if First Quality has presented clear and convincing evidence showing that the Roessler Patent anticipates claim 1 of the Kuepper Patent.  If we find that First Quality has not met their

11

burden, our analysis ends because asserted claims 10-14 and 30 are dependant upon claim 1.  If we find, however, that claim 1 was anticipated by Roessler, we must continue our analysis of the remaining asserted claims.

First Quality contends that the Roessler Patent discloses the following limitations for claim 1 of the Kuepper patent: 1) a disposable absorbent article; 2) elastomeric ears attached to the rear of said article; 3) said ears have a proximal edge that is longer than the distal edge; 4) said ears have a second connecting edge that is non-parallel to a first connecting edge; 5) a fastener is joined to the elastomeric ears; and 6) when in use, the second connecting edge defines a portion of a leg opening. (doc. 133 at 15-20.)  KC primarily argues that First Quality has failed to show that the Roessler Patent anticipates that "when in use, the second connecting edge defines a portion of a leg opening."

After careful review, we conclude that First Quality has failed to meet its burden by clear and convince evidence showing that claim 1 of the Kuepper Patent is anticipated by the Roessler Patent.  Both KC and First Quality submit expert testimony, G.A.M. Butterworth (Tony) and John M. Blevins, respectively, that supports their respective positions.  Mr. Blevins offers convincing evidence indicating the possibility that the Roessler anticipates Kuepper claim 1.  However, the declarations of Mr. Butterworth sufficiently rebut First Quality's assertions, and thus creates a genuine issue of material fact as to whether the Roessler Patent anticipates claim 1. Specifically, Mr. Butterworth cites portions of the Roessler specification that indicates the side margins **15** and **16** encircle a leg of the wearer, while the ear portions (**36** & **37)** overlap to encircle the abdomen of



FIG. 12

the consumer and do not form part of the leg opening.  *See* U.S. Patent No. 5,019,073, col. 9, ll. 10-12; col. 10, ll. 2-12; col. 5, ll. 39-41; col. 4, ll. 9-18; and col. 5, ll. 53-57.  As our claim construction makes clear, one of the limitations of claim 1 of the Kuepper patent is that when in use "the second connecting edge defines at least a portion of a leg opening."  Without this limitation, Roessler cannot anticipate the asserted claims of Kuepper.  Thus, First Quality has failed to show by clear and convincing evidence that the Roessler Patent anticipates claim 1 of the Kuepper Patent.   Based on this conclusion, we also find that First Quality has failed to show by clear and convincing evidence that asserted claims 10-14 and 30 are anticipated because said claims are dependant upon claim 1.

### D.  Obviousness

A patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a); *TriMed, Inc. v. Stryker Corp.*, ---F.3d----, 2010 WL 2292312 (Fed. Cir. 2010).  Whether the invention would have been obvious at the time of invention to one of ordinary skill in the art is a question of law based on the underlying facts.  *Media Technologies Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1337 (Fed. Cir. 2010).  If a patent challenger makes a prima facie case showing obviousness, the patent holder may rebut based on "'unexpected results' by demonstrating 'that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected.'"  Procter & Gamble Co. *v.*

*Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)(*In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995)).

The relevant factual inquiries involve applying factors found in *Graham v. John Deere Co. Of Kansas City*, 383 U.S. 1, 17-18, 86 S.Ct. 684 (1966): 1) the scope and content of the prior art; 2) the differences between the claimed invention and the prior art; 3) the level of ordinary skill in the art; and 4) any relevant secondary considerations. *TriMed*, 2010 WL 2292312 at *5 (citing *Dystar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006). "An obvious analysis may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do necessarily require explication in any reference or expert opinion." *TriMedi*, 2010 WL 2292312 at *6. "[T]o invoke common sense or any other basis for extrapolating from prior art to a conclusion of obviousness" on summary judgment, we must articulate our reasoning with sufficient clarity for review. *Id.* Nevertheless, in the final analysis, if there is a genuine issue of material facts as to any of the *Graham* factors, summary judgment will not be granted.

We found that genuine issues of material fact exist on whether the Roessler Patent discloses an absorbent article where the second connecting edge defines at least a part of the leg opening precluded summary judgment on First Quality's anticipation claim. Based on this finding, we conclude there is a dispute on the scope and content of the prior art, and the differences between the claimed invention and the prior art. In light of this conclusion, we will deny First Quality's motion for summary judgment that asserted claims 12-14 are obvious because of the Roessler Patent.

*IV.     Conclusion*

Based on the foregoing, we will deny defendants motion for summary judgment.  We will also dismiss plaintiff's motion to stay summary judgment and claim construction of the Kuepper Patent as moot.

We will issue an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: July 29, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :

    Plaintiff                   :

    vs.                        :  CIVIL NO. 1:CV-09-1685

                                  :

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC.,        :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC.,        :
    Defendants

*O R D E R*

AND NOW, this 29th day of July, 2010, upon consideration of defendants' motion for summary judgment (doc. 132), and pursuant to the accompanying Memorandum, it is ordered that:

    1.  Defendants' motion for summary judgment is denied.

    2.  Plaintiff's motion for stay (doc. 229) is dismissed as moot.

    3.  "Said second connecting edge being non-parallel to said first connecting edge" means "the second connecting edge is non-parallel to the first connecting edge."

    4.  "A first connecting edge, and a second connecting edge, said first and second connecting edges connecting said proximal edge and distal edge" means  "a first connecting edge, and a second connecting edge, said first and second connecting edges connecting said proximal edge and distal edges."

    5.  "Wherein, when in use, said second connecting edge defines at least a portion of a leg opening" means "wherein, when in use, the second connecting edge defines at least a portion of a leg opening."

    6.  "Wherein said elastomeric ear further comprises a non-elastomeric extension member attached to said distal edge" means "wherein the elastomeric ear further

        comprises a non-elastomeric extension member attached to the distal edge along a seam."

                            <u>/s/William W. Caldwell</u>
                            William W. Caldwell
                            United States District Judge