IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC.,   :

        Plaintiff                :

        vs.                    :  CIVIL NO. 1:CV-09-1685

                                   :

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC.,    :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC.,    :
        Defendants and
        Counterclaim Plaintiffs   :

        vs.                    :

KIMBERLY-CLARK CORPORATION,   :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC,:
        Counterclaim Defendants

*M E M O R A N D U M*

*I.*     *Introduction*

         Presently before the court is plaintiff Kimberly-Clark Worldwide, Inc.'s ("KC") motion to dismiss defendants First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic, Inc.'s (collectively "First Quality") counterclaims I-VII.  For the following reasons, we will deny the motion.

*II.*     *Background*

         First Quality avers the following.  First Quality and KC each manufacture a line of absorbent hygiene products, such as infant diapers, training pants, and adult incontinence products.  (Countercl. ¶¶ 16-18, 22-25.)  KC is the maker of the Huggies

brand of products, while First Quality manufacturers and sells "private label", or store brands, to retailers.  (Countercl. ¶¶ 16, 22-25.)  KC currently maintains a thirty-five percent market share for disposable baby diapers and a seventy-five percent share in the training pants markets.  (Countercl. ¶ 17-18.)

As a result of these market shares and the amassing of over 300 patents, First Quality alleges that KC uses its patents to disrupt competitors and to maintain a monopoly in the disposable baby diaper and training pants market. (Countercl. ¶¶ 13, 93.)  KC first threatens a patent lawsuit and then engages in sham litigation to drain the resources of private label manufacturers, thereby reducing the ability of private labelers to compete with KC's larger market shares.  (Countercl. ¶¶ 84-87, 112-13.)  It accomplishes this goal by enforcing patents that, according to First Quality, KC knows to be invalid, procured through fraud on the Patent and Trademark Office ("PTO"), or not infringed.  (Countercl. ¶¶ 51-52, 84-86.)  KC then misrepresents the nature of the litigation in order to threaten retail outlets, such as Walmart, with "empty shelves" of diapers if it does not make KC the exclusive supplier of training pants store brand, or forces private label manufacturers to enter into secret settlement agreements that involved the purchasing of unnecessary licences.  (*See* Countercl. ¶¶ 18, 112.)  As a result, consumers are forced to pay more for disposable baby diapers and training pants, and competitors efforts to enter and compete in the market are hindered.  (Countercl. ¶¶ 113-114.)

On February 12, 2010, KC submitted a motion seeking leave to file a second amended complaint.  KC's proposed amendment included the same allegations against all the defendants, but also sought to add a new defendant, First Quality Hygienic, Inc., add allegations of inducement and/or contributory infringement in Count I, add allegations of willful infringement to Counts III and IV, and finally

include additional allegedly infringing products under Counts VI, VII, VIII, and X–Confidence Underwear and Extra Absorbency.  We granted leave and the second amended complaint was deemed filed on May 5 ,2010.

On July 26, 2010, First Quality filed an answer wherein in alleged numerous additional facts that were not present in its original answer or its answer to the amended complaint.  In addition, First Quality alleged, for the first time, seven new counterclaims.  In response, KC filed motions to strike, dismiss, sever and transfer, or in the alternative sever and stay defendants counterclaims I-VII.  We granted KC's motion to strike the counterclaims, concluding that First Quality did not seek leave of court before filing asserting its new claims.  *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, - - - F.Supp.2d - - - -, 2010 WL 5365650 (M.D. Pa. 2010).  However, on reconsideration, we vacated our order and denied KC's motion to strike.  *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. CV-09-1685, 2011 WL 743468 (M.D. Pa. Feb. 24, 2011).  On April 29, 2011, we granted KC's motion to bifurcate the patent claims and counterclaims I-VII for purposes of trial, concluding judicial efficiency and jury comprehension necessitated claim separation.  *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. CV-09-1685, 2011 WL 1627052, at *2 (M.D. Pa. April 29, 2011).  We also stayed discovery related to counterclaims I-VII until such time as we resolved the instant motion to dismiss.  *Id.* at *3.

III.     *Discussion*

A.     *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule

12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).   While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."   *Id.* at 570, 127 S.Ct. 1955 at 1974.   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Ashcroft v. Iqbal*, - - - U.S. - - - -, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.)   Instead, this requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."   *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010)(citing *Phillips*, 515 F.3d at 234).   "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." *Fowler*, *supra*, 578 F.3d at 210.   First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210-11.   Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at  211 (quoted case omitted).  When evaluating monopolization claims under the Sherman Act, we must "look to the [alleged]

4

monopolist's conduct taken as a whole rather than considering each aspect in isolation." *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003).

> ### B.   *Counts I and VI - Monopolization*

First Quality asserts a monopolization claim against KC under section 2 of the Sherman Act, 15 U.S.C. § 2, and violation of New York's Donnelly Act, N.Y. General Business Law § 340.[1]  KC seeks dismissal of both claims for failure to state a claim, arguing that: (1) First Quality failed to sufficiently allege anticompetitive conduct in the relevant monopolized market; (2) First Quality inadequately alleges fraud or sham litigation, thus rendering KC immune from antitrust liability; (3) First Quality's allegations of secret settlements and arbitrations do not show plausible monopolization; and (4) First Quality failed to sufficiently plead that KC's patent enforcement actions were objectively baseless.  (*see* doc. 271.)

The Sherman Act provides, in relevant part that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony."  15 U.S.C. § 2.  To that end, a monopolization claim has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71, 86 S.Ct. 1698 (1966).  However, the "mere possession of monopoly

---

[1]  New York's Donnelly Act is a parallel antitrust statute to the Sherman Act.  Thus, the monopolization claims will be addressed together because the requirements under the Donnelly Act are identical to a monopolization claim under the Sherman Act. *See Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc.*, 823 N.Y.S.2d 79, 81 (N.Y. App. Div. 2006)("The Sherman Act (15 U.S.C. § 1) and the Donnelly Act require identical basic elements of proof for claims of monopolization...and, in fact, the Donnelly Act was modeled on the Sherman Act.).

power" alone is not unlawful; "it is an important element of the free-market system." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP.*, 540 U.S. 398, 407, 124 S.Ct. 872 (2004).  Nevertheless, the possession of monopoly power will be found unlawful if "it is accompanied by an element of anticompetitive *conduct.*"  *See Id.* (emphasis in original).   Anticompetitive conduct takes many forms, "but it is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits."  *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 308 (3d Cir. 2007); *see Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 783 (6th Cir. 2002)("If a firm has been attempting to exclude rivals on some basis other than efficiency, it is fair to characterize its behavior as [anticompetitive]").[2]

This requirement of anticompetitive behavior is important in the context of patents, because a patent by its nature grants a patentee the right to exclude others.  Thus, "a patent is an exception to the general rule against monopolies and to the right of access to a free and open market."  *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323, 1333 (Fed. Cir. 2008)(quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 816, 65 S.Ct. 993 (1945)).[3]

---

[2]  Monopoly power is defined as the "ability to control prices or exclude competition." *United States v. Dentsply Int'l., Inc.*, 399 F.3d 181, 187 (3d Cir. 2005).

[3]  In determining whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from federal antitrust laws, we apply the law of the Federal Circuit. *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000-01 (Fed. Cir. 2007). However, we apply Third Circuit law when approaching other antitrust issues.  *Id.*

1. *Anticompetitive Conduct*

As mentioned previously, KC argues that First Quality failed to sufficiently plead anticompetitive conduct tied to the relevant monopolized markets.[4] While neither conceding nor denying that it holds monopoly power in this market, KC claims that First Quality does not explain how KC's enforcement of its patents with respect to disposable diapers or incontinence products can somehow enhance or protect KC's position in the training pants market. (doc. 271, pg. 16.) First Quality responds that KC intended to harm First Quality by attacking it across a range of products in order to raise First Quality's costs thereby preventing it from challenging KC in the relevant market. (doc. 314, pg. 19.)

After review, First Quality's sufficiently alleges that KC engaged in anticompetitive conduct. KC excluded and suppressed competition. (Countercl. ¶¶ 112-13). The alleged anticompetitive conduct included intentionally obtaining patents through fraud on the patent office (Countercl. ¶¶ 35-83), product disparagement through false claims (Countercl. ¶¶ 18, 33), secretly arbitrating patent disputes and coercively acquiring licensing agreements through settlement. (Countercl. ¶¶ 13, 92-99, 112.) Each of these acts in isolation may itself not rise to the level of anticompetitive conduct, but in the aggregate it represents anticompetitive activity tied

---

[4] First Quality avers that the relevant markets are disposable baby diaper and training pants markets, (Countercl. ¶¶ 13, 111, & 113), and the relevant geographic location for said markets is the United States, (Countercl. ¶ 14). As mentioned previously, KC allegedly maintains a 35% and 75% market share in the disposable baby diaper and training pants market, respectively. KC does not admit or deny that it holds monopoly power in the training pants market. Furthermore, KC is correct in its assertion that a 35% market share alone is insufficient to establish monopoly power. *See Fineman v. Armstrong World Indust., Inc.*, 980 F.2d 171, 201 (3d Cir. 1992). However, this determination does not apply if "other relevant factors" are present, such as the size and strength of competing companies, freedom of entry into the market, pricing trends and practices in the industry, ability of consumers to substitute to comparable goods, and consumer demand. *Id.* at 201-02 (citing *Weiss v. York Hosp.* 745 F.2d 786, 827 n.72 (3d Cir. 1984). For purposes of this motion, we conclude that First Quality alleged sufficient facts showing these additional factors. Thus, we will assume that KC maintains monopoly power in the above mentioned markets.

to the relevant markets that raise a plausible claim for relief. *See Abbot Labs. v. Teva Pharm. USA, Inc.,* 432 F.Supp.2d 408, 428 (D. Del. 2006)("[A plaintiff is] entitled to claim that individual acts are antitrust violations, as well as claiming that those acts as a group have anticompetitive effect even if the acts taken separately do not.").

> 2. *Noerr-Pennington Immunity*

KC next asserts it is shielded from antitrust liability by *Noerr-Pennington* immunity. This doctrine, first expressed in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523 (1961) and later examined in *Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585 (1965), immunizes from antitrust liability those who petition the government. Prosecuting a patent infringement action is the type of activity protected by *Noerr-Pennington*.

Exceptions exist to this rule, generally referred to as the "sham" and "*Walker Process* fraud" exceptions, which deny immunity to petitioning activities that are mere "sham" and conduct before the PTO that is fraudulent, respectively. *In re Relafen Antitrust Litig.*, 346 F.Supp.2d 349, 358-59 (D. Mass. 2004); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998). "[S]ham litigation is present where the lawsuit is objectively baseless and subjectively motivated by a desire to impose anticompetitive harm from the judicial process rather than obtain judicial relief." *Erbe Elektromedizin GmbH* v. *Canady Tech. LLC*, 629 F.3d 1278, 1291 (Fed. Cir. 2010)(citing *Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. ("PRE"),* 508 U.S. 49, 60-61, 113 S.Ct. 1920 (1993)). In *Walker Process Equipment , Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347 (1965), the Supreme Court held that "the enforcement of a patent procured by fraud on the PTO may be violative of § 2 of the Sherman Act." *Id.* at 174. For *Walker Process* to apply, a plaintiff must establish (1) a misrepresentation or omission, (2) intentionally done to

deceive the PTO, (3) which the patent office justifiably relied on, and (4) but for the acts the patent would not have issued. *In Re Relafen*, 346 F.Supp.2d at 365 (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998)); *Nobelpharma*, 141 F.3d at 1070-71. *Walker Process* fraud demands more than showing inequitable conduct. *Id.* at 1070. It requires a higher threshold showing of both intent and materiality, and the patentee must have been aware of the fraud when bringing the suit. *Id.* at 1070, 1069-70. As explained by the Federal Circuit:

> *PRE* and *Walker Process* provide alternative legal grounds on which a patentee may be stripped of its immunity from the antitrust laws; both legal theories may be applied to the same conduct. Moreover, we need not find a way to merge these decisions. Each provides its own basis for depriving a patent owner of immunity from the antitrust laws; either or both may be applicable to a particular party's conduct in obtaining and enforcing a patent.

*Id.* at 1071. It therefore follows that if the elements of *Walker Process* can be met antitrust liability "can be imposed without the additional sham inquiry required" for sham litigation under *PRE.*

Here, First Quality's allegations sufficiently allege a *Walker Process* claim: KC deliberately and intentionally withheld material prior art in connection with the prosecution of a patent-in-suit. (Countcl. ¶¶ 35-48.) The complaint specifically describes the individuals who knew of the prior art's existence, (Countercl. ¶¶ 41-46, 147, 154, 159-162, 168-170, 188), that the prior art was withheld during the patent prosecution process (Countercl. ¶¶ 38, 41-48, 154, 163, 186, 188) from the PTO (Countercl. ¶¶ 38, 41-48, 154, 163, 186, 188), and that the objective of failing to cite this prior art was to deceive the PTO into issuing a patent. (Countercl. ¶¶ 35-41 186, 188.) Thus, as a result of KC's conduct, the PTO issued a patent that is clearly invalid. (Countercl. ¶ 35, 36, 40; doc. 314 at pg. 31.) The above allegations demonstrate that

First Quality has alleged enough facts showing a plausible *Walker Process* claim.

Therefore, this claim may be used to support First Quality's antitrust allegations.

Based on the preceding, we conclude that First Quality has sufficiently

alleged a monopolization claim under the Sherman and Donnelly Acts.  Thus, we will

deny KC's motion to dismiss these claims.[5]

C.    *Counts II, III, and V-VII*

Instead of challenging the allegations of each the additional

counterclaims, KC simply raises two arguments in support of its claim that the

remaining counterclaims should be dismissed: (1) First Quality failed to sufficiently

plead bad faith and (2) false statements.  (*See* doc. 271 at pgs. 33 & 35, respectively.)

These arguments are based on KC's contention that First Quality insufficiently pled

claims for sham litigation and *Walker Process.*  As discussed in the preceding, we

concluded that First Quality has sufficiently alleged said claims.  Thus, KC's arguments

are mooted by this finding because we concluded that First Quality sufficiently pled

numerous acts of potential bad faith related to the antitrust claims.  In addition, First

Quality has alleged that KC claimed that certain products were covered by patents that

it knew to be invalid, unenforceable and fraudulently obtained (Countercl. ¶¶ 32-34,

88-91), that its products were covered by certain patents when they were not

(Countercl. ¶¶ 118-124), that First Quality was incapable of supplying non-infringing

products (Countercl. ¶¶ 129-131), and that KC knowingly and intentionally interfered

with First Quality's contractual relationships (Countercl. ¶¶ 123-136.)  These

allegations, in conjunction with the aforementioned averments under the antitrust

claims, sufficiently plead that KC intentionally made false statements or

_____

[5]    At this time, the allegations also show a plausible sham litigation claim.  However, nothing in our analysis precludes KC from reasserting its immunity claim at the close of discovery in a motion for summary judgment.

misrepresentations to disparage and harm the business interests of First Quality.

Thus, we will deny KC's motion to dismiss the counterclaims.

      We will issue an appropriate order.


                /s/William W. Caldwell
                William W. Caldwell
                United States District Judge

Date: May 17, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC.,  :

      Plaintiff              :

      vs.                   :  CIVIL NO. 1:CV-09-1685

                           :

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC.,     :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC.,      :
        Defendants and
        Counterclaim Plaintiffs   :

      vs.                   :

KIMBERLY-CLARK CORPORATION,   :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC,:
        Counterclaim Defendants

*O R D E R*

AND NOW, this 17th day of May, 2011, upon consideration of plaintiff's

motion to dismiss, and pursuant to the accompanying Memorandum, it is ordered that

plaintiff's motion to dismiss (doc. 270) is denied.

                         /s/William W. Caldwell
                         William W. Caldwell
                         United States District Judge