# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KIMBERLY-CLARK WORLDWIDE, INC.,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | Civil No. 1:09-CV-1685 |
| **FIRST QUALITY BABY PRODUCTS, LLC,** : | |
| **FIRST QUALITY PRODUCTS, INC.,** : | **(Judge Caldwell)** |
| **FIRST QUALITY RETAIL SERVICES, LLC,** : | |
| **and FIRST QUALITY HYGIENIC, INC.,** : | **(Mag. Judge Carlson)** |
| : | |
| **Defendants** : | |
| : | |
| **FIRST QUALITY BABY PRODUCTS, LLC,** : | |
| **FIRST QUALITY PRODUCTS, INC.,** : | |
| **FIRST QUALITY RETAIL SERVICES, LLC,** : | |
| **and FIRST QUALITY HYGIENIC, INC.,** : | |
| : | |
| **Counterclaim Plaintiffs,** : | |
| : | |
| v. : | |
| : | |
| **KIMBERLY-CLARK CORPORATION,** : | |
| **KIMBERLY-CLARK WORLDWIDE, INC.,** : | |
| **and KIMBERLEY-CLARK GLOBAL** : | |
| **SALES, LLC,** : | |
| : | |
| **Counterclaim Defendants** : | |

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

This case is a complex commercial patent and antitrust lawsuit between

parties that manufacture, produce and market a wide array of adult incontinence products and baby diapers. The district court has referred discovery disputes to the undersigned for resolution.

Now pending before the Court is the motion of Kimberly-Clark Worldwide, Inc. ("K-C") to compel Defendants ("First Quality or "Defendants") to respond to K-C's Interrogatory Nos. 15 and 16, relating to identification of the raw materials used to manufacture the adult incontinence products and baby diapers that K-C believes infringe the Kellenberger or Melius patents in suit.[1] (Doc. 457.) K-C argues that it needs the information sought in these interrogatories to determine which of First Quality's products infringe, and complains that the lack of the information impairs K-C's ability to develop its proofs regarding infringement. Additionally, K-C contends that it has narrowed the list of First Quality products for which information is sought, in an effort to minimize the burden on First Quality in responding to the discovery. Finally, K-C asserts that the information sought in the narrowed interrogatories is not duplicative of technical documents

---

[1] The Kellenberger and Melius patents (U.S. Patent Nos. 5,147,343 and 5,601,542) relate to the composition and properties of the absorbent composite, or core, used in incontinence products and diapers. The absorbent composite is made up of a combination of fibrous material, or pulp, and superabsorbent polymer. The patents in suit are directed to absorbent cores made up of SAP and pulp with specific properties.

that First Quality has already produced.

In opposing the motion, First Quality characterizes the discovery K-C seeks as "a burdensome, unnecessary make-work project" that is both duplicative and unnecessary since First Quality has already produced everything K-C needs to undertake its infringement analysis. (Doc. 478, at 1.) First Quality also maintains that K-C's motion is effectively rebutted by the K-C's revised infringement contentions, which were served immediately prior to the original due date for First Quality's brief in opposition to the motion to compel, as K-C appears to have used technical documents that First Quality produced approximately one year ago and accused 272 product specifications of infringing the Kellenberger and Melius patents, whereas K-C had previously only accused 13 products of infringing the patents.

Lastly, First Quality resists the discovery sought on the grounds that it seeks, in part, information regarding 319 specifications that relate to products that K-C has not accused of infringing. First Quality notes that the Court has previously emphasized that K-C needed to identify products as infringing before the Court would permit discovery into financial and technical information. (Doc. 461, at 2.) For all of these reasons, First Quality urges the Court to deny K-C's motion to compel.

Mindful of the need to balance K-C's need for relevant information about the material used in potentially infringing products against First Quality's interest in not being subject to burdensome or duplicative discovery, we will grant the motion. Upon careful review of the briefs and exhibits, we find that the balance of these competing interests tilts in K-C's favor. As explained briefly below, it appears that the dispute between the parties essentially boils down to a disagreement over whether First Quality has already provided K-C with the information it seeks in Interrogatory Nos. 15 and 16. First Quality insists that everything K-C needs to know can be found in other discovery responses; K-C maintains that these other discovery responses do not provide adequate answers to the questions posed in the interrogatories. Upon review, we agree that K-C reasonably requires additional information that First Quality – and only First Quality – can provide in order to facilitate K-C's infringement analysis and develop its proofs in this action. Accordingly, we will direct that First Quality provide full and complete responses to Interrogatory Nos. 15 and 16 with respect to the narrowed list of products.

### III.  DISCUSSION

#### A.  The Interrogatories

Interrogatory No. 15 provides as follows:

> For each baby diaper and wearable incontinence product of First Quality, including each product identified by First Quality pursuant to Court-ordered discovery (including but not limited to the Court's August 17, 2010 Order) (collectively, "Absorbent Products"), please identify on a product by product basis (as identified by IP Number, FQRKIP Number and/or 5-Byte Number), each superabsorbent polymer ("SAP") product employed in each product since March 12, 2003, including: identification of the manufacturer of each SAP product (for example, BASF), the manufacturer's name for the SAP product (for example, "HySorb"), First Quality's name for the SAP product and/or the type of SAP product (for example, "SAP4"), and the dates First Quality used each SAP product in each of the Absorbent Products (with an identification of the amount of SAP (by weight) used in each such Absorbent Product (including any changes to the weight amount of SAP used in each Absorbent Product). Additionally, identify the person(s) most knowledgeable regarding the information sought in this interrogatory.

(Doc. 459, Ex. B.)

Interrogatory No. 16 provides as follows:

> For each baby diaper and wearable incontinence product of First Quality, including each product identified by First Quality pursuant to Court-ordered discovery (including but not limited to the Court's August 17, 2010 Order) (collectively, "Absorbent Products"), please identify on a product by product basis (as identified by IP Number, FQRKIP Number and/or 5-Byte Number), each pulp (or fluff) product employed in each product since March 12, 2003, including: identification of the manufacturer of each pulp product, the manufacturer's name for the pulp product, First Quality's name for the pulp product, and the dates First Quality used each SAP product in each of the Absorbent Products, with an identification of the amount of

>pulp (by weight) used in each of the Absorbent Products (including any changes to the weight amount of pulp product used in each Absorbent Product). Additionally, identify the person(s) most knowledgeable regarding the information sought in this interrogatory.

(Doc. 459, Ex. B.)

In its motion, K-C has limited the scope of the interrogatories to the products identified on Exhibit A to the motion. (Doc. 459, Ex. A.)

### B. Legal Standards

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

>(a) Motion for an Order Compelling Disclosure or Discovery
>
>(1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

>(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1)

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 U.S. Dist. LEXIS 97590, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery

permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

### C. Resolution of K-C's Discovery Motion

K-C urges the Court to grant its motion to compel First Quality to respond to Interrogatory Nos. 15 and 16 for at least three reasons. First, K-C argues that the information responsive to these interrogatories is essential to a reaching a conclusion as to whether First Quality has infringed the patents, and which of First Quality's products infringed. As K-C notes, the Kellenberger and Melius patents relate to

absorbent products that have combinations of superabsorbent particles ("SAP") and fiberized pulp material ("fluff"), with particular characteristics. K-C requires information about the types and amounts of SAP and fluff used in each of First Priority's products over time in order to determine which of First Quality's products infringe and to conduct efficient testing to prove infringement in this case.

Second, K-C notes that it has narrowed the list of First Quality products for which it is seeking information, as set forth on Exhibit A to its motion. (Doc. 459, Ex. A.) Furthermore, in an effort to additionally narrow the scope of information sought in the interrogatories, K-C has restricted its request to (1) identification of each SAP used in the First Quality products listed on Exhibit A, including the dates each SAP was used in the product; and (2) identification of each type of fluff used in the products listed on Exhibit A, including the dates each fluff was used in the product. (Doc. 459, at 3.)

Third, K-C maintains that the discovery is appropriate and not duplicative of technical documents that First Quality previously produced, because these documents provided only a listing of the SAP and fluff that was approved for possible use in a product, and often included acceptable alternative materials that could be substituted in manufacturing the products. K-C contends that only First Quality possesses the information regarding the actual raw materials used in the products listed on Exhibit

A to the motion. K-C argues that it needs to know the actual material used to manufacture a particular product in order to determine whether or not the product infringed the patents in suit, as the technical documents do not reveal this information, at least in all cases.

In opposing the motion, First Quality does not really dispute the relevance of the discovery sought, as First Quality argues principally that the motion should be denied because the discovery is either duplicative or overly burdensome. First Quality also asserts, generally, that these interrogatories are an impermissible fishing expedition, and contends that granting the motion to compel would be inconsistent with the Court's prior orders limiting discovery by requiring that K-C identify products as infringing before the Court would compel First Quality to produce financial or technical information. First Quality thus argues that it would be improper for the Court to require discovery responses about products that K-C has not accused of infringing either the Kellenberger or Melius patents.

Upon consideration, although we recognize that certain discovery has been limited in this case to products claimed to infringe, we do not believe that such limitations should prevent K-C from obtaining the information sought in Interrogatory Nos. 15 and 16, which appears to be not only relevant but necessary to enable the plaintiff to identify First Quality's infringing products and to identify the scope of the

infringement as part of damages discovery. We disagree with First Quality that the information sought in the narrowed interrogatories is of limited probative value in this case; to the contrary, we find that the information sought goes directly to the issue of infringement and is thus of substantial probative value.

Following our review of the parties' submissions, we agree with K-C that the information First Quality has already supplied is inadequate to permit K-C to undertake a meaningful infringement analysis in order to confirm (or, presumably, rule out) infringement, and for K-C to develop its claims for trial. It also appears that although some of the information First Quality has already produced has allowed K-C to identify a partial list of infringing products, much of the discovery is incomplete, ambiguous, or insufficient to permit K-C to conclude its analysis. We therefore do not agree that requiring First Quality to supply K-C with the information sought in Interrogatory Nos. 15 and 16 would be duplicative; instead, we conclude that the answers sought would clarify those already provided in this case. Furthermore, because First Quality seems to contend that the information has either already been provided, or is otherwise readily available or discernible in discovery responses already provided, we find First Quality's assertions regarding the burdensome nature of the discovery to be unpersuasive.

In reviewing the documents submitted by the parties, we find that in a number

12

of instances, the specification documents that First Quality previously produced do not respond fully to Interrogatory Nos. 15 or 16, even as narrowed by K-C as part of the pending motion. In some cases, the documents identify materials that First Quality deemed acceptable or suitable for use in the manufacturing of the products, but the documents do not identify that materials that were, or are, actually used. In other instances, the specification documents do not appear to indicate any of the raw materials actually used. K-C has also identified responses in the specification documents that identify materials not approved for use in the product, but do not identify the types of SAP or fluff that were used.

In conclusion, we find that the information is relevant and potentially necessary to enable K-C to determine which First Quality products infringe the Kellenberger and Melius patents. We also find that the information previously produced by First Quality does not sufficiently provide answers to either of Interrogatories No. 15 or 16, and after reviewing the documents provided by the parties, we find that only First Quality can reasonably provide the answers regarding the use of SAP and fluff in the products identified on Exhibit A to K-C's motion. Finally, First Quality has not persuaded the Court, at this time, that requiring it to provide full and complete responses to the narrowed discovery requests will be unduly burdensome.

While we reach this outcome, we acknowledge that compelling First Quality

to provide responses with respect to more than 600 products may be a substantial undertaking. Therefore, as a preliminary step in this process, we will direct K-C to identify in the next 30 days an initial subset of 100 products, as to which First Quality will provide full and complete answers regarding the actual use of SAP and fluff in the narrowed list of products that K-C identified. After complying with this Order the parties will be in a better position to assess the demonstrable burdens and benefits resulting from this initial response. If First Quality believes that it can meet its burden of proof under Rule 26 that continuing this process would be unduly burdensome it may then file a motion for protective order. Otherwise upon completion of this initial disclosure, First Quality should provide responsive discovery as to any remaining products. Accordingly, the motion to compel will be granted, in part, and First Quality will be directed to provide K-C with responses to Interrogatory Nos. 15 and 16, limited to the information sought for a 100 product subset of the narrowed list of products identified on Exhibit A to the motion. (Doc. 459, at 3 and Ex. A.)

## III.  **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED THAT K-C's motion to compel (Doc. 457) is GRANTED.  First Quality is directed to furnish K-C with

answers to Interrogatory Nos. 15 and 16 with respect to the specified information for the subset of 100 products identified from Exhibit A to the motion (Doc. 459, at 3 and Ex. A).

    So ordered this 6th day of October, 2011.

                        /s/ Martin C. Carlson
                        Martin C. Carlson
                        United States Magistrate Judge