IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY-CLARK WORLDWIDE, INC., : <br>     Plaintiff <br>                                    : <br>         v.                                   CIVIL NO. 1:09-CV-1685 <br>                                    : <br> FIRST QUALITY BABY PRODUCTS, LLC, <br> FIRST QUALITY PRODUCTS, INC.,     : <br> FIRST QUALITY RETAIL SERVICES, LLC, <br> FIRST QUALITY HYGIENIC, INC.,       : <br>     Defendants and <br>     Counterclaim Plaintiffs           : <br>         v.                                    : <br> KIMBERLY-CLARK CORPORATION,   : <br> KIMBERLY-CLARK WORLDWIDE, INC., <br> KIMBERLY-CLARK GLOBAL SALES, LLC,  : <br>     Counterclaim Defendants | |

*M E M O R A N D U M*

*I.    Introduction*

       Presently before the court are a motion for partial summary judgment (Doc. 414) filed by defendants First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic, Inc. (collectively "FQ"), and a cross-motion for partial summary judgment (Doc. 450) filed by plaintiff Kimberly-Clark Worldwide Inc. ("KC").

FQ seeks summary judgment of non-infringement on all of the asserted claims of the Rajala Patents,[1] as well as claim 1 of the Ungpiyakul Patent.  KC opposes this motion with a cross-motion, wherein it seeks summary judgment that FQ's products at issue have a section of elastic "across the crotch"—a feature required by the relevant claims of the Rajala Patents.  KC also argues that the court should deny FQ's motion.

After careful consideration, we will deny the motions.

II.     *Legal Standard*

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  We will examine the motion under the well-established standard.  See, e.g., Meditz v. City of Newark, 658 F.3d 364, 369 (3d. Cir. 2011).  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).  The court must credit the nonmovant's evidence and draw "all justifiable inferences" in its favor.  Id.

---

[1] Specifically, the claims at issue are as follows: (1) claims 1-5, 7, 8, 11-14, 16-18, 20, 21, and 26 of U.S. Patent No. 5,745,922; (2) claims 1, 2, 9, and 16 of U.S. Patent No. 6,098203; (3) claims 1-7 of U.S. Patent No. 6,260,211; and (4) claims 19-22 and 24-28 of U.S. Patent No. 7,000,260

The instant case requires us to analyze a patent infringement claim. There are two steps to this analysis. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995). We have already completed the first step, which is to determine the meaning and scope of the patent claims at issue. See id. The second step requires us to compare the properly construed claims to the device accused of infringing the patent. Id. Infringement is found if the accused device is proven, by a preponderance of the evidence, to meet each element of the patent claim, either literally or under the doctrine of equivalents. Seal-Flex, Inc. v. Athletic Track & Court Constr., 172 F.3d 836, 842 (Fed. Cir. 1999).

III.     Discussion

　　　A.     *Rajala Patents*

Each of the relevant claims of the Rajala Patents requires that the product have a section of elastic "across the crotch." FQ contends that no reasonable jury could find that its products at issue have elastic "across the crotch" or a substantially equivalent feature, and therefore, the court should enter summary judgment of non-infringement in FQ's favor. KC brings a cross-motion for summary judgment, wherein it argues that KC, not FQ, is entitled to summary judgment, because there can be no dispute that FQ's products do indeed have a section of elastic "across the crotch."

The parties do not dispute the actual structure of FQ's products at issue. Their dispute concerns whether a certain section of elastic is or is not properly

characterized as extending "across the crotch." FQ states that its products have a gap with no elastic at all—for example, a size large product has a gap measuring approximately 2 inches across the crotch. KC observes that, in our order clarifying the claim construction, we found that "an elastic can be located 'across the crotch' regardless of whether it has been cut or severed." (Doc. 344). KC invokes this language to argue that this section of elastic is "across the crotch," although it has been cut or severed, leaving a gap between the severed ends.

We will reject KC's motion for summary judgment, because we do not agree that there is no genuine issue of material fact as to the existence of a section of elastic "across the crotch" in FQ's products. We reaffirm our prior holding that a cut or severed piece of elastic can extend "across the crotch" of a garment; however, we are not persuaded that the section of elastic at issue here necessarily does so. This elastic is not only cut, but significantly, it is cut with an appreciable gap in the area of the product covering the crotch. A reasonable fact-finder might therefore conclude that the elastic does not extend "across the crotch."[2]

---

[2] For similar reasons, we reject KC's argument that Mr. Silwanowicz's declaration is fatally flawed. KC contends that Mr. Silwanowicz's declaration improperly contradicts the claim construction, by noting the above-described gap and declaring that there is no elastic across the crotch. According to KC, "there can be a gap because the Court construed 'across the crotch' to mean that the elastic across the crotch can be cut or severed[.]" (Doc 453 at 15.) We disagree. Our claim construction simply held that "an elastic can be located 'across the crotch' regardless of whether it has been cut or severed." (Doc. 344). It did not explicitly permit gaps of an appreciable size between cut or severed ends of elastic. Indeed, it did not address the significance of gaps. Hence, we find no contradiction between our claim construction, which said nothing about gaps, and Mr. Silwanowicz's declaration.

However, we will also reject FQ's motion for summary judgment on this issue, because we are not convinced that the existence of the gap necessarily compels a reasonable juror to conclude that there are no elastics "across the crotch." This issue presents a genuine dispute of material fact.

As noted above, we have construed "across the crotch" to include the possibility that "elastics can be located 'across the crotch' regardless of whether said elastics have been 'cut' or 'severed.'" (Doc. 344). KC takes the position that gaps are therefore permitted. By contract, FQ's position is that an elastic could be cut and still extend "across the crotch" if the ends did not retract—if, for instance, the elastic were glued in place before it was cut. We note that, under either interpretation, the cut would leave some gap in the elastic—at least a minimal gap. Hence, the existence of a gap is not dispositive.

Assuming, *arguendo*, that we adopted FQ's reading of our claim construction, and found no literal infringement as a result of the two-inch gap, we would nevertheless conclude that a reasonable jury could find infringement under the doctrine of equivalents. FQ urges us not to apply the doctrine of equivalents, on the basis that it improperly vitiates the Rajala Patents' requirement of elastic across the crotch. We reject this argument. The difference between the two-inch gap that actually exists in FQ's products, and the minimal gap that would hypothetically exist if a piece of elastic were glued in place and subsequently cut, is simply a difference in degree. A reasonable fact-finder could conclude that leg elastics which have

been cut, leaving a gap across the crotch, are equivalent to elastics which extend across the crotch completely. We therefore conclude that claim vitiation does not apply, and the jury may consider equivalence.[3]

In sum, there are genuine issues of material fact as to whether elastics "across the crotch" are literally found in the products at issue, or whether infringement can be found under the doctrine of equivalents. Both KC's and FQ's motions for summary judgment on this issue will be denied.

### B. *Ungpiyakul Patent*

With respect to the Ungpiyakul Patent, FQ asserts that the relevant patent claim requires a backsheet layer that is "substantially liquid impermeable" as well as a separate, smaller "patch of web material that (a) includes a registered graphic and (b) is secured to the backsheet layer." (See Doc. 415 at 7, 22, 24, 26.) FQ argues that it is entitled to summary judgment of non-infringement, because no reasonable jury could find that FQ's products at issue in this case feature separate material, with a registered graphic, secured to a liquid impermeable backsheet layer, or an equivalent thereto. Opposing FQ's motion, KC argues that it should be denied

---

[3] See Trading Techs. Int'l, Inc. v. Espeed, Inc., 595 F.3d 1340, 1355 (Fed. Cir. 2010) (holding that claim vitiation "does not apply when there is a 'subtle difference in degree'"); Wright Medical Tech, Inc. v. Osteonics Corp., 122 F.3d 1440, 1445 (Fed. Cir. 1997) (concluding that a fact-finder must consider equivalence, where the device at issue featured a rod that did not extend entirely through a defined area, and the patent claim required that the rod extend entirely through the area).

because a reasonable juror could find that FQ's products either literally infringe the Ungpiyakul Patent or infringe it under the doctrine of equivalents.

The parties agree that the products at issue consist of the following layers: a liquid permeable topsheet layer, an absorbent layer, a layer of "polymer film" or "poly laminate" material (which includes a registered graphic), a non-woven outer layer, and a "landing zone," where the parent fastens the diaper. However, the parties dispute which of these layers is properly characterized as a "backsheet" or a smaller piece of "web material."

FQ insists the layer of polymer film is the backsheet, and there is no smaller patch of web material, with a registered graphic, secured to it.[4] FQ also argues that no reasonable jury could conclude that the non-woven outer cover is a "substantially liquid impermeable" backsheet layer, because liquid can pass through it.[5] Furthermore, FQ contends that, for the same reasons, no reasonable jury could find infringement under the doctrine of equivalents.

By contrast, KC contends that the non-woven outer layer is the backsheet, and the poly laminate layer is a smaller patch of web material, with a registered graphic, secured to the backsheet. KC relies on the testimony of Ms. O'Connell, the

---

[4] FQ calls the landing zone a smaller patch of web material. The landing zone neither includes a registered graphic, nor is it secured to the layer of polymer film, which FQ characterizes as the backsheet layer.

[5] According to FQ, the polymer film layer is the layer that provides a liquid-impermeable barrier, and the non-woven outer layer's purpose is simply to provide the product with a soft, cloth-like texture.

7

Director of Product Development for First Quality Baby Products, LLC, to establish that the poly laminate layer could be considered a smaller piece of web material,. Ms. O'Connell testified that this layer is a piece of web material, and its width is slightly narrower than the width of the non-woven outer cover, which KC characterizes as the backsheet layer. (Doc. 453 at 22-23.) There is no dispute that this polymer film or poly laminate layer is secured to the non-woven outer layer.

KC cites the following evidence to support the conclusion that the non-woven outer cover is a backsheet. First, Ms. O'Connell testified that she considered this layer to be the backsheet layer. (Id. at 21.) Second, FQ's engineering drawings refer to this layer as the "nonwoven backsheet." (Id.) Third, FQ's bills of materials for the products at issue refer to this layer as the backsheet. (Id. at 22.) Fourth, FQ refers to this layer as the backsheet in communications with customers. (Id.)

In addition, KC attempts to show that the non-woven outer cover is "substantially liquid impermeable," as the Ungpiyakul Patent requires the backsheet layer to be. Specifically, KC submits evidence from its expert, Mr. Butterworth, who tested the material and concluded that it is substantially liquid impermeable. (Id. at 25-26.) According to Mr. Butterworth's testing methods, 5 mL of liquid pooled on the surface of the material without permeating it.

FQ responds with numerous criticisms of Mr. Butterworth's test and conclusions. A jury may find these criticisms persuasive, but a court reviewing a summary judgment motion must view the evidence in the light most favorable to the

non-moving party. Applying the proper standard, we conclude that summary judgment is not warranted.[6] KC's evidence is sufficient to create a genuine dispute of material fact as to whether FQ's products at issue have a "substantially liquid impermeable" backsheet layer and a smaller piece of web material, with a registered graphic, secured to the backsheet layer, or functional equivalents of these elements.[7] Summary judgment must therefore be denied.

---

[6] KC's final argument is that FQ is bound by a settlement agreement wherein it is admitted that another product, with the same relevant components as its products at issue, infringes the Ungpiyakul Patent. KC contends that, at a minimum, the admissions contained in said agreement raise issues of material fact concerning infringement. We are not convinced that the settlement agreement has the significance that KC attributes to it. However, other evidence in the record persuades us that there are genuine issues of material fact precluding summary judgment.

[7] KC observes that the non-woven outer cover is adhesively bonded to the poly laminate layer, which is liquid impermeable. KC argues that a reasonable jury might therefore conclude that the non-woven outer layer is an equivalent structure to a liquid impermeable backsheet layer, and find infringement under the doctrine of equivalents.
FQ urges us to reject KC's reasoning. According to FQ, the Ungpiyakul Patent requires the liquid impermeable backsheet layer to be a separate, distinct structure from the smaller patch of web material. To support this position, FQ quotes language from the Ungpiyakul Patent requiring the web material to be "secured" to the backsheet layer, and FQ cites Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 400 (Fed. Cir. 1994).
We find Dolly distinguishable from the instant case. In Dolly, the patent at issue explicitly required panels formed independently, but the Ungpiyakul Patent lacks such clear language (e.g., "independent" or "separate")—it merely implies that the layers should be distinct. We conclude that there is a question of fact as to whether equivalence can be found under the circumstances of this case. See Eagle Comtronics, Inc. v. Arrow Commun. Labs., Inc., 305 F.3d 1303, 1317) (Fed. Cir. 2002) ("[W]hen two elements of the accused device perform a single function of the patented invention . . . , and the doctrine of equivalents may still apply if the difference are insubstantial. . . . '[O]ne-to-one correspondence of components is not required.'").

9

*IV.*	*Conclusion*

We conclude that genuine disputes of material fact preclude the entry of summary judgment on the claims discussed above.  We will issue an appropriate order.

            /s/ William W. Caldwell
            William W. Caldwell
            United States District Judge

Date: January 31, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
                                                   :
    v.                                          CIVIL NO. 1:09-CV-1685
                                                   :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
    Defendants and
    Counterclaim Plaintiffs      :

    v.                                       :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

*O R D E R*

AND NOW, this 31st day of January, 2012, upon consideration of Defendants' motion for partial summary judgment (Doc. 414) and Plaintiff's cross-motion for partial summary judgment (Doc. 450), and pursuant to the accompanying memorandum, it is ORDERED as follows:

    1.    Defendants' motion for partial summary judgment (Doc. 414) is DENIED.

    2.    Plaintiff's cross-motion for partial summary judgment (Doc. 450) is DENIED.

                                            /s/ William W. Caldwell
                                            William W. Caldwell
                                            United States District Judge