IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY-CLARK WORLDWIDE, INC., :<br>    Plaintiff | |
| : | |
| v. | CIVIL NO. 1:09-CV-1685 |
| : | |
| FIRST QUALITY BABY PRODUCTS, LLC,<br>FIRST QUALITY PRODUCTS, INC.,   :<br>FIRST QUALITY RETAIL SERVICES, LLC,<br>FIRST QUALITY HYGIENIC, INC.,    :<br>    Defendants and<br>    Counterclaim Plaintiffs   : | |
| v.         : | |
| KIMBERLY-CLARK CORPORATION,   :<br>KIMBERLY-CLARK WORLDWIDE, INC.,<br>KIMBERLY-CLARK GLOBAL SALES, LLC, :<br>    Counterclaim Defendants | |

*M E M O R A N D U M*

*I.    Introduction*

Presently before the court is a motion for partial summary judgment (Doc. 466) filed by Plaintiff Kimberly-Clark Worldwide Inc. ("KC"). Defendants First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic, Inc. (collectively "FQ") oppose this motion. KC seeks summary judgment on FQ's Counterclaim VIII, wherein FQ alleges that the Kuepper Patent, U.S. Patent No. 5,496,298, is unenforceable due to inequitable conduct. Specifically, FQ alleges that KC engaged in inequitable conduct by deliberately withholding information about the Roessler Patent during prosecution of the

Kuepper Patent, and the Kuepper Patent is therefore unenforceable.  KC argues that it is entitled to summary judgment on this claim, because no reasonable fact finder could find inequitable conduct.

After careful consideration, we will grant KC's motion.

*II.    Legal Standard*

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  We will examine the motion under the well-established standard.  See, e.g., Meditz v. City of Newark, 658 F.3d 364, 369 (3d Cir. 2011).  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).  The court must credit the nonmovant's evidence and draw "all justifiable inferences" in its favor.  Id.

The pending motion requires us to analyze whether KC is entitled to judgment on FQ's counterclaim alleging inequitable conduct.  As the Federal Circuit has noted, "[i]nequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent."  Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011).  In order to prevail on this counterclaim,

FQ must prove two elements by clear and convincing evidence: (1) specific intent to deceive the Patent and Trademark Office ("PTO"), and (2) materiality. Id. at 1287.

With respect to the intent element, we note the following. FQ alleges inequitable conduct on the basis of nondisclosure of information. In a case of this nature, "clear and convincing evidence must show that the [patent] applicant *made a deliberate decision* to withhold a *known* material reference." Id. at 1290 (quoting Molins PLC v. Textron, Inc., 48 F.3d 1172, 1181 (Fed. Cir. 1995) (emphases added in Therasense)). FQ must prove, by clear and convincing evidence, that KC "knew of the reference, knew that it was material, and made a deliberate decision to withhold it." Id. Intent may be inferred from "indirect and circumstantial evidence[,]" but in order to satisfy the "clear and convincing" standard, "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" Id. (quoting Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008)). The evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." Id. (quoting Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 873 (Fed. Cir. 1988) (emphasis added in Therasense)).

In assessing materiality, a but-for materiality standard generally applies. Id. at 1291-92. As an exception to this general rule, however, egregious misconduct is material per se. Id. at 1292-93. KC's pending motion does not require us to

address the materiality element, however, because KC focuses solely on FQ's alleged inability to show *intent* to deceive the PTO.

*III.    Discussion*

In the pending motion for summary judgment, KC contends that no reasonable fact finder could find inequitable conduct. FQ urges us to deny KC's motion for two reasons: first, because it is premature, and second, because a reasonable fact finder could conclude that inequitable conduct occurred. We will discuss these issues in turn.

*A.    Should KC's motion be denied or deferred pursuant to Rule 56(d)(1)?*

FQ's first argument asserts that essential facts are unavailable, and therefore, pursuant to Rule 56(d)(1) of the Federal Rules of Civil Procedure, we should defer considering the motion or deny it. The "essential facts" to which FQ refers is evidence relating to a secret arbitration proceeding between KC and Proctor & Gamble ("P&G"), which KC alleged to be privileged.[1] Not only was the Kuepper Patent one of the patents at issue in that proceeding, but also, P&G

---

[1] When FQ sought to discover evidence relating to the proceeding, KC asserted that a mediation privilege shielded all such evidence from discovery. We ruled that the evidence was discoverable, and denied reconsideration of that ruling, but also, we certified our orders for interlocutory appeal. At the time when the parties briefed the instant motion, the interlocutory appeal was pending. More recently, on November 15, 2011, the Federal Circuit affirmed our ruling, and KC agreed to produce the evidence. The undersigned is unaware whether, as of this date, KC has completed its production. We will assume, *arguendo*, that FQ's argument concerning the unavailability of this evidence has not yet become moot.

4

alleged in that proceeding that KC deliberately withheld information about the Roessler Patent during prosecution of the Kuepper Patent—an allegation essentially identical to FQ's claim of inequitable conduct.

FQ asserts that evidence concerning the arbitration "will likely provide a road map for additional discovery in this case" and will be "a treasure trove that will assist First Quality in preparing and presenting its inequitable conduct case." (Doc. 494 at 3). Information of this nature may assist FQ strategically, but we are not persuaded that it qualifies as "facts essential to justify [FQ's] opposition" to summary judgment, as set forth in Rule 56(d). Significantly, KC assures us that the only materials it withheld were materials created for purposes of the arbitration. According to KC, all underlying factual materials have been produced. In light of these circumstances, it seems doubtful that the arbitration materials FQ seeks would reveal new evidence as to whether KC engaged in inequitable conduct during the Kuepper Patent prosecution, which occurred years earlier.

FQ also mentions the value of reviewing certain witnesses' deposition testimony from the arbitration, when their memories were presumably fresher, because the arbitration occurred much earlier than the depositions that FQ took in this case. Specifically, FQ notes that Mr. Mielke, the attorney who prosecuted the Kuepper Patent, testified in connection with the arbitration. FQ assumes that Ms. Kuepper and Ms. Rasmussen, the inventors, testified as well. FQ argues that it

should be able to compare and contrast the testimony of these witnesses in the instant case with their prior testimony, given in connection with the arbitration.

This latter argument could have some merit, insofar as it is plausible that a witness's earlier testimony could contain some information that the witnesses later forgot, prior to testifying in connection with this case. Under the circumstances of this case, however, we are not persuaded that we should apply Rule 56(d)(1) to deny or defer ruling on the instant motion. Significantly, in this case, FQ has had the opportunity to depose each of these witnesses. Reviewing their prior testimony is thus far more likely to reveal cumulative evidence than new evidence. Therefore, we will not stay or deny the instant motion pursuant to Rule 56(d)(1).[2]

*B.   Should KC's motion be denied on the merits?*

FQ submits the following evidence to support its claim that KC deliberately withheld information about the Roessler Patent during the Kuepper Patent prosecution. First, Mr. Mielke analyzed the Roessler Patent in connection with other patent applications that he prosecuted for KC (e.g., the Siebers Patent), and he cited the Roessler Patent in other cases shortly before filing the Kuepper Patent

---

[2] We note that, if FQ were to discover new evidence in KC's arbitration materials, another avenue of relief would be available to FQ. Nothing in this ruling would prevent FQ from seeking reconsideration on the basis of new evidence.

application.[3]  Second, Mr. Mielke testified that his standard practice includes reading, from beginning to end, each prior art reference that he cites, and keeping copies of those references.  Third, Mr. Mielke drafted "the key requirement of Claim 1 of the Kuepper patent[,]"[4] which the PTO subsequently concluded was taught in the Roessler Patent.  In addition, FQ argues that Mr. Mielke's conduct is more suspicious in light of KC's inability to produce the patentability search that was conducted in connection with the Kuepper Patent application.[5]

---

[3] Specifically, FQ notes the following.  In October of 1992, Mr. Mielke cited the Roessler Patent to the PTO in three different Information Disclosure Statements filed in connection with three pending patent applications.  The Siebers Patent application was one of them.

On March 25, 1993, the PTO rejected a number of Siebers claims, and it relied on the Roessler Patent in so doing.  In response, Mr. Mielke analyzed the Roessler Patent and argued that it was distinguishable from the Siebers claims.  On November 9, 1993, Mr. Mielke had a telephonic interview with the Examiner, and in the interview, he provided further argument concerning the Roessler Patent.

On December 17, 1993, approximately one month later, Mr. Mielke provided a final draft of the Kuepper Patent application to the inventors, and he reminded them of the duty of candor and good faith in dealing with the PTO.  On December 28, 1993, Mr. Mielke filed the Kuepper Patent application, and in 1994 and 1995, Mr. Mielke filed various Invention Disclosure Statements.  However, Mr. Mielke never advised the PTO of the Roessler Patent in any of these filings.

[4] The language which FQ characterizes as "the key requirement of Claim 1 of the Kuepper patent" is as follows: "said ears hav[e] a proximal edge, a distal edge, a first connecting edge and a second connecting edge, said first and second connecting edges connecting said proximal and distal edges, said second connecting edge being non-parallel to said first connecting edge and said proximal edge being longer than said distal edge."  (Doc. 494 at 14).

[5] FQ speculates that the patentability search, if located, would identify the Roessler Patent.  We do not credit such speculation.

For purposes of ruling on the instant motion, we view the evidence in the light most favorable to FQ. Nevertheless, we find FQ's evidence insufficient to survive KC's motion for summary judgment.[6] First, we note the dearth of evidence against the inventors, Ms. Kuepper and Ms. Rasmussen. FQ fails to show that either of them knew of the Roessler Patent, or knew that it was material, or deliberately withheld information. FQ's evidence concerns only Mr. Meilke.

Furthermore, when we view the evidence concerning Mr. Meilke in the light most favorable to FQ, we conclude that it falls short of establishing inequitable conduct by a "clear and convincing" standard. It indicates that Mr. Meilke knew about and read the Roessler Patent, but it fails to prove that he recognized it as material to the Kuepper Patent, nor does it show that he made a deliberate decision to withhold it. FQ attempts to suggest that, as a result of his prior experience citing the Roessler Patent, Mr. Meilke must have realized its materiality in the context of the Kuepper Patent. However, this is not the single most reasonable inference to be

---

[6] In accordance with this conclusion, we reject FQ's argument that its inequitable conduct defense is not amenable to resolution at the summary judgment phase because it will require a fact finder to assess Mr. Mielke's credibility. We conclude that, even without crediting evidence presented by Mr. Mielke or KC, FQ's evidence of inequitable conduct is simply inadequate to satisfy FQ's burden.

drawn from the evidence.[7]  Significantly, the portion of the Roessler Patent that Mr. Meilke discussed with the Examiner, in connection with the Siebers Patent prosecution, was *not* the same portion of the Roessler Patent that is at issue in this litigation.  (Doc. 505 at 12-13).  We also note that the Roessler and Siebers Patents focus on different features of different diapers than the Kuepper Patent does.  (Id. at 12).  In light of these distinctions, Mr. Mielke's past experience with the Roessler Patent would not compel a reasonable finder of fact to infer that he must have recognized its materiality in the context of the Kuepper Patent, and intentionally withheld it, to deceive the PTO.[8]

In sum, the evidence against Mr. Meilke, even when viewed in the light most favorable to FQ, does not amount to clear and convincing evidence of inequitable conduct.  FQ's evidence falls short of the requisite standard, and therefore, we will grant KC's motion for summary judgment on this issue.

---

[7] As noted above, it is FQ's burden to show knowledge of the reference, knowledge of its materiality, and a deliberate decision to withhold it, by clear and convincing evidence.  Therasense, 649 F.3d at 1290.  This high burden of proof requires that "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'"  Id.

[8] We reiterate that FQ's evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances."  Therasense, 649 F.3d at 1290 (quoting Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 873 (Fed. Cir. 1988) (emphasis added in Therasense)).

We will issue an appropriate order.

       /s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: February 17, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY-CLARK WORLDWIDE, INC.,<br>    Plaintiff | : |
| | : |
| v. | CIVIL NO. 1:09-CV-1685 |
| | : |
| FIRST QUALITY BABY PRODUCTS, LLC,<br>FIRST QUALITY PRODUCTS, INC.,<br>FIRST QUALITY RETAIL SERVICES, LLC,<br>FIRST QUALITY HYGIENIC, INC.,<br>    Defendants and<br>    Counterclaim Plaintiffs | :<br><br>:<br><br>: |
| v. | : |
| KIMBERLY-CLARK CORPORATION,<br>KIMBERLY-CLARK WORLDWIDE, INC.,<br>KIMBERLY-CLARK GLOBAL SALES, LLC,<br>    Counterclaim Defendants | :<br><br>: |

*O R D E R*

AND NOW, this 17th day of February, 2012, upon consideration of Plaintiff's motion for summary judgment (Doc. 466), and pursuant to the accompanying memorandum, it is ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. 466) is GRANTED.

2. The Clerk of Court shall defer entry of judgment until the conclusion of this case.

          /s/ William W. Caldwell
          William W. Caldwell
          United States District Judge