IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY-CLARK WORLDWIDE, INC., : <br> Plaintiff | |
| : | |
| v. | CIVIL NO. 1:09-CV-1685 |
| : | |
| FIRST QUALITY BABY PRODUCTS, LLC, <br> FIRST QUALITY PRODUCTS, INC., : <br> FIRST QUALITY RETAIL SERVICES, LLC, <br> FIRST QUALITY HYGIENIC, INC., : <br> Defendants and <br> Counterclaim Plaintiffs : | |
| v. : | |
| KIMBERLY-CLARK CORPORATION, : <br> KIMBERLY-CLARK WORLDWIDE, INC., <br> KIMBERLY-CLARK GLOBAL SALES, LLC, : <br> Counterclaim Defendants | |

*M E M O R A N D U M*

*I.      Introduction*

Presently pending before the court is a motion (Doc. 621) filed by Plaintiff and Counterclaim Defendants Kimberly-Clark Worldwide, Inc., Kimberly-Clark Corporation, and Kimberly Clark Global Sales, LLC (collectively, "KC") to strike a "supplemental" expert report served by Defendants First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic, Inc. (collectively, "FQ") pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.  Also pending before the court is a cross-motion (Doc. 624) in which FQ seeks to strike the rebuttal report prepared by KC's expert.  The parties have fully briefed both motions, which are now ripe for the court's review.  After careful

consideration, we will grant KC's motion and deny FQ's motion.

*II.        Background*

Although the parties are familiar with the background of this case, we will set forth a brief summary of the context from which the expert reports at issue emerge.  Both reports relate to FQ's claim that the Rajala patents are invalid.

The court required the parties to submit expert reports for issues on which they bear the burden of proof on or before June 15, 2012.  On that date, FQ served an expert report, prepared by its expert, Mr. Gardner, regarding the alleged invalidity of the Rajala Patents.  This report relied only on the Suzuki Patent as alleged prior art.  On August 17, 2012, the due date for rebuttal expert reports, KC served a rebuttal report prepared by its expert, Ms. Balogh, in which Ms. Balogh opined that Suzuki was not prior art.  On August 30, 2012, FQ served a "supplemental" expert report prepared by Mr. Gardner, wherein Mr. Gardner set forth a new opinion that the Igaue Patent invalided the Rajala claims, as they were asserted by Ms. Balogh.  FQ had not previously articulated this theory of invalidity.

On September 5, 2012, KC moved to strike Mr. Gardner's supplemental report.  KC contends that the new invalidity defense contained in Mr. Gardner's report is untimely and highly prejudicial to KC.  KC asks the court to strike this new defense.[1]  Under an expedited briefing schedule ordered by the court, FQ filed a

---

[1] In the alternative, KC requests that if the court permits FQ to rely on Mr. Gardner's new report, it should allow KC up to 60 days to respond.

brief in opposition to KC's motion on September 19, 2012.  At the same time, FQ filed a cross-motion to strike portions of Ms. Balogh's rebuttal report.  According to FQ, Ms. Balogh's report contained new information which precipitated Mr. Gardner's supplemental report.  FQ argues that Mr. Gardner's report is therefore "substantially justified," that KC is not prejudiced, and that the court should not strike Mr. Gardner's report under Rule 37(c).  In the alternative, however, FQ argues that if any expert opinion should be stricken, it should be Ms. Balogh's, not Mr. Gardner's.

III.     *Legal Standard*

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," the court may sanction that party, typically by prohibiting it from relying on the undisclosed information or witness, "unless the failure was substantially justified or is harmless."  In deciding whether this sanction is warranted, we consider the following factors: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order[,]" and we also consider the importance of the testimony at issue.  Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds by Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985).

*IV.        Discussion*

As noted above, KC asks the court to strike the new invalidity defense contained in Mr. Gardner's supplemental report under Rule 37(c), but FQ argues that new defense is "substantially justified" as a necessary response to new evidence and opinions offered in Ms. Balogh's rebuttal report. Specifically, FQ points to a new reduction-to-practice date for the invention of the Rajala Patents, raised for the first time in Ms. Balogh's report, and new claim constructions.

With regard to the reduction-to-practice date, FQ's argument can be summarized as follows. KC previously stated, in response to an interrogatory, that the reduction-to-practice date was "no later than August, September, or October 1993." However, Ms. Balogh's report opined that the reduction-to-practice date was "no later than April 29, 1994." FQ also contends that Ms. Balogh's report introduced previously unidentified witnesses and documents to support this new date.

In response, KC disputes that new witnesses or documents were introduced by Ms. Balogh. KC insists that all documents upon which Ms. Balogh relied were produced to FQ during fact discovery, and that the three so-called "new witnesses" were identified in a deposition exhibit. In addition, as a more general matter, KC points out that the import of both reduction-to-practice time frames is the same—under either one, the invention of the Rajala Patents was reduced to practice before the Suzuki Patent was published in November of 1994, and therefore, Suzuki is not prior art invalidating Rajala.

4

We find this last point highly persuasive. We acknowledge that Ms. Balogh's report notes a broader range of possible reduction-to-practice dates than the dates previously supplied by KC. However, we find it significant that, under either time frame, KC's position that Suzuki is not prior art remains essentially the same. Hence, FQ fails to persuade us that its introduction of an entirely new invalidity defense is substantially justified by Ms. Balogh's reliance on a broader range of dates.

Nor are we persuaded by FQ's objection to Ms. Balogh's reliance on "new" evidence and witnesses to support her reduction-to-practice time frame. It is not entirely accurate to call this evidence "new." KC's exhibits prove that, during discovery, KC produced all of the information upon which Ms. Balogh relied, and it identified the relevant witnesses.

FQ contends that more was required of KC—in particular, KC should have identified the information in its interrogatory responses, or disclosed the fact that the witnesses had relevant information regarding the reduction-to-practice date. In response, KC argues that the rules do not absolutely require it to anticipate and identify during fact discovery every document upon which its experts might later rely. The feasibility of such a requirement, particularly in a case as complex as this one, is questionable.

These arguments are a distraction from the ultimate issue before us. In ruling on KC's pending motion, we must decide if FQ was substantially justified in

introducing a new invalidity defense, or if this new defense should be stricken. This task does not require us to opine whether KC's discovery responses were adequate or sub-par. Even if we assume that, during fact discovery, KC should have specifically directed FQ's attention to each document and witness upon which Ms. Balogh now relies, we find no basis for holding that a failure to do so would necessarily make it appropriate for FQ to introduce a new invalidity defense.

We conclude that FQ's introduction of a new defense is not substantially justified. We reach this conclusion primarily because, as explained above, Ms. Balogh's rebuttal report is perfectly consistent with KC's contention that Suzuki is not prior art because publication of the Suzuki Patent occurred after the Rajala Patents' invention was reduced to practice—which is not a new contention. We also note that the documents and witnesses upon which Ms. Balogh relied were all produced during fact discovery. Although the parties failed to anticipate Ms. Balogh's reliance on them, that surprise to FQ is not so significant that it substantially justifies the introduction of an entirely new invalidity defense.

As a final justification for introducing a new invalidity defense in response to Ms. Balogh's rebuttal report, FQ argues that her report presented new claim constructions. FQ points to at least four different terms that Ms. Balogh interprets with her own meanings, which either differ from, or were not addressed by, the court's claim construction order. However, FQ fails to explain, and we fail to see, how her new interpretations justify the introduction of a new invalidity defense.

6

Ms. Balogh is powerless to alter the court's construction of any claim. She merely expresses opinions as an expert, and FQ has numerous avenues to respond to and challenge her opinions. For instance, at Ms. Balogh's deposition, FQ may question her about her reliance on unique and novel interpretations, and the extent to which her interpretations differ from the court's, and the extent to which these differences undermine the reliability of her conclusions. Furthermore, in the event that Ms. Balogh testifies at trial, FQ may cross-examine her on these issues. FQ may also urge the court and the jury to reject her opinions and conclusions. It seems that FQ prefers to respond to Ms. Balogh's opinions by raising a new invalidity defense, but considering the prejudice to KC that would arise from permitting a new defense at this late juncture, we find that this course of action is not substantially justified.

FQ argues that its failure to identify Igaue as a basis for invalidity earlier was harmless, because Igaue, which is cited on the face of the Rajala Patents, is not "new" to KC. We reject this reasoning. The contention that Igaue invalided the Rajala claims is indeed a new invalidity defense. The fact that the Igaue reference appears on the face of the Rajala patents does not negate the novelty of this defense. Indeed, until FQ explicitly raised this new contention, KC had no reason to consider whether Igaue would invalidate the Rajala Patents.[2] We therefore reject

---

[2] Because Igaue is cited on the face of the Rajala Patents, KC can assume that the Patent Office considered that reference during prosecution of the Rajala Patents and concluded that it does not invalidate them. At this juncture, the Rajala Patents are presumed to be valid, and FQ bears the burden of proving invalidity.

FQ's argument that it can raise this defense without prejudicing KC. We conclude that permitting this new defense to be raised so late in the litigation process would substantially prejudice KC.

For all of the reasons set forth above, KC's motion to strike should be granted. Our conclusions supporting this result may be briefly summarized as follows: FQ failed to raise its new invalidity defense in a timely manner, and its failure to do so was neither substantially justified nor harmless.

Finally, we reach FQ's cross-motion.[3] FQ argues that it would be more appropriate for the court to strike Ms. Balogh's rebuttal report than Mr. Gardner's supplemental report, because Ms. Balogh's report contains new claim constructions, new grounds to support validity of the Rajala Patents, a new reduction-to-practice date, and new evidence and witnesses supporting said date. FQ insists that it will be prejudiced by Ms. Balogh's rebuttal report if the court strikes Mr. Gardner's supplemental report.

As noted above, KC has proven that it previously made FQ aware of its position that the Rajala Patents are valid and that Suzuki is not prior art. Although Ms. Balogh's report contained a broader range of possible reduction-to-practice dates than KC's interrogatory responses had previously indicated, both time frames

---

[3] FQ submits that the best course would be to allow Mr. Gardner's supplemental report to stand, and afford an opportunity for KC to respond with its own expert report. In the alternative, however, FQ argues that, if the court determines that any expert opinion should be stricken, it should be the opinion of Ms. Balogh.

preceded the Suzuki publication date, and therefore, Ms. Balogh's report did not contain "new" grounds for rebutting FQ's invalidity defense. To the contrary, both sources rebutted that defense on the same grounds.

Furthermore, the documents and names of witnesses upon which Ms. Balogh relied were already produced to FQ. Ms. Balogh's reliance on them apparently came as a surprise to FQ, but Rule 37 does not call for evidence or testimony to be precluded as a consequence of any unanticipated developments. It applies "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)[.]" We are not persuaded that Ms. Balogh's report should be stricken under this standard. Although KC did not specifically direct FQ's attention to the documents and witnesses upon which Ms. Balogh relied, the facts, in our view, do not support a finding that KC failed to "provide" the information or "identify" the witnesses. Therefore, we are not convinced that striking Ms. Balogh's report is an appropriate sanction.

Nor is such a sanction warranted by the fact that Ms. Balogh relies on unique and novel interpretations of certain terms. As we explained above, FQ may respond to her interpretations and challenge her opinions in a variety of ways. The fact that the parties did not anticipate them, however, is not a sufficient basis for striking them under Rule 37.

For these reasons, we will deny FQ's cross-motion. It seems that KC's previous disclosures were not so thorough as to permit FQ to fully anticipate the

content of Ms. Balogh's rebuttal report, but nevertheless, we are not convinced that the report contains such novel information that it must be stricken pursuant to Rule 37.

*V.        Conclusion*

For the reasons set forth above, we conclude that KC's motion to strike should be granted, and FQ's motion should be denied. We will issue an appropriate order.

        /s/ William W. Caldwell  
       William W. Caldwell  
       United States District Judge

Date: November 19, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
                                                                                                         :

    v.                                                                           CIVIL NO. 1:09-CV-1685
                                                                             :

FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC.,        :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC.,          :
    Defendants and
    Counterclaim Plaintiffs                  :

    v.                                                                                :

KIMBERLY-CLARK CORPORATION,      :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC,  :
    Counterclaim Defendants

*O R D E R*

        AND NOW, this 19th day of November, 2012, for the reasons set forth in the accompanying memorandum, it is ORDERED that:

        1.        KC's motion to strike (Doc. 621) is GRANTED. Mr. Gardner's August 30, 2012 report, and the opinions set forth therein, are stricken, and FQ is precluded from relying on that report and opinions to supply evidence on a motion, at a hearing, or at trial in this case.

        2.        FQ's cross-motion to strike (Doc. 624) is DENIED.

                                                  /s/ William W. Caldwell
                                                  William W. Caldwell
                                                  United States District Judge