IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
                                    :
      v.                                CIVIL NO. 1:09-CV-1685
                                    :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
    Defendants and
    Counterclaim Plaintiffs           :

      v.                                :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

## M E M O R A N D U M

*I.*        *Introduction*

Presently before the court is a motion for partial summary judgment (Doc. 671), filed by defendants First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic, Inc. (collectively "FQ"). FQ seeks summary judgment that Plaintiff Kimberly-Clark Worldwide, Inc. ("KC") failed to comply with the patent marking statute, and that a portion of the patent infringement damages sought by KC are barred as a result. KC has filed a brief in opposition to this motion (Doc. 703), and FQ has filed a reply (Doc. 742), so the motion is now ripe for disposition. For the reasons that follow, we will grant the motion in part and deny it in part.

*II.	Background*

In February 2009, FQ filed a complaint in this court for a declaratory judgment, but we dismissed FQ's complaint for lack of subject matter jurisdiction. Prior to our dismissal, however, KC filed this patent infringement action in the U.S. District Court for the Northern District of Texas, and this action was then transferred from Texas to this court. Among other claims in this action, KC seeks damages for infringement of the Kellenberger Patent, the Melius Patent, the Rajala '922 family of patents, and the Rajala '887 Patent. In the pending motion, FQ seeks summary judgment that KC did not comply with the patent marking statute for these patents, and consequently, that KC cannot claim pre-complaint damages for infringement of these patents.

*III.	Legal Standard*

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We will examine the motion under the well-established standard. See, e.g., Meditz v. City of Newark, 658 F.3d 364, 369 (3d. Cir. 2011). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). The court must credit the nonmovant's evidence and draw "all justifiable inferences" in its favor. Id.

2

The pending summary judgment motion challenges KC's compliance with the patent marking statute, 35 U.S.C. § 287(a). Under this statute, damages for patent infringement are limited to infringement that occurred after the infringer received notice of the infringement. The patentee may either provide the infringer with actual notice of infringement, or provide constructive notice by marking the number of the patent on "substantially all of its patented products[,]" in a "substantially consistent and continuous" manner. American Medical Sys. v. Medical Eng'g Corp., 6 F.3d 1523, 1537-38 (Fed. Cir. 1993). Compliance with the marking statute is a question of fact, and the patentee bears the burden of proving compliance. Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996).

*IV.     Discussion*

As noted above, a patentee can recover damages for patent infringement either from the time when it gave the infringer actual notice of infringement, or from the time when it began consistently marking substantially all products that practice the patent. In this case, it is undisputed that no actual notice occurred until KC's pleadings in this litigation (the original complaint and the amended complaint) raised claims of infringement. In order to determine whether KC may claim pre-complaint damages, in the absence of actual notice, we must examine constructive notice by marking.

FQ argues that KC cannot show compliance with the patent marking statute because it permitted other companies to practice the patents at issue and cannot show that the other companies' products were marked with the numbers of

3

the patents they practiced. Given these circumstances, FQ argues that KC cannot show substantially consistent and continuous marking. When someone other than the patentee practices the patent at issue and fails to mark its products, then "the court may consider whether the patentee made reasonable efforts to ensure compliance with the marking requirements[,]" under an approach known as a "'rule of reason' approach[.]" Maxwell, 86 F.3d at 1111-12. In the subsections that follow, we will separately discuss each patent and examine whether a reasonable fact-finder could find compliance with the patent marking statute for that patent.

### A. Kellenberger Patent

KC seeks damages for infringement of the Kellenberger Patent from March 12, 2003 until the patent expired on September 15, 2009. KC filed its complaint accusing FQ of infringing the Kellenberger Patent on March 12, 2009. Therefore, we must examine marking between March 12, 2003 and March 11, 2009.

FQ suggests that the following companies may have practiced the Kellenberger Patent during this time frame: Procter & Gamble ("P&G"), McNeil-PPC, Inc. ("McNeil"), and Paul Hartmann AG ("Hartmann").[1] Neither KC nor FQ has provided evidence as to whether Hartmann or McNeil practiced the Kellenberger Patent, or if so, whether their products that practiced the patent bore the patent number. However, there is some evidence of record indicating that P&G practiced

---

[1] KC admits that it entered into the following agreements with these companies. On August 13, 2001, KC granted P&G immunity from suit under the Kellenberger Patent. Later, on March 1, 2003, KC entered into a covenant not to sue Hartmann and granted Hartmann immunity from suit under the Kellenberger Patent. And finally, on January 14, 2005, KC granted McNeil a license under the Kellenberger Patent.

4

the Kellenberger Patent without marking its products with the patent number. Specifically, Stephen Goldman, FQ's expert, tested 14 packages of P&G diapers,[2] dated from July 21, 2007 to January 25, 2009, none of which bore the Kellenberger Patent number, and Goldman concluded that these products practiced at least claim 1 of the Kellenberger Patent.

KC emphasizes that FQ's evidence of P&G practicing the Kellenberger Patent is limited. A *de minimis* number of unmarked products will not preclude a court from concluding that a patentee complied with the patent marking statute. See Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp., 616 F.3d 1357, 1374-75 (Fed. Cir. 2010); Maxwell, 86 F.3d at 1111-12. KC argues that the results of testing 14 individual packages should not be extrapolated to any other P&G products, and a reasonable jury could conclude that 14 packages of P&G diapers are a *de minimis* quantity of unmarked products. KC also notes that the tested products were all made within a period of less than two years, and there is no evidence about products made at other times between March 12, 2003 and March 11, 2009. KC cites one of our sister District Courts' opinions for the proposition that even if marking is not proper at all periods of time, an infringer may be liable for damages for a period of time in which proper marking occurred. See Metrologic Instruments, Inc. v. PSC, Inc., No. 99-4896, 2004 WL 2851955 at *21 (D.N.J. Dec. 13, 2004).

---

[2] It appears that testing a larger sample of P&G's diapers may not have been feasible. According to FQ, Goldman tested "every sample of P&G products available to First Quality that was manufactured and sold" during the relevant time frame. (Doc. 742 at 12).

5

Another issue raised by KC is the question of which party should bear the burden of showing the existence of patented articles that should have been marked. KC cites Laitram Corp. v. Hewlett-Packard Co., 806 F. Supp. 1294, 1296-97 (E.D. La. 1992), and argues that the best approach is to place the burden on the accused infringer to identify what products, if any, practice the patent, and then to shift the burden to the patentee to show either that the products were marked or that they are not covered by the patent. In response to this point, FQ argues that the Laitram court's approach is "the exception rather than the rule, and has been criticized as such." DR Sys., Inc. v. Eastman Kodak Co., 08-CV-0669, 2009 WL 2632685, at *4 (S.D. Cal. Aug. 24, 2009) (citing 4 Robert A. Matthews Jr., Annotated Patent Digest § 30:148). We conclude that the Laitram court's approach should be rejected, and KC should fully bear the burden to prove compliance with the patent marking statute.

KC contends that it marked its own products with the Kellenberger Patent number, and FQ neither concedes nor disputes this point. For purposes of ruling on the pending motion, we must consider the evidence in the light most favorable to KC, and therefore, we will assume that all of KC's own products were marked with the number(s) of the patent(s) they practiced. However, we find this evidence insufficient to support a finding that, in the market as a whole, products practicing the Kellenberger Patent were substantially consistently and continuously marked with the patent number. To the contrary, in light of the other evidence described below, such a conclusion would be unreasonable.

6

It is undisputed that three other companies, including KC's largest competitor, P&G, were licensed or otherwise given *carte blanche* to practice the Kellenberger Patent. Of these three, only Hartmann was contractually obligated to mark the Kellenberger Patent number on its products that practice the patent. P&G and McNeil were under no such obligation, because KC was unable to secure such an agreement from P&G or McNeil.[3] Moreover, FQ has come forward with evidence, from a sampling of P&G's diapers, showing that each tested product practiced the Kellenberger Patent, but none were marked with the patent number. Although KC invites us to dismiss the sampling as a *de minimis* number of unmarked products, it offers no reasonable basis for a fact-finder to infer that the tested diapers were not a fair, representative sample of the billions of dollars worth of diapers sold by P&G.

In light of this evidence, we find no basis upon which a reasonable finder of fact could find that KC complied with the patent marking statute with respect to the Kellenberger Patent. Therefore, FQ is entitled to summary judgment on this issue, and KC's potential damages for infringement of the Kellenberger Patent will be limited to the period of time between March 12, 2009, when KC provided FQ with actual notice of its infringement claim, and September 15, 2009, the date on which the Kellenberger Patent expired.

---

[3] KC expressed interest in including marking requirements in its agreements with P&G and McNeil, but it did not succeed in negotiating these terms. KC contends that, because it made reasonable efforts to negotiate marking requirements, a reasonable jury could find compliance with the patent marking statute. However, we conclude that KC's unsuccessful negotiating efforts are insufficient to satisfy the statute, and we reject this argument.

*B.     Melius Patent*

KC seeks damages for infringement of the Melius Patent from March 12, 2003 through the present. KC filed its complaint accusing FQ of infringing the Melius Patent on March 12, 2009. Therefore, we must examine marking between March 12, 2003 and March 11, 2009.

FQ concedes that, between March 12, 2003 and May 4, 2005, the patent marking statute does not preclude the infringement damages sought by KC. However, on May 5, 2005, KC granted P&G immunity from suit under the Melius Patent, without requiring P&G to mark its products with the Melius Patent. FQ contends that after this date, KC cannot prove compliance with the patent marking statute, because P&G practiced the Melius Patent without marking its products with the patent number. In support of this contention, FQ points to Goldman's testing (described above). Goldman concluded that, based on his testing, P&G's products practiced at least claim 55 of the Melius Patent, but the products were not marked with the Melius Patent number.

The evidence concerning the Melius Patent essentially parallels the evidence concerning the Kellenberger Patent, discussed above. Therefore, for the same reasons set forth above, we conclude that FQ is entitled to summary judgment, and KC will be unable to recover damages for infringement of the Melius Patent that occurred between May 5, 2005 and March 11, 2009. However, KC may be able to recover damages for infringement of the Melius Patent between March 12, 2003 and May 4, 2005, and from March 12, 2009 through the present.

## C. Rajala '922 Family of Patents

KC seeks damages for infringement of the Rajala '922 family of patents from October 16, 2008 through the present. KC provided FQ with actual notice of its infringement claim on September 21, 2009, when it provided FQ with a copy of its amended complaint raising this claim. Therefore, we must examine marking between October 16, 2008 and September 20, 2009.

FQ argues that, during this time frame, Hartmann and/or SCA Personal Care, Inc. ("SCA") may have practiced the Rajala '922 family of patents, as they were licensed to do,[4] but failed to mark their products with the appropriate patent numbers. Neither KC nor FQ has provided evidence as to whether SCA practiced the Rajala '922 family of patents, or if so, whether its products that practiced the patents bore the patent numbers. There is some evidence suggesting that Hartmann's products practiced the Rajala '922 family of patents and were not marked with the patent numbers; however, this evidence post-dates the time frame that is relevant to our marking inquiry.[5]

---

[4] KC licensed Hartmann to practice the Rajala '922 family of patents on November 1, 2004, and KC licensed SCA to practice these patents on May 27, 2008.

[5] Early in 2011, or around that time, it came to KC's attention that four packages of Hartmann's products, which KC believed practiced the Rajala '922 family of patents, were not marked with KC's patent numbers. Daniel Gardner, FQ's expert, inspected KC's products (which were marked with the Rajala '922 family of patents) and Hartmann's products (which were not so marked), and he concluded that the products were all designed with the same features corresponding to the asserted claims of the Rajala '922 family of patents.

We conclude that the evidence, when viewed in the light most favorable to KC, could support a finding that KC complied with the patent marking statute with respect to the Rajala '922 family of patents. We find it significant that KC's agreements with Hartmann and SCA contractually required them to mark the Rajala '922 family of patents on their products that practice those patents. Under a rule of reason approach, a reasonable fact-finder could conclude that KC made reasonable efforts to ensure compliance with the patent marking statute by including a marking requirement in its licensing agreements.[6] Therefore, FQ's motion for summary judgment that KC failed to comply with the patent marking statute will be denied with respect to the Rajala '922 family of patents.

### D. Rajala '887 Patent

KC seeks damages for infringement of the Rajala '887 Patent from September 23, 2003 through the present. KC provided FQ with actual notice of its infringement claim on September 21, 2009, when it provided FQ with a copy of its amended complaint raising this claim. Therefore, the relevant time period for us to examine is from September 23, 2003 to September 20, 2009.

---

[6] We also note KC's assertion that, after learning of Hartmann's failure to mark at least four packages of products, it took reasonable steps to ensure compliance with the marking requirement. FQ admits that KC engaged in discussions with Hartmann, but FQ suggests that more may be required to show compliance with the marking statute. For purposes of ruling on the pending motion, we must view the evidence in the light most favorable to KC, and in this light, we conclude that a reasonable fact-finder could find KC's efforts sufficient to satisfy the statute.

10

FQ concedes that, between September 23, 2003 and May 26, 2008, the patent marking statute does not preclude the damages sought by KC.[7] However, FQ contends that KC cannot show compliance with the patent marking statute beginning on May 27, 2008, when KC licensed SCA to practice the Rajala '887 Patent. Neither party has provided evidence as to whether SCA practiced the Rajala '887 Patent, or if so, whether its products that practiced the patent bore the patent number. However, under its agreement with KC, SCA was contractually required to mark the Rajala '887 Patent number on products that practice the patent. As explained above, we conclude that this evidence could support a finding that KC complied with the patent marking statute. Therefore, FQ is not entitled to summary judgment with respect to the Rajala '887 Patent.

V.	*Conclusion*

For the reasons set forth above, we conclude that FQ's motion should be granted with respect to the Kellenberger and Melius Patents, but denied with respect to the Rajala '922 family of patents and the Rajala '887 Patent. We will issue an appropriate order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: April 30, 2013

---

[7] KC contends that it has not practiced the Rajala '887 Patent, and FQ does not dispute this point. Therefore, it appears that KC has no obligation to mark any of its own products with this patent number.

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
:
v. : CIVIL NO. 1:09-CV-1685
:
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
    Defendants and
    Counterclaim Plaintiffs :

v. :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

# *O R D E R*

AND NOW, this 30th day of April, 2013, upon consideration of Defendants' motion for partial summary judgment (Doc. 671), and pursuant to the accompanying memorandum, it is ORDERED that said motion is GRANTED in part and DENIED in part as follows:

    1.    The motion is GRANTED in the following respects:

        a.    Summary judgment that KC failed to comply with the patent marking statute is GRANTED with respect to the Kellenberger Patent. KC's noncompliance with the patent marking statute prevents it from recovering damages for infringement of the Kellenberger Patent that allegedly occurred between March 12, 2003 and March 11, 2009. However, KC may seek damages for infringement alleged to occur between March 12, 2009 and September 15, 2009.

        b.      Summary judgment that KC failed to comply with the patent marking statute is GRANTED with respect to the Melius Patent.  KC's noncompliance with the patent marking statute prevents it from recovering damages for infringement of the Melius Patent that allegedly occurred between May 5, 2005 and March 11, 2009.  However, KC may seek damages for infringement alleged to occur between March 12, 2003 and May 4, 2005, and from March 12, 2009 through the present.

2.      The motion is DENIED in all other respects.

                                                /s/ William W. Caldwell
                                           William W. Caldwell
                                           United States District Judge