IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
                                     :
    v.                                    CIVIL NO. 1:09-CV-1685
                                     :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
    Defendants and
    Counterclaim Plaintiffs :

    v. :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

*M E M O R A N D U M*

*I.    Introduction*

Presently before the court are the following motions for partial summary judgment. First, Plaintiff and Counterclaim Defendants Kimberly-Clark Worldwide, Inc., Kimberly-Clark Corporation, and Kimberly Clark Global Sales, LLC (collectively, "KC") seek summary judgment that the Suzuki reference is not prior art and therefore cannot invalidate the Rajala Patents[1] (see Doc. 634). Second, Defendants and Counterclaim Plaintiffs First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic,

---

[1] The Rajala Patents at issue are U.S. Patent No. 5,745,922; U.S. Patent No. 6,098,203; U.S. Patent No. 6,260,211; and U.S. Patent No. 7,000,260. "Suzuki" refers to European Patent Application No. 0626161 A1 to Suzuki et al.

Inc. (collectively, "FQ") seek summary judgment of non-infringement of all asserted claims of the Rajala Patents[2] (see Doc. 756).

KC and FQ have each filed briefs opposing the other's motions, and supporting their own motions, and the motions are now ripe for our review. We consider these two motions simultaneously because, as FQ has noted (see Doc. 710), a favorable ruling on its motion could render KC's motion moot. For the reasons that follow, we will deny both motions.

*II.        Background*

In February 2009, FQ filed a complaint in this court for a declaratory judgment, but we dismissed FQ's complaint for lack of subject matter jurisdiction. Prior to our dismissal, however, KC filed this patent infringement action in the U.S. District Court for the Northern District of Texas, and this action was then transferred from Texas to this court. Among other claims in this action, KC seeks damages for infringement of the Rajala Patents. FQ denies infringement and claims that the patents are invalid because Suzuki is prior art.

FQ previously moved for summary judgment of non-infringement of the Rajala Patents (Doc. 414), but we denied this motion, finding genuine issues of material fact as to whether FQ's products at issue have elastic across the crotch or a substantially equivalent feature (see Doc. 569). We also denied a cross-motion

---

[2] The claims at issue are as follows: Claims 1-4, 7, 8, 11-14, 16, 17, 20, 21, and 26 of U.S. Patent No. 5,745,922; Claims 1, 9, and 16 of U.S. Patent No. 6,098,203; Claims 1-7 of U.S. Patent No. 6,260,211; and Claims 19-22 and 24-28 of U.S. Patent No. 7,000,260.

2

filed by KC (Doc. 450) on the same basis.  FQ now renews its motion for summary judgment of non-infringement of the Rajala Patents.  In a separate motion, also pending before us, KC seeks summary judgment that the Suzuki reference is not prior art invalidating the Rajala Patents.

III.      *Legal Standard*

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  We will examine the motion under the well-established standard.  See, e.g., Meditz v. City of Newark, 658 F.3d 364, 369 (3d. Cir. 2011).  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).  The court must credit the nonmovant's evidence and draw "all justifiable inferences" in its favor.  Id.

FQ's motion for summary judgment of non-infringement requires us to analyze KC's patent infringement claim.  There are two steps to patent infringement analysis.  See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995).  The first step is to determine the meaning and scope of the patent claims at issue.  See id.  Although we have already completed this step, FQ's motion invites us to revisit our claim construction.  The second step requires us to compare the properly construed claims to the device accused of infringing the patent.  Id.

3

Infringement is found if the accused device is proven, by a preponderance of the evidence, to meet each element of the patent claim, either literally or under the doctrine of equivalents. Seal-Flex, Inc. v. Athletic Track & Court Constr., 172 F.3d 836, 842 (Fed. Cir. 1999).

KC's motion for summary judgment requires us to analyze FQ's claim that Suzuki is prior art invalidating the Rajala Patents. In order to establish that a patent is invalid as a result of prior art, the party challenging the patent must prove by clear and convincing evidence that the alleged invalidating reference is prior art. Mahurkar v. CR Bard, Inc., 79 F.3d 1572, 1576 (Fed. Cir. 1996). If the alleged prior art was published earlier than the filing date of the patent at issue, then the patent may be held invalid under 35 U.S.C. § 102(a), unless the patent owner can prove that the patent was reduced to practice[3] on an earlier date. Id. at 1576-77.

*IV.*     *Discussion*

We will first address FQ's motion for summary judgment of non-infringement of the Rajala Patents, because a ruling in FQ's favor on this motion could render KC's motion moot. After ruling on FQ's motion, we will either analyze the merits of KC's motion for summary judgment that Suzuki is not prior art invalidating the Rajala Patents, or we will deny it as moot.

---

[3] Reduction to practice is proven by showing that the inventor "(1) constructed an embodiment . . . that met all the claim limitations and (2) determined that the invention would work for its intended purpose." Teva Pharm. Indus. v. Astrazeneca Pharms. LP, 661 F.3d 1378, 1383 (Fed. Cir. 2011). Reduction to practice is a "question of law, based on subsidiary findings of fact." Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1365 (Fed. Cir. 2001).

4

### A. FQ's Motion for Summary Judgment of Non-Infringement of the Rajala Patents

The four Rajala Patents describe the configuration of leg elastics in adult incontinence products, such as protective underwear. In these four patents, each leg elastic is described as having three sections. The second section extends "across the crotch" of the garment, while the first and third sections generally follow the leg edges of the garment, on either side of the crotch. Earlier in this litigation, the parties disputed the meaning of the term "a . . . section of . . . elastic across the crotch[.]" We initially construed it to mean "a . . . section of . . . elastic across the crotch" and later clarified that "an elastic can be located 'across the crotch' regardless of whether it has been cut or severed." (See Docs. 301, 344.)

On September 14, 2012, FQ requested Inter Partes Reexamination of two of the Rajala Patents[4] from the U.S. Patent and Trademark Office (PTO). FQ argued that the Rajala Patents' claims were invalid based on the Nomura Patent and the Igaue Patent.[5] The PTO granted FQ's request for reexamination in part, but it decided *not* to reexamine the Rajala claims with respect to Igaue. In reaching this decision, the PTO noted that "[t]he majority of the crotch portion [of the Igaue article] has no elastic at all" and then stated that "[i]t is not reasonable to conclude that the article of Igaue has a [first] elastic with a [second] section across the crotch" (Doc. 757-10 at 13).

---

[4] FQ requested reexamination of the '211 and '260 Rajala Patents.

[5] The Nomura Patent is U.S. Patent No. 5,055,103, and the Igaue Patent is U.S. Patent No. 4,743,241.

5

In the pending motion, FQ asserts that the elastic in the Igaue article is just like the elastic in its products accused of infringement. FQ argues that if Rajala Patents cannot cover the Igaue article, as the PTO concluded, then they cannot cover FQ's products either. FQ insists that no reasonable jury could reach a contrary conclusion. Hence, FQ renews its motion for summary judgment of non-infringement of the Rajala Patents, despite the fact that we previously found a genuine dispute of material fact as to whether FQ's products have elastic "across the crotch" (see Doc. 569).

The second new development that FQ cites as a reason for us to revisit our earlier ruling is the production of KC's expert report. Photographs in the report show little or no elastic in the crotch portion of the products at issue. FQ argues that these photographs conclusively show non-infringement, and that no reasonable jury could conclude that the accused products have a second section of elastic across the crotch, either literally or under the doctrine of equivalents.

FQ also asks this court to modify our construction of the claim limitation "across the crotch," to exclude any product in which the majority of the crotch portion has no elastic. To support this request, FQ again points to the above-described PTO ruling. FQ emphasizes that the PTO is required to give claim limitations their broadest reasonable construction, but despite the breadth of this legal standard, the PTO declared that it would be unreasonable to conclude that the Igaue article has elastic across the crotch. FQ argues that, in light of this new development, we should add a negative limitation to our claim construction, to exclude any product in which a majority of the crotch portion has no elastic.

KC's brief in opposition to FQ's motion raises the following points. First, KC characterizes the pending motion as a motion for reconsideration, and KC argues that none of the limited grounds for granting reconsideration are applicable here. We do not agree that the pending motion must satisfy the heavy reconsideration burden. We find that FQ properly renewed its summary judgment motion based on new developments—specifically, the PTO's action on FQ's request for reexamination, and the production of KC's expert report. We will therefore apply the summary judgment standard set forth above, not the standard that applies to motions for reconsideration.

KC notes that we adopted FQ's proposed construction of "a . . . section of . . . elastic across the crotch[,]" and later, FQ agreed that "an elastic can be located 'across the crotch' regardless of whether it has been cut or severed." KC argues that, in light of this history, we should not consider FQ's request to revisit our claim construction decision. Although KC's recitation of this history is correct, we are not persuaded that these circumstances necessarily bar FQ from requesting that we now add a negative limitation to our claim construction.[6] We find it appropriate to consider the merits of FQ's request.

---

[6] We are similarly unpersuaded by KC's argument that the court may not engage in "rolling" claim construction. KC undermined its own argument by taking the opposite position approximately six months ago, when it urged the court to revise its construction of another claim (see Doc. 659 at 21). Indeed, KC relied on the very case it now criticizes FQ for relying on: Jack Guttman, Inc. v. KopyKake Enters. Inc., 302 F.3d 1352 (Fed. Cir. 2002). Regardless of the merits of the claim construction revision requested by FQ, KC's arguments fail to convince us that we should not even *consider* FQ's request to modify the claim construction.

Turning to the PTO's action, KC characterizes it as a preliminary, non-final action, and KC argues that we should take no action in response to it, because it lacks finality. We reject this argument, because the ongoing portion of the PTO's reexamination proceedings deals with separate issues, not with the issue raised in FQ's pending motion. The only portion of the PTO's decision that is relevant to FQ's motion is its conclusion that the Rajala claims do not cover the Igaue article, and this portion of the PTO's decision is final, not ongoing.

KC also disputes the relevance of what the PTO said about Igaue. KC distinguishes Igaue from the Rajala Patents on the basis that the state of the art reflected in Igaue involved "cut and paste" technology, in which two elastics are separately placed on either side of the crotch of the article, whereas the Rajala Patents disclose three sections of elastic extending across the article. According to FQ, however, KC is merely speculating that "cut and paste" technology is used in Igaue. Indeed, KC admits that Igaue provides no description whatsoever of how the elastics are placed in the product (see Doc. 772 at 13). FQ also argues that even if the Igaue article does involve "cut and paste" technology, this distinction is irrelevant, because the asserted claims of the Rajala Patents are *product* claims, not *process* claims.[7] KC's argument in reply is that "[t]he teachings of Igaue, including how the elastics are placed, is highly relevant to understanding the differences between the claimed inventions in [the] Rajala Patents and Igaue." (Doc. 787 at 3.)

---

[7] See Baldwin Graphic Sys., Inc. v. Siebert, Inc., 512 F.3d 1338, 1344 (Fed. Cir. 2008) ("[T]he process by which a product is made is irrelevant to the question of whether that product infringes a pure apparatus claim[.]").

8

We note that KC offers no legal support for this position. Furthermore, even if it were a legally sound argument, the fact that Igaue is silent on how its elastics are placed would still make this argument unpersuasive. Thus, we are not convinced that this alleged distinction necessarily renders the PTO's decision irrelevant.

Turning to the merits of the claim construction proposed by FQ, KC criticizes it for improperly reading a preferred embodiment out of the claims. Specifically, KC points to Figures 7 and 12 of the '922 Rajala Patent, which show illustrated embodiments in which the elastic is cut (see Doc. 757-1 at 8, 13), and KC notes that the patent's description of Figure 12 notes that "the cut portions of the [elastic] threads retract to positions" where "the path of the threads [are] adhesively held" (Doc. 757-1 at 22, 15:35-55). We find the evidence insufficient to establish that Figures 7 and 12 are, in fact, "preferred" embodiments, and therefore, KC's argument on this point fails.

KC also contends that there is nothing in the claims, the specification, the file histories of the four Rajala Patents, or the PTO's action to support the negative limitation that FQ seeks to add to our claim construction. KC also argues that referring to a *majority* of the crotch portion places an improper numerical limitation on the scope of the claims, which is not supported by the claims, specification, or file history. In response to these points, FQ maintains that negative limitations and numerical limitations are acceptable, and that the proposed limitation is appropriate in this case, because it is consistent with the claim language and with the PTO's decision. Like FQ, we find no inconsistency between the proposed limitation and the claim language. However, that fact alone does not justify adding

9

the proposed limitation to our claim construction.  Furthermore, we do not agree with FQ's argument that the PTO's decision compels us to adopt the proposed limitation.  We have already properly construed the claim in light of the relevant considerations—primarily, the claim language and specification.  The PTO's statement that the Igaue article does not have elastic across the crotch does not impact our construction of the Rajala Patents' "across the crotch" claim limitation; it simply rejects the notion that this limitation could cover the Igaue article.[8]  This decision neither contradicts our claim construction nor suggests that a revision is needed.  Therefore, after careful consideration, we are not convinced that any changes to our claim construction are warranted.

Finally, we turn to the question of whether summary judgment is proper.  KC emphasizes that FQ simply re-raises the same issue presented in its earlier motion for summary judgment of non-infringement of the Rajala Patents.  KC contends that our ruling on the earlier motion should not change.  According to KC, we correctly found a genuine dispute of material fact as to whether the accused products have elastics "across the crotch," correctly rejected FQ's arguments concerning the gap in the elastic, and correctly concluded that claim vitiation does not apply.  KC argues that the jury must decide whether there is literal infringement,

---

[8] If we accepted FQ's assertion that the elastic in its products is exactly like the elastic in the Igaue article, then the PTO's decision could suggest that a finding of infringement would be unreasonable.  However, this fact alone would still not be sufficient to convince us that our *claim construction* must be revised in light of the PTO's decision.  A "claim is construed in the light of the claim language . . . *not* in light of the accused device."  SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1118 (Fed. Cir. 1985) (emphasis in the original).

or infringement under the doctrine of equivalents. In support of this point, KC points to the report of its expert, Ms. Balogh, who opines that FQ's products literally meet the "across the crotch" claim limitation, or in the alternative, have the equivalent.

In response, FQ argues that KC's expert report cannot "manufacture" an issue of fact. We do not agree that Ms. Balogh's opinion is insufficient to create an issue of fact.[9] In ruling on FQ's summary judgment motion, we *must credit* KC's evidence and draw "all justifiable inferences" in its favor. It may be unlikely that a reasonable finder of fact would do the same after weighing all the evidence, but nevertheless, it is not our task to weigh the evidence as a factfinder does. Instead, we credit the nonmoving party's evidence as we consider whether a reasonable factfinder could rule in its favor. We find that KC's evidence, if credited, could lead a reasonable juror to conclude that FQ's products infringe the Rajala Patents. We will therefore deny FQ's motion for summary judgment of non-infringement.

*B.    KC's Motion for Summary Judgment that Suzuki is Not Prior Art*

We turn now to KC's motion for summary judgment that Suzuki is not prior art invalidating the Rajala patents. There is no dispute that Suzuki was published on November 30, 1994, before the Rajala Patents' application was filed.

---

[9] We note that the case cited by FQ is not on point. In related litigation between KC and FQ in the U.S. District Court for the Eastern District of Wisconsin, the Honorable William C. Griesbach was considering an affirmative defense of obviousness. In this context, he held that "[a]n expert cannot be used to manufacture an issue of fact as to what the prior art teaches when that prior art is clear on its face." See Kimberly-Clark Worldwide, Inc., *et al.* v. First Quality Baby Products, LLC, *et al.*, No. 09-CV-0916, ECF No. 804 at 10 (E.D. Wis. Sept. 29, 2012). This holding is inapposite to the motion before us, which does not involve obviousness or present a question about what is taught in prior art.

11

Hence, Suzuki may be prior art that invalidates the Rajala Patents under 35 U.S.C. § 102(a), unless KC can prove that the Rajala Patents were reduced to practice on an earlier date.

In the pending motion, KC contends that the Rajala Patents were reduced to practice by April 1994, and based on this chronology, Suzuki is not prior art to the Rajala Patents and cannot invalidate them. As noted above (supra note 3), the requirements for proving reduction to practice include showing that the inventor constructed an embodiment meeting all the claim limitations. KC offers testimony and documentary evidence on this point, including drawings of products that were constructed for testing. KC alleges that the products contained all the limitations of the Rajala inventions. However, FQ argues that KC's evidence is not sufficient to prove this assertion, and summary judgment should be denied.

We agree that KC is not entitled to summary judgment on this issue. Under the same reasoning by which we found a genuine issue of material fact as to the existence of a section of elastic "across the crotch" in FQ's products accused of infringement, we likewise find a genuine issue of material fact as to whether KC's products made for testing met this claim limitation. A reasonable fact-finder might conclude that the elastic in those products did not extend "across the crotch."[10]

---

[10] KC primarily contends that its products have elastic "across the crotch," but in the alternative, KC argues that if its products do not, then neither does Suzuki, and KC is entitled to summary judgment under either scenario. To support the connection between its products and Suzuki, KC points to the opinion of FQ's expert, Mr. Gardner, who opined that Suzuki discloses products with elastics that are severed such that a gap is left across the crotch region of the product. We find this evidence insufficient to establish that summary judgment is warranted, because a reasonable fact finder could conclude that KC's test products and the Suzuki article are not alike.

12

If so, the products would not qualify as an embodiment meeting all the Rajala Patents' claim limitations. We will therefore deny KC's motion for summary judgment.

V.	*Conclusion*

For the reasons stated above, we will deny FQ's motion for summary judgment of non-infringement of the Rajala Patents, and we will also deny KC's motion for summary judgment that Suzuki is not prior art invalidating the Rajala Patents. We will issue an appropriate order.

/s/ William W. Caldwell  
William W. Caldwell  
United States District Judge

Date: May 28, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
                                           :
    v.                                    CIVIL NO. 1:09-CV-1685
                                           :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC.,      :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC.,       :
    Defendants and
    Counterclaim Plaintiffs              :

    v.                                    :

KIMBERLY-CLARK CORPORATION,      :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

*O R D E R*

AND NOW, this 28th day of May, 2013, upon consideration of Defendants' motion (Doc. 756) for partial summary judgment of non-infringement of all asserted claims of the Rajala Patents, and upon further consideration of Plaintiff's motion (Doc. 634) for partial summary judgment that the Suzuki reference is not prior art invalidating the Rajala Patents, and pursuant to the accompanying memorandum, it is ORDERED that both motions are DENIED.

                                                    /s/ William W. Caldwell
                                                    William W. Caldwell
                                                    United States District Judge