IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
  Plaintiff
              :
  v.           CIVIL NO. 1:09-CV-1685
               :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
  Defendants and
  Counterclaim Plaintiffs   :

  v.           :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
  Counterclaim Defendants

*M E M O R A N D U M*

*I.  Introduction*

   This litigation concerns a variety of patents relating to disposable absorbent products, such as diapers and incontinence products. Presently before the court is a motion filed by Defendants and Counterclaim Plaintiffs First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic, Inc. (collectively, "FQ") for partial summary judgment that the Kellenberger and Melius Patents[1] are invalid for obviousness (see Doc. 682). For the reasons that follow, we will deny the motion.

---

[1] The patents at issue are U.S. Patent No. 5,147,343 to Kellenberger and U.S. Patent No. 5,601,542 to Melius et al.

*II.     Background*

In February 2009, FQ filed a complaint in this court for a declaratory judgment, but we dismissed that complaint for lack of subject matter jurisdiction. Prior to our dismissal, however, Plaintiff Kimberly-Clark Worldwide, Inc. ("KC") filed this patent infringement action in the U.S. District Court for the Northern District of Texas, which was then transferred from Texas to this court. Among other claims, KC accuses FQ of infringing the Kellenberger and Melius Patents.[2] FQ denies infringement and contends these patents are invalid.

*III.    Legal Standard*

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We will examine the motion under the well-established standard. See, e.g., Meditz v. City of Newark, 658 F.3d 364, 369 (3d. Cir. 2011). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). The court must credit the nonmovant's evidence and draw "all justifiable inferences" in its favor. Id.

---

[2] Specifically, KC asserts infringement of Kellenberger Patent Claims 1, 2, 7-9, 12, 20, 21, 24, 30, 41, 42, and 44, and Melius Patent Claims 16-19, 22, 23, 25, 73, 74, 79, 83, 84, and 88.

Patent claims are presumed to be valid, and the party alleging invalidity bears the burden of proving it by clear and convincing evidence. 35 U.S.C. § 282; Microsoft Corp. v. i4i Ltd. P'ship, ___ U.S. ___, 131 S. Ct. 2238, 2242 (2011). Invalidity might be established in a variety of ways. In order to determine whether a patent is invalid for obviousness, the court must examine whether "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious . . . to a person having ordinary skill in the art[.]" 35 U.S.C. § 103. Obviousness presents a question of law; however, it is based on the following factual inquiries set forth in Graham v. John Deere Co.: (1) "the scope and content of the prior art[,]" (2) "differences between the prior art and the claims at issue[,]" (3) "the level of ordinary skill in the pertinent art[,]" and (4) "secondary considerations" that may indicate obviousness or lack thereof, such as "commercial success, long felt but unsolved needs, failure of others, etc." 383 U.S. 1, 17-18 (1966).

IV.    *Discussion*

First Quality claims that the Kellenberger and Melius Patents are invalid for obviousness because the only feature distinguishing them from prior art is their use of a new "superabsorbent polymer" ("SAP") in the product's absorbent core, to replace an older, less effective SAP.[3] FQ argues that it was obvious to

---

[3] The absorbent core of a diaper or incontinence product consists of a mix of fibers and superabsorbent polymers ("SAPs"), which are chemical compounds capable of absorbing ten or more times their own weight in fluid. SAP particles are dispersed among the spaces between fibers.

3

substitute new, improved SAPs for old ones. FQ also notes that KC did not invent the improved SAPs—rather, it obtained them from its suppliers—and FQ insists that KC cannot obtain a patent for something it did not invent.

KC admits that it did not create the new SAPs, or invent their chemical composition, but KC disputes the assertion that it merely substituted one SAP for another. According to KC, its inventors discovered specific combinations of characteristics (described in further detail below) that provided superior absorbency under pressure and eliminated a problem known as "gel blocking," which was commonly associated with the use of SAP in absorbent products.[4] KC and its inventors then took their discoveries to SAP suppliers, who provided SAPs with the characteristics that KC sought.

With respect to the Kellenberger Patent, KC first describes Stanley Kellenberger's invention of the AUL test.[5] AUL is an acronym for "absorbency under load," and the AUL test measures the amount of liquid an SAP can absorb while under a specified amount of confining pressure. After inventing the AUL test, Kellenberger discovered key AUL values that would yield enhanced absorbency.

---

[4] KC describes gel blocking as a problem that occurred when SAPs expanded into the spaces between the fibers and blocked further absorption of fluid into the product's absorbent core. KC explains that, once swollen, the SAPs would block fluid "like a dam[.]" (Doc. 739 at 10).

[5] FQ contends that it was actually Sanyo Chemical Industries, Inc., one of KC's suppliers, and not Kellenberger who developed the AUL test. KC asserts that the AUL test developed by Sanyo was a different and less effective test than Kellenberger's AUL test, and that Sanyo later adopted Kellenberger's test because it was a better predictor of SAP performance. For purposes of ruling on the pending motion, we must credit KC's evidence, and we find the evidence sufficient to support a finding that Kellenberger did, in fact, invent the AUL test claimed in the Kellenberger Patent.

4

Furthermore, KC also describes Kellenberger's discovery that the key to avoiding gel blocking was in the relationship between the size of the SAP particles and the median pore size.[6] KC claims that this particle to pore size relationship was not disclosed in any prior art, and Kellenberger discovered it.

With respect to the Melius Patent, KC claims that its inventors discovered new parameters for SAP performance, called the PAI test, an acronym for "pressure absorbency index." The PAI value is calculated by adding together four AUL values, measured at four different specified pressures. KC also asserts that these inventors "invented the combination of an absorbent composite with the claimed (1) percentage of SAP, (2) PAI values of the SAP, and (3) levels of extractables." (Doc. 739 at 17).

In response, FQ argues that the alleged invention of the AUL and PAI testing protocols is not material, because the patent claims cover the diaper itself, not the method of testing the SAP used in the diaper. FQ reminds the court that our claim construction ruling held that Kellenberger and Melius have no process limitations and do not require the use of AUL or PAI testing protocols—they simply require the article to have the specified superabsorbent properties.

---

[6] "Pore size" refers to a measure of the space between fibers. According to KC, Kellenberger discovered that if at least 50% (and preferably more) of the SAP particles were larger than the pore size, then they could push the fibers apart as they swell. This would avoid gel blocking and create additional space for fluids to be channeled and absorbed into the absorbent core of the product.

5

FQ is correct that our claim construction decision so held,[7] but we do not agree that this compels us to disregard the new testing methods entirely, simply because the patent claims do not cover these protocols. KC describes the AUL and PAI testing protocols as part of a larger narrative through which KC argues against FQ's claim of obviousness. KC's argument is that the Kellenberger and Melius Patents were not obvious because they claim superabsorbent materials with specific characteristics that were previously unknowable, until new testing methods made it possible to identify these characteristics. Contrary to FQ's contentions, this argument does not raise a claim construction issue, nor is it irreconcilable with our claim construction ruling.

FQ also contends that it is irrelevant that the AUL and PAI values were previously unknowable characteristics of SAP, prior to the development of the AUL and PAI tests. FQ cites Atlas Powder Co. v. IRECO Inc. for its holding that "discovery of a previously unappreciated property of a prior art composition . . . does not render the old composition patentably new." 190 F.3d 1342, 1347 (Fed. Cir. 1999); see also In re Crish, 393 F.3d 1253, 1258 (Fed. Cir. 2004) ("[T]he discovery of properties of a known material does not make it novel.").

KC urges us to reject this argument on the basis that it confuses the issues of anticipation by inherency and obviousness, which are distinct issues. Anticipation by inherency concerns the existence of an unrecognized property

---

[7] Our claim construction ruling declined to construe the verbs "can" and "has" to mean that "material is 'specifically selected based on its having the' claimed properties[,]" because construing them in that manner would "improperly . . . add a process limitation into an apparatus claim." (Doc. 301 at 16-17.)

6

inherent in a single prior art reference—a characteristic that is necessarily present in the prior art, but not known.[8]  By contrast, obviousness is an issue concerning what a person of ordinary skill in the art would have known at the time of the invention. KC cites In re Rijckaert for the proposition that "[o]bviousness cannot be predicated on what is unknown."  9 F.3d 1531, 1534 (Fed. Cir. 1993).

FQ agrees that anticipation and obviousness are distinct doctrines, but FQ argues that "an inherent teaching of a prior art reference" is relevant to both. See In re Napier, 55 F.3d 610, 613 (Fed. Cir. 1995); In re Kao, 639 F.3d 1057, 1070 (Fed. Cir. 2011); Santarus, Inc. v. Par Pharm., Inc., 694 F.3d 1344, 1354 (Fed. Cir. 2012).  FQ asserts that the SAPs, which KC did not invent, had the specified AUL and PAI values inherently, and according to FQ, that fact is sufficient to establish obviousness of the Kellenberger and Melius Patents.

KC contends that the cases cited by FQ—cases in which inherency is a consideration that supports a finding of obviousness—are distinguishable from the instant case.  KC argues that in the cases cited by FQ, the inherent properties at issue were acknowledged or known to be present in prior art, but by contrast, the AUL and PAI values at issue in this case were previously unrecognized and unknown.  We agree with this distinction.  Although a finding of obviousness could in some cases arise from the fact that certain properties were inherent in prior art, we

---

[8] KC insists that the doctrine of anticipation does not apply in this case, not only because FQ failed to raise this theory in the pending motion, but also because there is no single prior art reference that discloses the inventions of the Kellenberger or Melius Patents.

7

are not convinced that, in this case, the AUL and PAI values are the type of inherent properties that would render the Kellenberger and Melius Patents obvious.

When viewed in the light most favorable to KC, the evidence in this case could support a ruling against FQ's claim of obviousness. As noted above, obviousness is a question of law based on underlying factual inquiries, including differences between the prior art and the claims at issue. FQ contends that KC simply took a new SAP invented by a third-party manufacturer and included it in a preexisting diaper design, and that it was obvious to do so. However, KC's evidence, if credited, could support a different conclusion. KC's evidence suggests that, at a time when there was no clear industry consensus as to how to maximize absorbency under pressure and how to avoid gel blocking, KC's inventors discovered key characteristics for superior SAP performance that addressed these issues. Furthermore, KC's evidence indicates that, without the benefit of its AUL and PAI tests, it might have been unclear which of the SAPs provided by its suppliers would yield the best performance.[9] In light of this evidence, which we must credit at this juncture, FQ's argument that it would have been obvious to substitute a new SAP for an old one is unpersuasive. We conclude that the underlying factual inquiries do not necessarily support a finding of obviousness by

---

[9] Indeed, KC cites evidence that a different AUL test developed by Sanyo (see supra note 5) did not measure absorbency under pressure as well as Kellenberger's AUL test did. According to KC, Sanyo made two lots of an SAP called "PA200," and the two lots had equal AUL values under Sanyo's AUL test, but under KC's AUL test, the first lot's AUL value was almost double the AUL value of the second lot.

clear and convincing evidence.[10] A reasonable jury could reject FQ's obviousness claim. Therefore, FQ's motion for summary judgment must be denied.

*V.*          *Conclusion*

For the reasons stated above, we will deny FQ's motion for partial summary judgment that the Kellenberger and Melius Patents are invalid for obviousness. We will issue an appropriate order.

      /s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: July 8, 2013

---

[10] KC also relies on "secondary considerations" as evidence that the Kellenberger and Melius Patents are not obvious, including the commercial success of products practicing these patents, and the fact that other industry participants took licenses of these patents. In response, FQ argues that secondary considerations cannot overcome a strong prima facie showing of obviousness, which FQ contends that it has made in this case. For the reasons set forth above, we do not agree that FQ has made such a strong prima facie showing of obviousness that the secondary considerations presented by KC are rendered immaterial to our analysis.

FQ also argues that KC's evidence concerning these secondary considerations is insufficient. For purposes of ruling on the pending motion, however, we need not discuss the merits of KC's evidence on this point. The evidence discussed above, concerning the differences between the prior art and the claims of the Kellenberger and Melius Patents, is sufficient to persuade us that FQ is not entitled to summary judgment on the issue of obviousness. Thus, no further discussion of secondary considerations is necessary.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
:
v.     CIVIL NO. 1:09-CV-1685
:
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
    Defendants and
    Counterclaim Plaintiffs :

v. :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

*O R D E R*

AND NOW, this 8th day of July, 2013, upon consideration of Defendants' motion for partial summary judgment that the Kellenberger and Melius Patents are invalid for obviousness (Doc. 682), it is ORDERED that said motion is DENIED.

                                       /s/ William W. Caldwell
                                       William W. Caldwell
                                       United States District Judge