IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
: 
    v.                               CIVIL NO. 1:09-CV-1685
:
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
    Defendants and
    Counterclaim Plaintiffs :

    v. :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

*M E M O R A N D U M*

*I.*     *Introduction*

This litigation concerns a variety of patents relating to disposable absorbent products, such as diapers and incontinence products. Presently before the court are two motions filed by Plaintiff and Counterclaim Defendants Kimberly-Clark Worldwide, Inc., Kimberly-Clark Corporation, and Kimberly Clark Global Sales, LLC (collectively, "KC"). First, KC seeks summary judgment that certain diapers[1] are not prior art invalidating the Kellenberger and Melius Patents[2] (see Doc. 676).

---

[1] The parties refer to the diapers at issue as the Merries diaper and the Pampers Y diaper.

[2] The patents at issue are U.S. Patent No. 5,147,343 to Kellenberger and U.S. Patent No. 5,601,542 to Melius et al.

Second, KC has filed a motion in limine and motion to strike (Doc. 748) requesting that we preclude and strike certain evidence—evidence upon which Defendants and Counterclaim Plaintiffs First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic, Inc. (collectively, "FQ") relied, in FQ's opposition to KC's pending summary judgment motion.

Both of these motions are now ripe for our review. We consider the motions simultaneously because a favorable ruling on the motion in limine and motion to strike could affect the body of evidence that we consider in ruling on the summary judgment motion. For the reasons that follow, we will grant the motion in limine in part and deny it in part, and we will deny the motion for partial summary judgment.

*II.     Background*

In February 2009, FQ filed a complaint in this court for a declaratory judgment, but we dismissed that complaint for lack of subject matter jurisdiction. Prior to our dismissal, however, Plaintiff Kimberly-Clark Worldwide, Inc. ("KC") filed this patent infringement action in the U.S. District Court for the Northern District of Texas, which was then transferred from Texas to this court. Among other claims, KC accuses FQ of infringing the Kellenberger and Melius Patents.[3] FQ denies infringement and contends these patents are invalid.

---

[3] Specifically, KC asserts infringement of Kellenberger Patent Claims 1, 2, 7-9, 12, 20, 21, 24, 30, 41, 42, and 44, and Melius Patent Claims 16-19, 22, 23, 25, 73, 74, 79, 83, 84, and 88.

III.	Legal Standard

    A.	Motion in Limine and Motion to Strike

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," the court may sanction that party, typically by prohibiting it from relying on the undisclosed information or witness, "unless the failure was substantially justified or is harmless." In deciding whether this sanction is warranted, we consider the following factors: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order[,]" and we also consider the importance of the testimony at issue. Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds by Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985).

    B.	Motion for Summary Judgment

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We will examine the motion under the well-established standard. See, e.g., Meditz v. City of Newark, 658 F.3d 364, 369 (3d. Cir. 2011). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has

3

the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). The court must credit the nonmovant's evidence and draw "all justifiable inferences" in its favor. Id.

Patent claims are presumed to be valid, and the party alleging invalidity bears the burden of proving it by clear and convincing evidence. 35 U.S.C. § 282; Microsoft Corp. v. i4i Ltd. P'ship, ___ U.S. ___, 131 S. Ct. 2238, 2242 (2011). Accordingly, in order to show that a patent is invalid as a result of prior art, the party challenging the patent must prove by clear and convincing evidence that the alleged invalidating reference is, in fact, prior art. Mahurkar v. CR Bard, Inc., 79 F.3d 1572, 1576 (Fed. Cir. 1996). Under 35 U.S.C. § 102, there are several events that could establish prior art—for instance, the alleged invalidating reference could be patented, or publicly used or sold. If one of these events occurred prior to the effective filing date of a patent, then the patent may be held invalid as a result of the prior art, unless the patent owner can prove that the patent was reduced to practice[4] on an earlier date. Id. at 1576-77.

---

[4] Reduction to practice is proven by showing that the inventor "(1) constructed an embodiment . . . that met all the claim limitations and (2) determined that the invention would work for its intended purpose." Teva Pharm. Indus. v. Astrazeneca Pharms. LP, 661 F.3d 1378, 1383 (Fed. Cir. 2011). Reduction to practice is a "question of law, based on subsidiary findings of fact." Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1365 (Fed. Cir. 2001).

*IV.      Discussion*

We will first address KC's motion in limine, which challenges some of the evidence that FQ raised in its opposition to KC's pending motion for summary judgment. KC asks us not only to exclude FQ's evidence at trial, but also to strike it immediately, and not consider it in our summary judgment ruling. See Barndt v. Pa. Dep't of Corr., No. 09-CV-1790, 2011 WL 4830181 at *4 (M. D. Pa. Aug. 31, 2011) (M.J. Carlson) ("[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."). Once we have ruled on the motion in limine and motion to strike, we will then consider whether KC is entitled to summary judgment that the Merries and Pampers Y diapers are not prior art invalidating the Kellenberger and Melius Patents.

*A.      KC's Motion in Limine and Motion to Strike*

In the pending motion in limine and motion to strike, KC asks us to preclude and strike the following evidence:

> (1) At trial, preclude the testimony of Thomas Gove, John Pollaro, William Clemens, Paul Lewis, Erin Howe, and Byrn Hird.
>
> (2) At trial, preclude the introduction of the "Hanson documents"—documents submitted with James Hanson's declaration supporting FQ's opposition to KC's motion for summary judgment of no invalidity of the Kellenberger and Melius Patents.
>
> (3) Strike the declarations of the above witnesses, which FQ submitted in support of its opposition to KC's motion for summary judgment of no invalidity of the Kellenberger and Melius Patents.

KC argues that most of this evidence should be stricken and precluded at trial on the basis FQ failed to identify these witnesses and documents in a timely manner, and its failure to do so is neither substantially justified nor harmless.[5]

Fact discovery in this case closed on May 14, 2012, and FQ's deadline for submitting expert reports concerning the alleged invalidity of the Kellenberger and Melius Patents was June 15, 2012. According to KC, FQ did not identify the evidence listed above until January 11, 2013, when it filed its opposition to KC's motion for summary judgment of no invalidity of the Kellenberger and Melius Patents. KC insists that FQ has no justification for failing to produce this evidence sooner, and KC contends that permitting FQ to present this evidence at trial would severely prejudice KC. KC further argues that the only alternative cure would be to reopen fact and expert discovery, which would cause significant delay and prejudice KC. Hence, KC asks that we preclude FQ from relying on this evidence.

In response, FQ argues that this evidence should not be excluded, because KC's claims of surprise and prejudice are not credible. FQ contends that all of the factors set forth in <u>Meyers v. Pennypack Woods Home Ownership Ass'n</u>, 559 F.2d 894, 904-05 (3d Cir. 1977), favor FQ under the circumstances of this case. FQ also indicates that some of the evidence at issue was in some way identified or disclosed earlier than KC contends it was.

---

[5] With respect to Mr. Hird, who was identified in FQ's initial disclosures, KC argues that his testimony should be excluded because it is not based on personal knowledge. KC argues that Mr. Hird's declaration contains expert opinions, but Mr. Hird was not disclosed as an expert.

We will consider each of the challenged witnesses and documents, examining whether exclusion is warranted, and whether the witnesses' declarations should be stricken from the record before us at summary judgment. We begin by considering the Hanson documents, and we will then turn to the other witnesses' declarations and anticipated trial testimony.

*1. Hanson Documents*

KC takes issue with two new exhibits[6] accompanying Hanson's declaration in support of FQ's opposition to KC's motion for summary judgment of no invalidity of the Kellenberger and Melius Patents. According to KC, FQ never previously produced these documents, and KC was unaware of them and had no way to know that FQ would rely on them at trial. KC contends that it is prejudiced because it now has no opportunity to take follow-up discovery, develop rebuttal evidence, or allow its experts to review and opine on the new documents.

In response, FQ notes that the documents at issue were distributed at a convention that KC attended, but KC did not produce them, and therefore, FQ was forced to obtain them from Hanson's company, MTS. This argument seems to imply that KC should have produced the documents; however, FQ does not explain why KC would be obligated to do so. Nor does FQ convince us that the need to procure this evidence from another source substantially justifies its untimely identification of this evidence. As a general matter, it is not uncommon for litigants to seek and

---

[6] KC originally objected to four exhibits, but in its reply brief, KC withdrew its objection to Exhibits 1-2. We note that KC does not object to Hanson himself, because FQ did identify him as a potential witness.

7

gather evidence from sources other than their opposing party in litigation, and FQ does not describe any specific circumstances that presented an unusual hardship in this case. Because FQ's failure to disclose this evidence was not substantially justified, we will examine the Pennypack factors.

We conclude that the first two Pennypack factors favor KC under the circumstances of this case. KC is prejudiced and surprised by the belated production of this evidence, and unable to cure the prejudice at this late juncture. The remaining factors favor FQ. Specifically, with respect to the third factor, we are not persuaded that FQ's belated production of this evidence came so late that it would disrupt trial, because trial is more than four months away, and the parties have not yet identified which claims they will present at trial. The fourth factor—bad faith or willfulness—favors FQ, because we find none. Finally, the fifth factor—the importance of the evidence at issue—also favors FQ slightly. We conclude that the evidence is somewhat important, but not so important that this factor deserves significant weight. Upon consideration of all of these factors, we conclude that it is appropriate to exclude the Hanson documents, because the prejudice and surprise to KC, and KC's inability to cure the prejudice, outweigh the other factors discussed above. Therefore, we will grant KC's motion in limine and motion to strike with respect to these two documents.

### 2. *Testimony of Gove, Pollaro, and Clemens*

KC objects to the testimony of Thomas Gove, John Pollaro, and William Clemens, and contends that these witnesses were never identified in any

capacity during discovery. Thomas Gove is an employee of Hanson's company, MTS. Although FQ neglected to specifically name Gove as an individual likely to have discoverable information, FQ notes that it did identify MTS as a source of information. Thus, FQ contends that KC should not have been surprised by FQ's intent to rely on the testimony of Gove, an MTS employee. FQ also notes that KC decided not to seek discovery from MTS, and any alleged prejudice to KC can be attributed to that decision. As justification for identifying John Pollaro belatedly, FQ argues that it contacted Pollaro in response to KC's summary judgment motion, wherein KC argued, for the first time, that FQ needed additional corroboration to use the Merries diaper as prior art. Finally, FQ notes that William Clemens was simply retained as a translator, because the Merries diaper packaging bears Japanese writing. FQ argues that it should not have come as a surprise to KC that FQ would use a witness to translate Japanese to an English-speaking jury.

Based on the parties' submissions, we conclude that FQ failed to disclose Gove, Pollaro, and Clemens as witnesses, and the failure was not substantially justified.[7] However, the error is harmless with respect to Clemens, the translator. We foresee no harm to KC that would result from FQ's belated identification of a translator, and KC's conclusory allegations of prejudice do not persuade us to the contrary.

---

[7] We specifically reject FQ's attempt to justify its actions by the fact that, until filing its summary judgment motion, KC never previously alleged that FQ needed further corroboration to support its prior art defense. FQ bears the burden of proof on this defense, and it is not KC's responsibility to alert FQ to insufficiencies in its proof.

9

With respect to Gove and Pollaro, by contrast, we do not find the error to be harmless, and we will examine the Pennypack factors. First, we note that FQ's late disclosure of these witnesses caused surprise and prejudice to KC. With respect to Gove, we conclude that there is some surprise and prejudice to KC, but KC might have avoided the prejudice by seeking discovery from MTS, Gove's employer, which was identified by FQ. With respect to Pollaro, the surprise and prejudice is greater, and KC never had an opportunity to avoid it. Nor would KC be able to cure the prejudice now, because KC has no further opportunities to take discovery. The final three Pennypack factors favor FQ, because we find no potential disruption to an orderly trial, and no bad faith, and we believe the evidence at issue to be important to FQ's defense. After weighing all of these factors, we conclude that exclusion of Pollaro's testimony is an appropriate sanction. With respect to Gove's testimony, however, we find that a lesser sanction is warranted under the circumstances of this case. We will strike Gove's declaration from the summary judgment record, and not consider it in ruling on KC's pending summary judgment motion, but we will not preclude Gove from testifying at trial.

### 3. Testimony of Lewis and Howe

KC acknowledges that FQ made an unsuccessful attempt to subpoena depositions from Paul Lewis and Erin Howe,[8] but KC nevertheless objects to these

---

[8] FQ sought to depose Paul Lewis, Erin Howe, and Byrn Hird, but KC opposed FQ's requests to take their depositions. FQ had already used its allotted number of depositions by that time, and for that reason, the court denied FQ's request to take additional depositions. (See Doc. 588).

witnesses on the basis that FQ did not identify them as trial witnesses. FQ contends that it did identify How and Lewis as witnesses, (see Doc. 768 at 17), and FQ also argues that it properly objected to KC's request for a trial witness list as premature. We find it unnecessary to resolve the questions of whether FQ failed to disclose these witnesses, and whether such a failure would have been substantially justified, because we conclude that, in any event, the exclusion of Lewis and Howe's testimony is not an appropriate sanction in light of the Pennypack factors and the specific circumstances of this case.

Upon consideration of the first Pennypack factor, we conclude that KC's allegations of prejudice and surprise are overstated. KC deposed these witnesses and cross-examined them on the exact same issue—whether the Pampers Y diaper is prior art invalidating the Melius Patent—in a 2002 arbitration proceeding between KC and Procter & Gamble ("P&G"). The fact that KC was "already aware of the basic substance of the witness' testimony" minimizes the prejudice to KC. See In re Paoli R.R. Yark PCB Litig., 35 F.3d 717, 792 (3d Cir. 1994). Moreover, we note that the alleged prejudice cannot be attributed solely to FQ; it is also partly attributable to KC. KC withheld their arbitration testimony from FQ throughout most of the discovery period, on the basis of a novel privilege that KC asserted over all materials from the P&G arbitration, including these witnesses' testimony. If not for this tactic, KC could have confronted these witnesses much sooner and, presumably, avoided much of the alleged prejudice. Turning to the third Pennypack factor, we conclude that waiver of the rule against calling unlisted witnesses would not disrupt the order or efficiency of a trial in this case. As noted

11

above, KC has already cross-examined these witnesses on the relevant issue, and furthermore, the parties have ample time to prepare for these witnesses to testify at trial, which is more than four months away. With respect to the fourth factor, we find no bad faith. Finally, we consider the importance of the evidence at issue. We conclude that Lewis and Howe's testimony is important to FQ's defense, and this factor weighs in favor of FQ.

Therefore, even if we assume, *arguendo*, that FQ failed to identify Lewis and Howe as witnesses, and that it was not substantially justified in doing so, we conclude that it is not appropriate to exclude their testimony, in light of all the factors discussed above. We will therefore deny KC's motion with respect to Lewis and Howe.

### 4. *Testimony of Hird*

Finally, we turn to Byrn Hird. As noted *supra*, note 6, FQ identified Hird as a fact witness. KC objects to Hird's testimony on different grounds from that of the other witnesses. Specifically, KC contends that his testimony contains expert opinions, which are untimely and highly prejudicial, because FQ did not identify Hird as an expert witness or provide his opinions during expert discovery. Furthermore, KC argues that Hird cannot serve as a fact witness because his testimony is not based on personal knowledge. FQ insists that, contrary to KC's assertions, Hird's testimony is based on his personal knowledge, and FQ offers him as a fact witness.

We are not persuaded that Hird's testimony, as a whole, lacks the personal knowledge required by Rule 602 of the Federal Rules of Evidence.

12

Although his proposed testimony may refer to some facts about which he was "advised," we conclude that he also has personal knowledge about a variety of relevant matters. We are similarly unconvinced that Hird's references to his "opinions" necessarily render his entire testimony inadmissible. Under Rule 701, a witness who is not testifying as an expert may, in limited circumstances, offer testimony in the form of an opinion. To the extent that portions of Hird's testimony may overstep the limit of what is permissible under Rule 701, we conclude that it would be best to rule on KC's objections to such testimony in the context of trial. KC has failed to persuade us that the entirety of Hird's testimony must be excluded, and therefore, we will deny KC's motion as it pertains to Hird's testimony, without prejudice to KC's right to raise similar objections at trial.

### B. *KC's Motion for Summary Judgment of No Invalidity of the Kellenberger and Melius Patents*

KC seeks summary judgment that the Merries diaper is not prior art invalidating the Kellenberger Patent, and that the Pampers Y diaper is not prior art invalidating the Melius Patent. KC argues that, in order to establish these diapers as prior art, FQ must persuade a jury by clear and convincing evidence that these diapers were on sale or in public use in the U.S. more than one year prior to the patents' effective filing dates. KC insists that FQ's proof is insufficient to satisfy this standard, and therefore, KC seeks judgment as a matter of law on these issues.

13

In response, FQ contends that its proof is adequate.[9] FQ points to the following evidence supporting its claims of prior art. First, the testimony of Lewis, Hird, and Howe could persuade a reasonable jury that the Pampers Y diaper was prior art, sold in the United States approximately three years before the Melius Patent was filed, and hence, it is prior art invalidating the Melius Patent. Second, Hanson's testimony could persuade a reasonable jury that the Merries diaper is prior art invalidating the Kellenberger Patent, even though the Merries diaper was sold primarily in Japan. According to FQ, Hanson will testify that he purchased a package of Merries diapers in Japan, brought the package back to MTS's facility, used a few diapers for analysis and testing, and made other diapers available for sale;[10] and this testimony will be corroborated by MTS's records.

In ruling on KC's summary judgment motion, we must credit FQ's evidence and draw all reasonable inferences in FQ's favor. Applying this standard to the evidence discussed above, we conclude that the evidence could lead a reasonable jury to reach a verdict in FQ's favor on the claims at issue. Accordingly,

---

[9] FQ also takes issue with the legal standard that KC describes, and FQ argues that its proof that the Merries diaper was *known* in the United States is enough to establish prior art, even if Merries diapers were not publicly used or sold.

[10] KC contends that Hanson's testimony fails to show that the Merries diaper was either used for its intended purpose or actually sold. As noted *supra*, note 9, FQ disputes that this is the proper standard to which its proof should be held. However, FQ proceeds to argue that, even if it is held to this standard, its evidence at least creates a genuine issue of material fact, which must be resolved by a jury. We agree that FQ's evidence is, at a minimum, sufficient to give rise to a jury question. KC's arguments—for instance, that the intended use of a Merries diaper is to be worn on a baby as an absorbent product, and that absorbency testing does not satisfy this standard—may be persuasive to a jury, but they do not convince the court that KC is entitled to judgment as a matter of law.

KC is not entitled to judgment as a matter of law, and we must deny the pending motion for summary judgment.

*V.    Conclusion*

For the reasons stated above, we will grant the motion in limine in part and deny it in part, and we will deny the motion for partial summary judgment. We will issue an appropriate order.

    /s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: July 25, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
                                                        :
    v.                                                CIVIL NO. 1:09-CV-1685
                                                        :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
    Defendants and
    Counterclaim Plaintiffs               :

    v.                                               :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

*O R D E R*

AND NOW, this 25th day of July, 2013, upon consideration of Plaintiff's motion for partial summary judgment of no invalidity of the Kellenberger and Melius Patents (Doc. 676), and upon further consideration of Plaintiff's motion in limine and motion to strike (Doc. 748), and pursuant to the accompanying memorandum, it is ORDERED as follows:

    1.     The motion for partial summary judgment (Doc. 676) is DENIED.

    2.     The motion in limine and motion to strike (Doc. 748) is GRANTED in part and DENIED in part as follows:

        a.     The motion is GRANTED with respect to Exhibits 4 and 5 to Doc. 735, James Hanson's declaration.

  b. The motion is GRANTED with respect to the declaration and anticipated trial testimony of John Pollaro.

  c. The motion to strike is GRANTED with respect to the declaration of Thomas Gove, but the motion in limine is DENIED with respect to Thomas Gove's anticipated trial testimony.

  d. The motion in limine is DENIED without prejudice with respect to the anticipated trial testimony of Byrn Hird.

  e. The motion is DENIED in all other respects.

          /s/ William W. Caldwell
         William W. Caldwell
         United States District Judge