IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


KIMBERLY-CLARK WORLDWIDE, INC.,      :
        Plaintiff
                                     :
        v.                             CIVIL NO. 1:09-CV-1685
                                     :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC.,        :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC.,        :
        Defendants and
        Counterclaim Plaintiffs      :

        v.                           :

KIMBERLY-CLARK CORPORATION,          :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC,    :
        Counterclaim Defendants


M E M O R A N D U M

*I.*        *Introduction*

        This litigation concerns a variety of patents relating to disposable

absorbent products, such as diapers and incontinence products.  Presently before

the court is a motion for partial summary judgment (Doc. 810) filed by Plaintiff and

Counterclaim Defendants Kimberly-Clark Worldwide, Inc., Kimberly-Clark

Corporation, and Kimberly Clark Global Sales, LLC (collectively, "KC").  KC seeks

summary judgment that a European Patent Application known as "Suzuki"[1] does not

anticipate or render obvious certain patent claims at issue in this case.  Originally,

the claims at issue in this motion included claims 7, 8, 20, and 21 of the Rajala '922

---

[1] European Patent Application No. 0626161A1 to Suzuki et al.

Patent,[2] and claims 1-4, 6, and 7 of the Rajala '211 Patent.[3]  Before this motion

became ripe for our review, however, the parties narrowed the claims that would

proceed to trial in this case, and KC narrowed the claims at issue in this motion

accordingly.  The motion is now directed to claims 7 and 20 of the Rajala '922

Patent and claims 1 and 4 of the Rajala '211 Patent.

Defendants and Counterclaim Plaintiffs First Quality Baby Products,

LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality

Hygienic, Inc. (collectively, "FQ") oppose the pending motion.  This motion has been

fully briefed and is now ripe for our review.  For the reasons that follow, we will deny

the motion.

II.        *Background*

In February 2009, FQ filed a complaint in this court for a declaratory

judgment, but we dismissed that complaint for lack of subject matter jurisdiction.

Prior to our dismissal, however, Plaintiff Kimberly-Clark Worldwide, Inc. ("KC") filed

this patent infringement action in the U.S. District Court for the Northern District of

Texas, which was then transferred from Texas to this court.  Among other claims in

this action, KC seeks damages for infringement of the Rajala Patents.  FQ denies

infringement and claims that the patents are invalid.  FQ contends that Suzuki

invalidates the Rajala Patents, under theories of anticipation and obviousness.

_____

[2] U.S. Patent No. 5,745,922.

[3] U.S. Patent No. 6,260,211.

*III.*          *Legal Standard*

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  We will examine the motion under the well-established standard.  See, e.g., Meditz v. City of Newark, 658 F.3d 364, 369 (3d. Cir. 2011).  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).  The court must credit the nonmovant's evidence and draw "all justifiable inferences" in its favor.  Id.

Patent claims are presumed to be valid, and the party alleging invalidity bears the burden of proving it by clear and convincing evidence.  35 U.S.C. § 282; Microsoft Corp. v. i4i Ltd. P'ship, ___ U.S. ___, 131 S. Ct. 2238, 2242 (2011).  Invalidity might be proven in a variety of ways.  In order to establish anticipation, the party challenging the patent must prove that every claim limitation is found in a single prior art reference, either expressly or inherently.  Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1370 (Fed. Cir. 2002).  In addition, the prior art reference must "enable one of skill in the art to make and use the claimed invention."  Id.

In order to determine whether a patent is invalid for obviousness, the court must examine whether "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious

3

. . . to a person having ordinary skill in the art[.]" 35 U.S.C. § 103. Obviousness presents a question of law; however, it is based on the following factual inquiries set forth in <u>Graham v. John Deere Co.</u>: (1) "the scope and content of the prior art[,]" (2) "differences between the prior art and the claims at issue[,]" (3) "the level of ordinary skill in the pertinent art[,]" and (4) "secondary considerations" that may indicate obviousness or lack thereof, such as "commercial success, long felt but unsolved needs, failure of others, etc." 383 U.S. 1, 17-18 (1966).

IV.      *Discussion*

For purposes of the pending motion only, KC assumes that Suzuki is prior art,[4] and KC focuses on other reasons why no reasonable jury could conclude that Suzuki anticipates the Rajala claims or renders them obvious. We will address the issues of anticipation and obviousness in the sections that follow.

A.       *Anticipation*

KC contends that Suzuki is missing at least one of the claim limitations of the Rajala Patents, and therefore, as a matter of law, Suzuki does not anticipate Rajala. The Rajala Patents describe the configuration of elastics in adult incontinence products, such as protective underwear. One limitation of the claims at issue requires the following: "a third elastic attached to at least one of the first and second layers along the first crotch edge portion[,] and a fourth elastic attached to at

---

[4] In other contexts in the course of this litigation, KC has argued that Suzuki is not prior art. Indeed, KC moved for summary judgment on this issue (<u>see</u> Doc. 634), but the court found issues of material fact and denied KC's motion (<u>see</u> Doc. 808).

least one of the first and second layers along the second crotch edge portion."[5] (Doc. 811 at 10). For the sake of simplicity, we will refer to the "third elastic" and the "fourth elastic" as "crotch elastics." KC argues that the Rajala claims at issue require these crotch elastics to be separate from the leg elastics, and that this claim limitation is not found in Suzuki. KC emphasizes that FQ's expert, Mr. Gardner, conceded these facts in his deposition. Hence, KC contends that no reasonable jury could find by clear and convincing evidence that Suzuki discloses each and every requirement of the Rajala Patent claims at issue. KC therefore asks the court to enter summary judgment that Suzuki does not anticipate the Rajala claims.

In response, FQ disputes that Mr. Gardner conceded that Rajala requires crotch elastics that are separate from leg elastics. Mr. Gardner answered "yes" to the following question: "Claim 7 of the '922 Patent, for example. Does this claim separate crotch elastics?" (Doc. 825 at 9). The question was ambiguous, and according to Mr. Gardner (see Doc. 826), he understood it as a reference to the two separate elastics that are located on either side of the crotch. Interpreting the question in this manner, Mr. Gardner affirmed that there are separate crotch elastics—that is, two elastics that are separate *from each other*—but he did not concede that the crotch elastics must be separate *from the leg elastics*.

---

[5] KC notes that the quoted language describes the elastics of the Rajala '922 Patent, and the language describing the Rajala '211 Patent's elastics is slightly different. However, the linguistic differences do not change the analysis of whether Suzuki has the elastics claimed in both Rajala Patents. Like KC, we will quote only the language of the Rajala '922 Patent for the sake of simplicity.

5

FQ proceeds to argue that the Rajala claims at issue do *not* require that the crotch elastics be separate from the leg elastics—they simply require elastics along the crotch edge portion of the garment, without specifying whether these elastics must be separate pieces.  FQ notes that the word "separate" does not appear in the claims at issue.  FQ also points to the specification, which discloses "placing the crotch elastics as a portion of a continuous element of either the front or back leg elastics," and mentions using "separate elastic segments" for the crotch elastics as an optional alternative.

In reply, KC notes that the Rajala Patent specification sets forth an unfavorable description of "severe stress" being placed on the manufacturing equipment if the crotch elastics are formed as a "continuous element" of the leg elastics.  The specification proceeds to say that, instead of forming crotch elastics in that manner, this invention contemplates placing them in the subassembly as separate elastic segments.  (Doc. 812, Exh. 1, Col. 13, ll. 7-25).  KC also argues that the crotch elastics are "optionally" placed in this manner, because it is optional to include crotch elastics in the product at all.  In other words, the "optional" language refers to the option of leaving crotch elastics out entirely, not an option of crotch elastics being separate or non-separate from leg elastics.

In sum, the parties adopt two different interpretations of the Rajala Patents' claims, and each party has presented some evidence supporting its interpretation.  In ruling on KC's motion for partial summary judgment, our task is not to weigh the evidence or to determine which interpretation is correct.  Rather, we must credit FQ's evidence and determine whether a reasonable factfinder could rule

6

in its favor. We conclude that a reasonable jury could indeed find that Suzuki anticipates Rajala, if it credits FQ's evidence that the Rajala claims at issue do not require crotch elastics that are separate from the leg elastics. We will therefore deny KC's motion for partial summary judgment with respect to anticipation.

### B. Obviousness

In order to prove its claim that Rajala was obvious based on a modification of Suzuki, FQ would need to establish that a person of ordinary skill in the art would have modified Suzuki to obtain the inventions claimed in Rajala. KC claims that FQ's evidence could not lead a reasonable jury to such a conclusion. As noted above, KC asserts that Suzuki is missing the separate crotch elastics that are required in the Rajala claims at issue. Suzuki could have been modified to meet the requirement, if its leg elastics were cut or severed, but KC argues that no person of ordinary skill in the art would have been motivated to modify Suzuki in this way, because cutting the elastics was contrary to the prevailing wisdom in the industry. Again, KC contends that FQ's expert, Mr. Gardner, conceded these facts, and KC argues that no reasonable jury could find otherwise.

As noted above, FQ disputes that the claims at issue require the crotch elastics to be separate from the leg elastics. FQ proceeds to argue, however, that even if this was the correct interpretation of the Rajala claims at issue, a reasonable jury could still conclude that the claims were obvious in light of Suzuki. Admittedly, Mr. Gardner testified that a continuous elastic around the leg openings would be his "preferred" design. He also testified that "the industry" tries to "have a

continuous seal around the leg opening." (Doc. 830, Exh. 1, 69:12-14). However, he also testified that, depending on the manufacturing process or the raw materials, it could be beneficial to separate the crotch elastics from the leg elastics, and a person of ordinary skill in the art could even find it obvious to do so. (*Id.* at 63:7-18, 66:6-10, 68:10-17, 69:19-21).

Contrary to KC's assertions, Mr. Gardner's testimony does not establish non-obviousness as a matter of law. Nor is it "undisputed" that no person of ordinary skill in the art would modify Suzuki to arrive at Rajala. In fact, Mr. Gardner's testimony might lead a reasonable jury to reach the opposite conclusion: that someone of ordinary skill in the art could be motivated to modify Suzuki in this manner, by cutting the elastics, depending on the raw materials or manufacturing process the person had to work with. Therefore, we conclude that KC is not entitled to judgment as a matter of law. We will deny KC's motion for partial summary judgment on this issue.

*V.*          *Conclusion*

For the reasons stated above, we will deny KC's motion for partial summary judgment.

 /s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: August 12, 2013

8

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC.,        :
    Plaintiff
                                         :
    v.                              CIVIL NO. 1:09-CV-1685
                                         :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC.,         :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC.,         :
    Defendants and
    Counterclaim Plaintiffs        :

    v.                              :

KIMBERLY-CLARK CORPORATION,           :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC,     :
    Counterclaim Defendants

*O R D E R*


        AND NOW, this 12th day of August, 2013, upon consideration of

Plaintiff's motion for partial summary judgment of no invalidity relating to the Rajala

Patents (Doc. 810), it is ORDERED that said motion is DENIED.


                     /s/ William W. Caldwell
                     William W. Caldwell
                     United States District Judge