IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
                                           : CIVIL NO. 1:09-CV-1685
    v.
                                           :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
    Defendants and
    Counterclaim Plaintiffs :

    v. :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

*M E M O R A N D U M*

*I.    Introduction*

Presently before the court is a motion *in limine* (Doc. 900) filed by Defendants First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic, Inc. (collectively, "FQ") on October 11, 2013. In the motion, FQ requests that the court prevent Julie L. Davis, a purported economic expert for Plaintiff Kimberly-Clark Worldwide, Inc. ("KC"), from offering opinions or otherwise testifying regarding damages in this patent infringement action. Specifically, FQ contends that because the methodology employed by Ms. Davis is improper, the court should exclude her testimony pursuant to Federal Rule of Evidence 702.

KC opposes FQ's motion. The matter has been fully briefed (Docs. 927, 928, 977, 1014) and is ripe for our review. For the reasons that follow, we will deny FQ's motion.

*II.        Legal Standard*

District courts have a "gatekeeping" function in connection with expert testimony. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012). Federal Rule of Evidence 702, as amended in 2000 to incorporate the standards set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), requires district courts to ensure that expert testimony is not only relevant, but reliable. *ZF Meritor*, 696 F.3d at 291 (citations omitted).

> Rule 702 provides that:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) ("Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of

2

fact.") (citation omitted). Qualification refers to the requirement that the witness possess "specialized expertise," which should be evaluated "liberally" because "a broad range of knowledge, skills, and training qualify an expert." *Schneider*, 320 F.3d at 404. To establish reliability, the expert testimony "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief." *Id.*; *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (noting that district courts must ensure that "the expert's opinion [is] based on the methods and procedures of science rather than on subjective belief or unsupported speculation") (citations and internal quotation marks omitted). To satisfy the fit requirement, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404.

The burden is on the party proffering expert testimony to demonstrate that it satisfies the requirements of Rule 702. *Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332, 335 n.2 (3d Cir. 2010) (not precedential) (citation omitted); *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999) (noting that the burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence) (citations omitted).[1]

---

[1] Neither party has requested a *Daubert* hearing. Such a hearing is not required every time an objection is raised under *Daubert*, and it is within our discretion to hold one should we determine that it is necessary to resolve the pending motion. *Padillas*, 186 F.3d at 418. Instantly, we conclude that a *Daubert* hearing is not necessary as FQ's motion is premised on a purely legal question–the propriety of the methodology employed by Ms. Davis.

*III.        Discussion*

In a patent infringement action such as the case at bar, a successful plaintiff is entitled to recover "damages adequate to compensate for the infringement, but in no event less than a *reasonable royalty rate* for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (emphasis added). A reasonable royalty rate can be calculated from, *inter alia*, "a hypothetical negotiation between the patentee and infringer" that "attempts to ascertain the royalty [for use of the invention] upon which the parties would have agreed had they successfully negotiated an agreement just before the infringement began." *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1319 (Fed. Cir. 2010) (citations and internal quotation marks omitted).

The reasonable royalty rate arrived at through this hypothetical negotiation may be expressed either as a lump-sum license or a running royalty license. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009). A lump-sum license involves an up-front payment for the invention, while a running royalty license is tied to how often the invention is incorporated into products. A running royalty is calculated by multiplying the proposed royalty rate by the proposed royalty base. *See id.* at 1326, 1338-39.

In the instant motion, FQ contends that Ms. Davis used an unsound methodology to arrive at her proposed reasonable royalty rate for calculating damages for infringement of the patents-in-suit. In particular, FQ argues that she improperly: (1) utilized FQ's total revenue on sales of the allegedly infringing products as the royalty

4

base for her running royalty without analyzing whether the claimed inventions–which are components incorporated into finished products–created the demand for the products as a whole; and (2) based her royalty rate for licensing the claimed inventions on prior, dissimilar licenses. (Doc. 900 at 2). The Court will address each argument in turn.

*A.  Royalty Base*

This litigation concerns patents relating to disposable absorbent products, such as diapers and incontinence products. The patents-in-suit cover a variety of the components or features of these products, including the configuration of elastics, absorbency technology, and graphics.

Presently, FQ requests that the court preclude Ms. Davis from testifying at trial because she used FQ's "total revenue" from sales of the allegedly infringing products as the royalty base for her running royalty calculation. FQ argues that this is improper because her expert report does not demonstrate that any of the allegedly infringing product components created the demand for the products as a whole. (Doc. 928 at 7).

KC asserts that Ms. Davis's methodology is sound and notes that prior licenses demonstrate the industry's acceptance of a "total revenue" royalty base. (Doc. 977 at 7-8).

The court agrees that Ms. Davis's methodology is proper. As the Federal Circuit has explained, "the base used in a running royalty calculation can always be the value of the entire commercial embodiment, as long as the magnitude of the rate is within an acceptable range (as determined by the evidence)." *Lucent*, 580 F.3d at 1338-39. "Thus, even when the patented invention is a small component of a much larger commercial product, awarding a reasonable royalty based on either sale price or number

5

of units sold can be economically justified." *Id.* at 1339; *see also Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1544 (Fed. Cir. 1994) (awarding royalty rate of 90 cents per vehicle that incorporated infringing intermittent windshield wipers, where the average vehicle sale price was over $4000); *P & G Co. V. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 613 (D. Del. 1997) (awarding a "royalty rate of 2% of the net sales price" of infringing disposable diaper that incorporated patented advancements in the barrier leg cuff feature). In other words, "[t]here is nothing inherently wrong with using the market value of the entire product [as the royalty base], especially when there is no established market value for the infringing component or feature, so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature." *Lucent*, 580 F.3d at 1339.

Here, Ms. Davis employed this approved methodology, multiplying the value of the finished product (the royalty base) by a single-digit rate (the royalty rate) to account for the infringing component's proportional value of the finished product. Such calculations are further supported by the fact that the prior licenses Ms. Davis relied on to calculate her royalty rate employed this same methodology. *See id.* (noting that prior licenses admitted into evidence "highlight[ed] how sophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price").

Accordingly, we reject FQ's attempt to exclude Ms. Davis's testimony on royalty base grounds.

*B.     Prior Licenses*

In her expert report, Ms. Davis examined prior licenses for use of the patents-in-suit to serve as a benchmark for determining the reasonable royalty rate which she opines would have resulted from the hypothetical negotiation between KC and FQ. In its motion *in limine*, FQ concedes the propriety of this practice in general, but seeks to exclude Ms. Davis's opinions in this case on the grounds that the prior licenses she examined are not sufficiently comparable to the hypothetical license at issue. (Doc. 928 at 17).

KC, in turns, argues against exclusion of Ms. Davis's opinions by claiming that the prior licenses–each of which involves one or more of the patents-in-suit–are sufficiently similar, and that Ms. Davis properly accounted for the economic differences between the prior licenses and the license which would have resulted from the hypothetical negotiation. Further, KC asserts that FQ's arguments go to the weight of Ms. Davis's proposed testimony, but not its admissibility. (Doc. 977 at 17).

The court agrees that FQ's criticisms of Ms. Davis's opinion do not warrant its exclusion. Simply put, "the degree of comparability of the [prior] license agreements" is a "factual issue[] best addressed by cross examination and not by exclusion" of the expert's opinion. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (citation omitted). While FQ remains free to identify at trial what it perceives to be weaknesses in Ms. Davis's opinion, we will deny FQ's request for the wholesale exclusion of her testimony. *See id.* (stating that a party's disagreement with conclusions reached by an expert and his underlying factual assumptions "go to the

7

weight to be afforded to the [expert's] testimony and not its admissibility") (citation omitted).

*IV.*        *Conclusion*

For the reasons discussed above, we conclude that FQ's motion *in limine* (Doc. 900) should be denied. We will issue an appropriate order.

 /s/ William W. Caldwell  
William W. Caldwell  
United States District Judge

November 13, 2013