IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC., :
    Plaintiff
: CIVIL NO. 1:09-CV-1685
    v.
:
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC., :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC., :
    Defendants and
    Counterclaim Plaintiffs :

    v. :

KIMBERLY-CLARK CORPORATION, :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC, :
    Counterclaim Defendants

*M E M O R A N D U M*

*I.*      *Introduction*

Presently before the court is a motion *in limine* (Doc. 848) filed by Plaintiff Kimberly-Clark Worldwide, Inc. ("KC") on September 17, 2013. In its motion, KC requests that the court prevent Dr. Sumanth Addanki, a purported economic expert for the defense, from offering opinions or otherwise testifying regarding damages in this patent infringement action. Specifically, KC contends that because the methodology employed by Dr. Addanki is contrary to controlling Federal Circuit precedent, the court should exclude his testimony pursuant to Federal Rule of Evidence 702.

Defendants First Quality Baby Products, LLC, First Quality Products, Inc., First Quality Retail Services, LLC, and First Quality Hygienic, Inc. (collectively, "FQ")

oppose KC's motion. The matter has been fully briefed (Docs. 849, 929, 982) and is ripe for our review. For the reasons that follow, we will deny KC's motion.

II.     Legal Standard

District courts have a "gatekeeping" function in connection with expert testimony. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012). Federal Rule of Evidence 702, as amended in 2000 to incorporate the standards set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), requires district courts to ensure that expert testimony is not only relevant, but reliable. *ZF Meritor*, 696 F.3d at 291 (citations omitted).

> Rule 702 provides that:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) ("Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact.") (citation omitted). Qualification refers to the requirement that the witness possess

2

"specialized expertise," which should be evaluated "liberally" because "a broad range of knowledge, skills, and training qualify an expert." *Schneider*, 320 F.3d at 404. To establish reliability, the expert testimony "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief." *Id.*; *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (noting that district courts must ensure that "the expert's opinion [is] based on the methods and procedures of science rather than on subjective belief or unsupported speculation") (citations and internal quotation marks omitted). To satisfy the fit requirement, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404.

The burden is on the party proffering expert testimony to demonstrate that it satisfies the requirements of Rule 702. *Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332, 335 n.2 (3d Cir. 2010) (not precedential) (citation omitted); *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999) (noting that the burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence) (citations omitted).[1]

III.  Discussion

In a patent infringement action such as the case at bar, a successful plaintiff is entitled to recover "damages adequate to compensate for the infringement, but

---

[1] Neither party has requested a *Daubert* hearing. Such a hearing is not required every time an objection is raised under *Daubert*, and it is within our discretion to hold one should we determine that it is necessary to resolve the pending motion. *Padillas*, 186 F.3d at 418. Instantly, we conclude that a *Daubert* hearing is not necessary as KC's motion is premised on a purely legal question.

in no event less than a *reasonable royalty rate* for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (emphasis added). A reasonable royalty rate can be calculated from, *inter alia*, "a hypothetical negotiation between the patentee and infringer" that "attempts to ascertain the royalty [for use of the invention] upon which the parties would have agreed had they successfully negotiated an agreement just before the infringement began." *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1319 (Fed. Cir. 2010) (citations and internal quotation marks omitted).

Here, KC contends that the court should preclude Dr. Addanki from offering an opinion on damages because his calculations regarding the reasonable royalty rate for infringement of the patents-in-suit are based on "a methodology rejected by the Federal Circuit." (Doc. 848 at 2). Specifically, KC asserts that Dr. Addanki's calculations run afoul of *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), by impermissibly "establishing a cap" on the range of potential reasonable royalty rates in the hypothetical negotiation by concluding that FQ would not pay a royalty rate higher than the cost associated with forgoing use of the infringing products and instead using available, noninfringing alternatives. FQ, in turn, disagrees with KC's broad reading of *Mars* and contends that exclusion of Dr. Addanki's opinions is unwarranted. (Doc. 929 at 3).

In *Mars*, the Federal Circuit expressly rejected the defendant's contention that the trial court erred "by awarding a reasonable royalty rate higher than the cost to [the defendant] of implementing acceptable noninfringing alternatives." *Id.* at 1372. The Federal Circuit explained that reasonable royalty rate damages are not, as a matter of

law, "capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative." *Id.* at 1373. Instead, "an infringer *may* be liable for damages, including reasonable royalty damages, that exceed the amount that the infringer could have paid to avoid infringement." *Id.* (emphasis added).

KC presently contends that Dr. Addanki's damage calculations violate this principle and should be excluded for misapplying the law on damages. We disagree.

In *Ergotron, Inc. v. Rubbermaid Commercial Products, LLC*, No. 10-2010 ADM/JJG, 2012 WL 3733578 (D. Minn. Aug. 28, 2012), the Honorable Ann D. Montgomery addressed this identical argument in a thorough and well-reasoned opinion. There, as here, the plaintiff argued that a damages expert's testimony should be excluded for running afoul of *Mars* because the expert "used [the defendant's] profit expectations and design-around cost as an absolute ceiling capping damages." *Ergotron,* 2012 WL 3733578 at *12. Finding this argument "unavailing," the court concluded that the expert's opinions were not based "on a misapplication of the law—i.e. a belief that damages should always be capped based on an infringer's expected profits or design-around costs—but rather her analysis of the facts of this case." *Id.* Specifically, the expert reasoned that the availability of personnel on the defendant's staff who could engineer a noninfringing alternative at low cost would provide sufficient bargaining power such that the defendant would not agree to pay a higher royalty rate. *Id.* Additionally, the court examined the pertinent case law–including *Mars*–and concluded that it did not prohibit *experts* from testifying regarding the behavior of economically rational actors. Rather, it stood for the proposition that *courts* could not cap infringement damages as a matter of

law at the cost of creating a noninfringing alternative or at a level that would guarantee a certain profit margin for the infringer. *Id.* (collecting cases).

We find this persuasive reasoning to be equally applicable to the case *sub judice*. Dr. Addanki's proposed testimony does not stem from the mistaken belief that infringement damages must be capped at the cost of using a noninfringing alternative. Instead, he examines the economic circumstances of this particular case, notes the availability of acceptable noninfringing alternatives to FQ, and concludes that no other factors would compel FQ to accept a higher royalty rate during the hypothetical negotiations. Such analysis does not, as KC contends, misapply the law on damages. *See Ergotron,* 2012 WL 3733578 at *12; *see also Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1347 (Fed. Cir. 1999) (upholding district court's finding that difference in production costs between infringing and noninfringing products "effectively capped the reasonable royalty award"); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) (stating that "[t]he economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation").

Accordingly, we will deny KC's request to preclude Dr. Addanki from testifying in this matter.

*IV.	Conclusion*

      For the reasons discussed above, we conclude that KC's motion *in limine* (Doc. 848) should be denied. We will issue an appropriate order.

                <u>/s/ William W. Caldwell</u>
                William W. Caldwell
                United States District Judge

November 13, 2013