IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY-CLARK WORLDWIDE, INC.,    :
    Plaintiff

           :  CIVIL NO. 1:09-CV-1685
    v.

           :
FIRST QUALITY BABY PRODUCTS, LLC,
FIRST QUALITY PRODUCTS, INC.,    :
FIRST QUALITY RETAIL SERVICES, LLC,
FIRST QUALITY HYGIENIC, INC.,    :
    Defendants and
    Counterclaim Plaintiffs    :

    v.           :

KIMBERLY-CLARK CORPORATION,    :
KIMBERLY-CLARK WORLDWIDE, INC.,
KIMBERLY-CLARK GLOBAL SALES, LLC,    :
    Counterclaim Defendants

*M E M O R A N D U M*

*I.*    *Introduction*

        Presently before the court is a motion *in limine* (Doc. 906) filed by

Defendants First Quality Baby Products, LLC, First Quality Products, Inc., First Quality

Retail Services, LLC, and First Quality Hygienic, Inc. (collectively, "FQ") on October 11,

2013. In the motion, FQ requests that the court prevent Steven S. Bullock, a purported

economic expert for Plaintiff Kimberly-Clark Worldwide, Inc. ("KC"), from offering

opinions or otherwise testifying in this patent infringement action. Specifically, FQ

contends that because the methodology employed by Mr. Bullock is improper, the court

should exclude his testimony pursuant to Federal Rule of Evidence 702.

KC opposes FQ's motion. The matter has been fully briefed (Docs. 924, 926, 972, 1021) and is ripe for our review. For the reasons that follow, we will deny FQ's motion.

II.      *Legal Standard*

District courts have a "gatekeeping" function in connection with expert testimony. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012). Federal Rule of Evidence 702, as amended in 2000 to incorporate the standards set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), requires district courts to ensure that expert testimony is not only relevant, but reliable. *ZF Meritor*, 696 F.3d at 291 (citations omitted).

Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) ("Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of

fact.") (citation omitted). Qualification refers to the requirement that the witness possess "specialized expertise," which should be evaluated "liberally" because "a broad range of knowledge, skills, and training qualify an expert." *Schneider*, 320 F.3d at 404. To establish reliability, the expert testimony "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief." *Id.*; *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (noting that district courts must ensure that "the expert's opinion [is] based on the methods and procedures of science rather than on subjective belief or unsupported speculation") (citations and internal quotation marks omitted). To satisfy the fit requirement, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404.

The burden is on the party proffering expert testimony to demonstrate that it satisfies the requirements of Rule 702. *Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332, 335 n.2 (3d Cir. 2010) (not precedential) (citation omitted); *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999) (noting that the burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence) (citations omitted).[1]

---

[1] Neither party has requested a *Daubert* hearing. Such a hearing is not required every time an objection is raised under *Daubert*, and it is within our discretion to hold one should we determine that it is necessary to resolve the pending motion. *Padillas*, 186 F.3d at 418. Instantly, we conclude that a *Daubert* hearing is not necessary as FQ's motion is premised on a purely legal question–the propriety of the methodology employed by Mr. Bullock.

*III.        Background*

This litigation concerns patents relating to disposable absorbent products, such as diapers and incontinence products. The patents-in-suit cover a variety of the components or features of these products, including the configuration of elastics, absorbency technology, and graphics.

One of the defenses raised by FQ in this action is that it cannot be liable for infringement of KC's patents because the patents are invalid for "obviousness." As the court has previously explained (Docs. 833 at 3-4; 862 at 3), "obviousness" is a term of art. To determine whether a patent is invalid for obviousness, one must examine "whether the difference between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious . . . to a person having ordinary skill in the art." 35 U.S.C. § 103.

KC seeks to refute this challenge and establish non-obviousness of its patents. The Federal Circuit has explained that "in 'determining the question of obviousness, inquiry should always be made into whatever objective evidence of nonobviousness there may be.'" *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1323 (Fed. Cir. 2004) (quoting *Vandenberg v. Dairy Equip. Co.*, 740 F.2d 1560, 1567 (Fed. Cir. 1984)). Objective evidence of non-obviousness includes, *inter alia*, evidence regarding the "commercial success" of the claimed invention or products practicing the claimed invention. *Id.*; *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). Evidence of commercial success is probative of non-obviousness because "the law presumes an idea would successfully have been brought to market

4

sooner, in response to market forces, had the idea been obvious to persons skilled in the art." *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376 (Fed. Cir. 2005).

Federal Circuit precedent makes clear, however, "that a nexus must be established between the merits of the claimed invention and evidence of commercial success before that evidence may become relevant to the issue of obviousness." *Iron Grip,* 392 F.3d at 1324 (citation and internal quotation marks omitted); *see also Merck & Co.*, 395 F.3d at 1376 ("Thus, the law deems evidence of (1) commercial success, and (2) some causal relation or 'nexus' between an invention and commercial success of a product embodying that invention, probative of whether an invention was non-obvious.").

This background is necessary to address the parties' present dispute regarding the admissibility of expert testimony. FQ's purported economic expert, Dr. Sumanth Addanki, opines in his expert report that there is no nexus between the claims of KC's patents and the commercial success of their products that incorporate the patented technologies. KC's purported rebuttal expert, Mr. Bullock, reaches the opposite conclusion. FQ filed the instant motion *in limine* (Doc. 906) challenging Mr. Bullock's methodology and seeking to exclude his proposed testimony that the commercial success of KC's products is due, in part, to the patented technologies.

IV.        *Discussion*

In its motion *in limine*, FQ raises two specific challenges to Mr. Bullock's proposed testimony regarding commercial success of KC's products. First, FQ argues that his testimony fails to establish the requisite "nexus" between commercial success of the products and the claims of the patents-in-suit. Second, FQ argues that Mr. Bullock

improperly cites to evidence of the commercial success of *FQ's products*, thereby assuming that these products infringe the patents-in-suit. The Court will address each argument in turn.

*A.     Nexus*

In his report, Mr. Bullock opines that "[t]he patented features of [KC]'s products have been the key driver of commercial success of those products" because they have "been critical in driving consumer repurchase" of the products incorporating patented technologies. (Doc. 972-1 at 32). In essence, Bullock asserts that: (1) the patents-in-suit create or contribute to certain desirable qualities of KC's products (i.e., leakage protection, fit, and appearance); (2) the products meet or exceed consumer expectations with respect to these qualities; and (3) the products–which are disposable in nature–are commercially successful because consumers continue to purchase them after this initial positive experience.

FQ contends that Mr. Bullock's proposed testimony should be excluded because he fails to establish the requisite nexus between commercial success and the claims of the patents-in-suit. Specifically, FQ argues that the most Mr. Bullock's report can establish is that KC's "products have general qualities that make them successful," but not that these qualities are the result of practicing the patents at issue in this litigation. (Doc. 924 at 15). We disagree.

Mr. Bullock's economic report relies on the analysis of KC's technical experts to identify the technologies covered by the patent claims and the improvements conferred on KC's products that practice these respective inventions. Thereafter, Mr. Bullock discusses consumer surveys which demonstrate consumer preference for

6

products that contain these improvements over products that lack such features. Additionally, Mr. Bullock cites to internal documents and deposition testimony supporting his conclusion that the inclusion of these patented features drives sales of KC's products.

Such methodology is proper because "testimony concerning the advantages of a patented feature in multi-featured products," such as those in the instant case, "is sufficient to support the inference of a nexus between the patented feature and the commercial success." *Rambus Inc. v. Hynix Semiconductor, Inc.*, 254 F.R.D. 597, 603 (N.D. Cal. 2008) (citing *Demaco*, 851 F.2d at 1393); *see also Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80-LPS-MPT, 2013 U.S. Dist. LEXIS 70745, *46-47 (D. Del. May 20, 2013) (concluding that "the combined opinions and testimony" of a technical expert discussing the inventions claimed in the patents and an economic expert addressing the commercial benefits of these patented features "demonstrate the required nexus . . . for commercial success").

Accordingly, the court will not preclude Mr. Bullock from testifying in this matter for failure to establish a nexus between commercial success and the patents-in-suit. FQ remains free, however, to challenge Mr. Bullock's opinions on cross examination. *See Exelis Inc. v. Cellco P'ship*, No. 09-190-LPS, 2012 U.S. Dist. LEXIS 158842, *38-40 (D. Del. Nov. 6, 2012) (denying defendants' request to exclude expert testimony for insufficient nexus between the claimed invention and commercial success, and concluding that cross-examination and presentation of contrary evidence at trial was appropriate means to challenge opinion); *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 461 F. Supp. 2d 271, 275 (D.N.J. 2006) (finding that challenge to commercial success expert's

methodology went to the weight to be afforded to his testimony, not its admissibility) (citing *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1221 (Fed. Cir. 2006)).

B.      *Commercial Success of FQ's Products*

FQ also seeks to prevent Mr. Bullock from testifying that the commercial success of *FQ's products* stems from the qualities derived from practicing the patents-in-suit. FQ argues that such testimony would "put the cart before the horse" by assuming what is in dispute in this case–that FQ's products infringe KC's patents. (Doc. 924 at 16).

The court will decline FQ's request for a pretrial order precluding Mr. Bullock from testifying that FQ's products enjoyed commercial success as a result of the alleged infringement of KC's patents. *See Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997) (noting that "the record contains significant evidence of the commercial success" of the patented invention including the fact that "over 14,800 dialysis machines allegedly incorporating the . . . invention were sold since 1987"). Instead, FQ will have the opportunity to cross examine Mr. Bullock regarding the assumptions underlying his ultimate opinions, including his assumption (based on the opinions of KC's technical experts) that FQ's products infringe KC's patents.

*V.*		*Conclusion*

For the reasons discussed above, we conclude that FQ's motion *in limine* (Doc. 906) should be denied.[2] We will issue an appropriate order.


		 /s/ William W. Caldwell
		William W. Caldwell
		United States District Judge

December 2, 2013

---

[2] FQ filed a separate motion *in limine* (Doc. 902) seeking to exclude any reference to the commercial success of KC's products. In the motion, FQ contends that evidence of commercial success is irrelevant and should be excluded *if* the court prohibits Mr. Bullock from testifying at trial. Because we will deny FQ's request to prevent Mr. Bullock from testifying, we will deny this separate motion *in limine* as well.